LEXSEE 1994 US DIST LEXIS 7409

**WILMOT A. FRASER v. PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION, et al.**

CIVIL ACTION No. 92-6210

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1994 U.S. Dist. LEXIS 7409; 64 Fair Empl. Prac. Cas. (BNA) 1701

June 3, 1994, Decided
June 6, 1994, Filed, Entered

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] FOR WILMOT A. FRASER, Ph.D., PLAINTIFF: TERI B. HIMEBAUGH, PHILADELPHIA, PA. MICHAEL F. COATES, PHILA, PA. WILMOT A. FRASER, Ph.D., PRO SE, BROOKHAVEN, PA.

FOR PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION, (& Cheyney University), DEFENDANT: BETH ANNE SMITH, OFFICE OF ATTORNEY GENERAL, PHILA, PA. THE ASSOCIATION OF PA. STATE COLLEGE & UNIVERSITY FACULTIES, DEFENDANT: JAMES L. COWDEN, STROKOFF & COWDEN, P.C., HARRISBURG, PA. JILL C. FLUCK, STROKOFF AND COWDEN, P.C. HARRISBURG, PA. FOR THE PENNSYLVANIA LABOR RELATIONS BOARD, DEFENDANT: BETH ANNE SMITH, OFFICE OF ATTORNEY GENERAL, PHILA, PA.

FOR JAMES H. TINSMAN, DR., MOVANT: JAMES L. COWDEN, STROKOFF & COWDEN, P.C., HARRISBURG, PA.

**JUDGES:** HUTTON, J.

**OPINIONBY:** HERBERT J. HUTTON

**OPINION:** MEMORANDUM AND FINAL JUDGMENT

HUTTON, J.

Presently before the Court are the defendant Pennsylvania State System of Higher Education ("SSHE") and the Fraser's ("Fraser") response, the defendant Association of Pennsylvania State College and University Faculties' ("APSCUF") Motion for Summary Judgment, Fraser's response, Fraser's Motion for Summary Judgment, the Commonwealth Defendant's response and APSCUF's response.

**I. FACTUAL BACKGROUND**

**A. The Parties**

The plaintiff, Wilmot Fraser, was a tenured professor of Afro-American Studies at Cheyney University ("Cheyney"). He is black. The defendants are SSHE, which operates the state's public universities, including Cheyney, the PLRB, which adjudicated Fraser's claim that he was discharged for engaging in protected activity under the Pennsylvania Employee Relations Act ("PERA"), 43 Pa. Stat. Ann. § 1101.01, et. seq., and the APSCUF, which is the certified bargaining representative under PERA for SSHE's faculty members, including [*2] Fraser.

**B. The Retrenchment**

This case involves Fraser's claim that he was wrongfully discharged from his employment as a tenured professor at Cheyney in violation of his civil and constitutional rights and that APSCUF conspired with the Commonwealth Defendants (SSHE and PLRB) to deprive him of such rights. More specifically, the genesis of this case lies in Cheyney's decision to retrench, that is, lay off, certain faculty members. SSHE contends that the retrenchments were necessitated by declining student enrollment and increased costs. Indeed, between 1980 and 1987, Cheyney's enrollment plummeted by approximately fifty percent. Accordingly, in 1987, Cheyney retrenched twenty-six faculty members, seventeen of whom were black, six

Case 1:04-cv-00415-SLR    Document 36-2    Filed 03/09/2005    Page 2 of 9    Page 2

1994 U.S. Dist. LEXIS 7409, *2; 64 Fair Empl. Prac. Cas. (BNA) 1701

black, were re-hired by SSHE.

Fraser was one of the faculty members selected for retrenchment. By letter dated October 8, 1987, Cheyney's President, LeVerne McCummings ("McCummings"), wrote to Fraser, stating that he was to be retrenched at the end of the academic year. According to McCummings' letter, which Fraser received no later than the [*3] end of November, 1987, Fraser's retrenchment was necessitated by low student enrollment in his area of expertise and by fiscal considerations. Fraser contends that this was not the true reason why he was retrenched. Rather, he has asserted at various times throughout his state and federal court litigation that he was discharged because he was openly critical of McCummings, because of his race and because he filed numerous grievances against Cheyney.

### C. The Grievance and Arbitration

In response to the retrenchments, APSCUF filed a grievance against SSHE on behalf of Fraser and the other twenty-five retrenched professors, which alleged twenty-four separate violations of the collective bargaining agreement then in effect between SSHE and APSCUF. Among other allegations in the grievance, APSCUF alleged that Fraser was chosen for retrenchment because of his race. However, upon investigation, APSCUF determined that there was no evidence of race discrimination. Accordingly, APSCUF advanced the grievance through the contractual grievance procedure to the last step, which was binding arbitration, but did not raise the race discrimination argument at the arbitration proceeding. [*4]

While his grievance was pending before the arbitrator, Fraser was offered a position as a professor at Clarion University, another university within SSHE. Fraser accepted the position, but subsequently withdrew his acceptance when officials at Clarion University refused to accede to his demand that he be made a Dean or Provost of Clarion. After lengthy hearings, the arbitrator determined that Fraser was properly retrenched in accordance with the terms of the collective bargaining agreement and that by accepting the offer at Clarion, he had lost his preferential hiring rights under the collective bargaining agreement.

After receiving notification of the arbitrators' award, APSCUF sought advice from its counsel concerning whether to appeal the determination. On advice of counsel, APSCUF determined that no appealable error could be found. On March 21, 1990, Cheryl L. McBride of APSCUF wrote to the plaintiff informing him that no appeal of the arbitrators' decision would be taken.

review with the Commonwealth Court of Pennsylvania. Both APSCUF and SSHE filed separate motions to quash [*5] Fraser's petition on the ground that he lacked standing to bring such an appeal. On February 25, 1991, the Commonwealth Court, agreeing that Fraser lacked standing, quashed Fraser's petition for review. Fraser then petitioned the Pennsylvania Supreme Court for allowance of appeal. On September 30, 1991, the court denied the plaintiff's petition.

### D. The Unfair Labor Practice Charge

In addition to the grievance arbitration proceedings, APSCUF filed an unfair labor practice charge with the Pennsylvania Labor Relations Board on November 17, 1987. In its charge, APSCUF alleged that SSHE had violated PERA by discriminating against Fraser because he had engaged in protected activity. More specifically, it was alleged that SSHE retrenched Fraser because he had filed numerous grievances against Cheyney previously and because he had recently prevailed in one of the grievances.

The case was initially presented to a hearing examiner, who agreed with APSCUF, and held that the plaintiff had been discriminated against on the basis of his protected activity in violation of PERA. SSHE filed exceptions to the hearing examiner's proposed decision and order. On May 29, 1990, after a telephone [*6] conference-call meeting was held, the PLRB reversed the hearing examiner and dismissed the unfair labor practice charge. APSCUF appealed this decision to the Commonwealth Court of Pennsylvania. On appeal, APSCUF argued not only that the PLRB erred in dismissing its complaint, but also, that the PLRB erred by conducting a hearing by telephone, allegedly in violation of the State Sunshine Act, 65 P.S. § 271, et seq. On June 19, 1991, the Commonwealth Court affirmed the decision of the PLRB. APSCUF moved for reargument, but its motion was denied.

At that point, APSCUF conferred with its counsel about the possibility of taking further appeals. APSCUF determined that the Pennsylvania Supreme Court was unlikely to grant allocatur, and accordingly, decided against appealing the Commonwealth Court's determination. After being notified by APSCUF of its decision regarding further appeals, Fraser filed a pro se "Petition for Supersedeas" with the Pennsylvania Supreme Court, which purported to be an appeal of the Commonwealth Court's decision. The court denied allocatur on the plaintiff's appeal of the Commonwealth Court's decision.

and PLRB cases were both pending, Fraser filed a complaint against both APSCUF and SSHE with the PHRC. The complaint was received by the Equal Employment Opportunity Commission ("EEOC") on September 5, 1989. The complaint alleged that SSHE had refused to honor Fraser's preferential hiring rights under the collective bargaining agreement. Further, it alleged that APSCUF had aided and abetted SSHE by failing to take adequate action to enforce the provisions of the collective bargaining agreement and by failing to raise the issues of racial discrimination and preferential hiring rights. Fraser also alleged that APSCUF staff members provided false and inaccurate information at the hearings, which allegedly prejudiced the plaintiff's case.

The PHRC dismissed the plaintiff's complaint, finding that the facts of the case did not establish that probable cause existed to credit the allegations of unlawful discrimination. By letter dated August 16, 1991, the PHRC notified Fraser of its determination. Similarly, the EEOC determined that the evidence presented did not establish a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, [*8] et. seq. On August 4, 1992, the EEOC issued Fraser a "right to sue" letter, informing Fraser of his right to file suit in U.S. District Court within 90-days of his receipt of the EEOC's determination.

### F. Procedural Posture

On October 28, 1992, the plaintiff filed a motion for leave to proceed in forma pauperis along with a copy of his pro se n1 complaint. Fraser's complaint is far from a model of clarity, but read broadly, Fraser's complaint purports to allege causes of action pursuant to *42 U.S.C. §§ 1981*, 1983, 1985(3), 1986 and Title VII. By Order dated November 20, 1992, Fraser's motion was granted. Accordingly, his complaint was filed on November 20, 1992. Subsequently, Fraser moved for leave to amend his complaint, and on March 24, 1993, the Court granted Fraser's motion. Through the amended complaint, Fraser did not seek to add claims, but rather, to clarify the factual basis underlying his complaint. Following lengthy discovery, the defendants have each moved for summary judgment and Fraser has filed a cross-motion for summary judgment.

n1 When the plaintiff initiated this lawsuit, he was unrepresented by counsel. Subsequently, he retained Michael F. Coates, Esq. as his attorney in this civil action. Mr. Coates entered his appearance on behalf of Fraser on September 9, 1993.

## II. DISCUSSION

### A. The Standard For Summary Judgment

The purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)*, cert. denied, *429 U.S. 1038, 50 L. Ed. 2d 748, 97 S. Ct. 732 (1977)*. When considering a motion for summary judgment, this Court shall grant such motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. When reviewing a motion for summary judgment, this Court will resolve all reasonable doubts and inferences in favor of the nonmoving party. *Arnold Pontiac-GMC, Inc. v. General Motors Corp., 700 F. Supp. 838, 840 (W.D. Pa. 1988)*.

The inquiry into whether a "genuine issue" of material fact exists has been defined by the Supreme Court as whether "the evidence is such that a reasonable [*10] jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. "As to materiality, the substantive law will identify which facts are material." Id.

The Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment in *Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. The Court held that the movant had the initial burden of showing the court the absence of a genuine issue of material fact, but that this did not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. *Id. at 323*. The Court also held that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions, on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id. at 324* [*11] (quoting *Fed.R.Civ.P. 56(e)*).

The Supreme Court further elaborated on the type of evidence that the nonmoving party is required to adduce in order to withstand a motion for summary judgment:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid sum-

Case 1:04-cv-00415-SLR    Document 36-2    Filed 03/09/2005    Page 4 of 9

1994 U.S. Dist. LEXIS 7409, *11; 64 Fair Empl. Prac. Cas. (BNA) 1701

summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred [a genuine issue of material fact].

Id.

### B. The Plaintiff's Claims Under 42 U.S.C. § 1981

Section 1981 provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same rights in every State and Territory to make and enforce contracts . . . .

42 U.S.C. 1981(a) (West 1981 & Supp. 1993). Prior to the enactment of the 1991 Civil Rights Act, § 1981 [*12] did not establish a "general proscription of racial discrimination in all aspects of contract relations." *Patterson v. McLean Cred. Union*, 491 U.S. 164, 176, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989). Rather, it applied only to the initial formation of a contract. Id. Accordingly, "the Third Circuit has specifically held that § 1981 does not apply to claims of racially motivated discharge because job termination is conduct occurring after formation of the employment contract." *Blanding v. Pennsylvania State Police*, 811 F. Supp. 1084, 1089 (E.D. Pa. 1992) (citing *Hayes v. Community General Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991), cert. denied, 117 L. Ed. 2d 110, 112 S. Ct. 940 (1992)), aff'd, 12 F.3d 1303 (3d Cir. 1993).

This was the law until 1991 when Congress enacted the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991), which superseded Patterson and made § 1981 applicable to discriminatory termination claims. See 42 U.S.C. § 1981 [*13] (b) (West Supp. 1993). However, the amendment to § 1981 became effective on November 21, 1991, well after the events giving rise to the plaintiff's claim. Thus, unless the amendments to § 1981 are retroactive, the plaintiff's claim fails under Patterson and its progeny.

Just last month, the Supreme Court laid to rest any lingering doubt as to whether the 1991 Civil Rights Act applied retroactively to regulate conduct occurring before the Act's effective date. Agreeing with the majority of tively. *Rivers v. Roadway Express, Inc.*, ___ U.S. ___, ___ S. Ct. ___, 1994 W.L. 144506 (S. Ct. database Apr. 26, 1994); see also *Blanding*, 811 F. Supp. at 1090 & n.2 (chronicling cases). Accordingly, the Patterson standard applies to the present case and bars the plaintiff's § 1981 claims.

### C. The Plaintiff's Claims Under 42 U.S.C. § 1983

#### 1. Claims Against the Commonwealth Defendants (SSHE and PLRB)

Section 1983 provides in pertinent part as follows:

> Every person who, under color [*14] of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983. Thus, by its express terms, § 1983 applies only to "persons." Neither a state nor its agencies are "persons" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989). This is true regardless of whether the relief sought is equitable or legal in nature. *City of Kenosha v. Bruno*, 412 U.S. 507, 511-13, 37 L. Ed. 2d 109, 93 S. Ct. 2222 (1973). The PLRB is a state agency. See *Teamsters Local 115 v. PLRB*, 619 A.2d 382, 384 n.4. (Pa. Commw. Ct. 1992), appeal denied sub nom., *Teamsters Local 115 v. Court of Common Pleas of Philadelphia County*, 634 A.2d 1119 (Pa. 1993). [*15] Further, the Third Circuit has expressly held that SSHE is an arm of the state. *Skehan v. State System of Higher Educ.*, 815 F.2d 244, 249 (3d Cir. 1987). Because neither the PLRB nor SSHE are "persons" within the meaning of § 1983, the plaintiff's claims necessarily fail.

Moreover, the plaintiff's claims under § 1983 are untimely. Congress did not establish a statute of limitations for actions brought under 42 U.S.C. § 1983. Rather, pursuant to the mandate of 42 U.S.C. § 1988, n2 the courts have utilized analogous state statutes of limitations. In *Wilson v. Garcia*, the Supreme Court held that, as a matter of law, § 1983 actions should be characterized as personal injury actions for the purpose of determining the applicable statute of limitations. 471 U.S 261, 278 (1985). In

Case 1:04-cv-00415-SLR   Document 36-2   Filed 03/09/2005   Page 5 of 9

Page 5
1994 U.S. Dist. LEXIS 7409, *15; 64 Fair Empl. Prac. Cas. (BNA) 1701

Where an employee claims he was wrongfully discharged, his cause of action accrues as of the date he knows [*16] or has reason to know of the injury which is the basis of the action. *Delaware State College v. Ricks, 449 U.S. 250, 259, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991).*

n2 42 U.S.C. § 1988 provides:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of [the civil rights statutes] . . . shall be exercised and enforced in conformity with the laws of the United States . . .; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern said courts in the trial and disposition of the cause. . . .

42 U.S.C. § 1988 (West 1981).

[*17]

Fraser's claim against SSHE was not filed within the two-year limitations period. By November, 1987, Fraser had received notification that he was to be retrenched. Fraser's pro se complaint, along with a motion to proceed in forma pauperis, was received by the Clerk of Court on October 28, 1992 and filed on November 20, 1992. Thus, regardless of which of the two potential filing dates the Court uses, it is clear that the complaint, filed over four years after the cause of action accrued against SSHE, is barred by the statute of limitations.

Similarly, the action against PLRB is time barred in that Fraser knew or should have known of the PLRB's final determination in his case on or about May 29, 1990, when the PLRB issued its Final Order. Fraser's complaint, however, was not filed until October, 1992 at the earliest. Because his complaint was not filed until more than two years after his cause of action accrued, Fraser's § 1983

n3 Moreover, Fraser's claims under §§ 1981 and 1985 are untimely. The same limitations period applicable to Fraser's § 1983 applies to his actions under § 1981 and § 1985. See *Bougher v. University of Pittsburgh, 882 F.2d 74, 78 (3d Cir. 1989)* (holding that state statute of limitations for personal injury actions applies to § 1983 and § 1985 actions); cf. *Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985)* (holding that state statute of limitations for personal injury actions applies to § 1981 actions), aff'd, *482 U.S. 656, 96 L. Ed. 2d 572, 107 S. Ct. 2617 (1987).* Accordingly, because the plaintiff's § 1983 claim was not filed within the time allowed by the applicable statute of limitations, his § 1981 and § 1985 actions are, likewise, untimely.

[*18]

2. Fraser's Claim Against APSCUF

As discussed, supra, a person cannot be held liable under § 1983 unless the person's allegedly wrongful act occurred "under color of law." 42 U.S.C. § 1983. As the Third Circuit Court of Appeals held in *Jackson v. Temple Univ., 721 F.2d 931 (3d Cir. 1983),* the requirement of "state action" is a threshold requirement in a § 1983 action. *Id. at 933.* As in Jackson, Fraser has failed to direct the Court to any facts of record suggesting that the state was responsible for APSCUF or that APSCUF was acting under color of state law when it decided to pursue its litigation strategy in Fraser's state court litigation. n4 Accordingly, APSCUF is entitled to have summary judgment entered in its favor on Fraser's § 1983 claim.

n4 Indeed, the plaintiff did not file a response to the defendant's motion for summary judgment and his own motion for summary judgment contains only conclusory allegations with no citation to the record. Self serving statements of fact contained in a brief or a motion do not suffice to defeat a properly supported motion for summary judgment. *Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.), cert. denied, 474 U.S. 1010, 88 L. Ed. 2d 467, 106 S. Ct. 537 (1985).*

[*19]

D. Fraser's Claims Under §§ 1985 and 1986

1. Fraser's Claims Against the Commonwealth Defendants

tain constitutional rights. See *42 U.S.C. § 1985*(3) (West 1981). Thus, in order to maintain an action under this section, the plaintiff must be able to establish, inter alia, an unlawful agreement among two or more "persons." The term "person" under § 1985 has the same meaning as under § 1983. *Rode v. Dellarciprete, 617 F. Supp. 721, 723 n.2 (M.D. Pa. 1985)*. Having concluded that the PLRB and SSHE are not "persons" under § 1983, the Court concludes that they are, likewise, not "persons" under 1985.

The Court's disposition of the plaintiff's § 1985 claim directly impacts the plaintiff's claims under § 1986. Section 1986 provides a cause of action for failure to prevent a conspiracy. See *42 U.S.C. § 1986*. Because the plaintiff's claim fails under § 1985, his claim under § 1986 necessarily fails as well. *Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980)*, [*20] cert. denied sub nom. *Mark-Garner Assocs., Inc. v. Bensalem Township, 450 U.S. 1029, 68 L. Ed. 2d 223, 101 S. Ct. 1737 (1981)*.

Moreover, the plaintiff's claims under § 1983 and § 1985 are barred by the Eleventh Amendment of the United States Constitution. The Eleventh Amendment n5 was enacted to protect state treasuries from civil litigation by out-of-state creditors in federal courts. See *Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 5 L. Ed. 257 (1821)*. Subsequent elucidation by the Supreme Court has extended the immunity to suits by citizens of the defendant state. See, e.g., *Pennhurst State School & Hospital v. Halderman 465 U.S. 89, 100, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984)* (quoting *Employees v. Missouri Dept. of Public Health and Welfare, 411 U.S. 279, 280, 36 L. Ed. 2d 251, 93 S. Ct. 1614 (1973))*; *United States v. Texas 143 U.S. 621, 36 L. Ed. 285, 12 S. Ct. 488 (1982)*; *Hans v. Louisiana, 134 U.S. 1, 33 L. Ed. 842, 10 S. Ct. 504 (1890)*. [*21] The Eleventh Amendment immunity bars suits not only against the State qua State, but also those against "departments or agencies of the state having no existence apart from the state." *Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981)*.

> n5 The Eleventh Amendment provides as follows: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

A State is immune from suit unless the State has consented to be sued in federal court. *Atascadero State Hosp.* *Laskaris, 661 F.2d at 25* (quoting *42 Pa. Cons. Stat. Ann. § 8521(b)*). Thus, the [*22] plaintiff's claims against the PLRB and SSHE are barred by the Eleventh Amendment.

### 2. Fraser's Claims Against APSCUF

In order to maintain a claim under *42 U.S.C. § 1985*(3), a plaintiff must prove, inter alia, that the defendant participated in a conspiracy. n6 *Carpenters v. Scott, 463 U.S. 825, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983)*; *Griffin v. Breckenridge, 403 U.S. 88, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971)*. To do so, the plaintiff must establish that the defendant entered into an "agreement" or "meeting of the minds" to deprive the plaintiff of equal protection of the laws. *Caldeira v. County of Kauai, 866 F.2d 1175 (9th Cir.), cert. denied, 493 U.S. 817, 107 L. Ed. 2d 36, 110 S. Ct. 69 (1989)*. APSCUF argues that there are no facts of record from which a reasonable factfinder could find that it entered into an agreement with SSHE to violate Fraser's civil rights, and, in support of its argument directs the court [*23] to the following testimony by Fraser at his deposition:

> n6 Specifically, the plaintiff must prove the following elements: (1) a conspiracy; (2) motivated by class-based invidiously discriminatory animus; (3) to deprive one of equal protection of the law; (4) that the conspirators committed some act in furtherance of the conspiracy; and (5) that the plaintiff was injured in his person or property or deprived of a right or privilege as a United States citizen. *Carpenters v. Scott, 463 U.S. 825, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983)*; *Griffin v. Breckenridge, 403 U.S. 88, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971)*.

> Q: [By SSHE Attorney] Do you have any knowledge of an agreement between the defendants, and when I say 'the defendants', I mean in any configuration, do you have any knowledge of any agreement between them to violate your civil rights or your Title 17 [sic]?

> A: Actions. I don't [*24] have any indication of there [sic] having sat down around a table and discussed this matter, no, but I do have indications by their actions of concerted effort. . . .

Case 1:04-cv-00415-SLR    Document 36-2    Filed 03/09/2005    Page 7 of 9    Page 7

1994 U.S. Dist. LEXIS 7409, *24; 64 Fair Empl. Prac. Cas. (BNA) 1701

A: An effort working together.

Q: Do you have any facts in support of that, other than the fact that you feel that each of them have somehow wronged you?

A: No, they entered into . . . concerted action against me. I — for example, in the — in the — in my efforts to try to get the question of racial discrimination dealt with before the Commonwealth Court by attacking the arbitrators' decision in this matter, my union, which I would have expected and hoped would support its contract barring racial discrimination and laws barring racial discrimination, and support my complaint in Commonwealth Court. Instead, they filed a brief using my resources that I had helped to give them, a brief against my right claiming I had no standing to bring such a charge. So far as I'm concerned, that's conspiratorial.

Q: Do you have any other facts supporting your claim of conspiracy?

A: There are other . . . evidences of this. I felt that when [*25] the Union declined or refused to deal with the issue of the violation by the PLRB of the State Sunshine Act beyond the level of the Commonwealth Court, that it had, in fact joined in a conspiracy to violate my 1st Amendment Rights, my 14th Amendment due process rights, and other rights that I might have had to protect myself from discrimination.

The union knew that despite the fact that the

Commonwealth Court hadn't addressed this issue, in its opinion, that did not mean the issue was . . . invalid or dead. And it could have taken further action on my behalf, which it refused to do, so I believe it was conspiratorial and meant to leave me high and dry without anyone to protect my rights as a citizen or as a principal under this contract.

(APSCUF's Mem. of Law. pp. 36–37).

Even when viewed in the light most favorable to Fraser, the foregoing testimony does not establish that

on one occasion, APSCUF's counsel and SSHE's attorney may have independently reached the same conclusion on a point of law, namely, that Fraser lacked independent standing to pursue an [*26] appeal of the arbitrator's decision, does not, standing alone, create a triable issue of fact on whether APSCUF and SSHE had a "meeting of the minds" whereby they agreed to deprive Fraser of his civil rights. Cf. *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 653 (8th Cir. 1989); *Money v. Great Bend Packing Co., Inc.*, 783 F. Supp. 563, 575–76 (D. Kan. 1992). At most, Fraser's deposition testimony, if believed, established that APSCUF did not pursue all of the legal arguments that Fraser believed to be potentially meritorious. Thus, APSCUF has met its initial burden under Celotex. See *Celotex, supra*, at 323; see also *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1581–82 (3d Cir. 1992) (holding that where movant is party without burden of proof on underlying claim, movant need not produce evidence negating opponent's case, but rather, need only point to lack of any evidence supporting nonmovant's claim).

Under such circumstances, Fraser cannot rest upon the mere allegations [*27] contained in his pleadings. Rather, under Celotex and *Federal Rule of Civil Procedure 56(e)*, he must direct the Court to record evidence supporting his claim. *Celotex, supra*, at 324. Neither Fraser's cross-motion for summary judgment, nor his memoranda of law contain any citations to the record. Accordingly, he has failed to sustain his burden.

E. Title VII

1. Claims Against the Commonwealth Defendants

The plaintiff's Title VII claims against the Commonwealth Defendants lack merit. Title VII imposes duties upon certain statutorily defined covered entities, including, "employers," "labor organizations" and "employment agencies". See *42 U.S.C. § 2000e-2*. The PLRB is not an employer, labor organization or employment agency as those terms are defined in Title VII. Id. § 2000e(b) (employer); § 2000e(c) (employment agency); § 2000e(d) (labor organization). Accordingly, the PLRB is entitled to summary judgment on the plaintiff's Title VII claim.

SSHE argues that Fraser's claim is barred by the statute of limitations under Title VII. Title VII has a two-tiered statute of limitations. The first [*28] tier of the statute of limitations requires Title VII plaintiffs to commence administrative proceedings within the period allowed by statute. Specifically, in order to bring a civil action un-

days of when the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e); *Seredinski v. Clifton Precision Prods Co.*, 776 F.2d 56, 61 (3d Cir. 1985). As the court of appeals noted in Seredinski, "there is, however, an important proviso: 'no charge may be filed . . . by the person aggrieved before the expiration of sixty days after the proceedings have been commenced under the state or local law, unless such proceedings have been earlier terminated. . . .'" *Seredinski*, 776 F.2d at 61 (quoting 42 U.S.C. § 2000e-5(c). The net result of § 2000e-5(e) and § 2000e-5(c) is that,

> where state proceedings are commenced by the EEOC sending notice to the state agency upon its receipt of a Title VII charge, as is often the case [*29] in deferral states . . . the 300-day limitation period is effectively cut to 240 days, because the Title VII charge—though it has been received by the EEOC—may not be deemed filed until sixty days later.

*Seredinski*, 776 F.2d at 61 (citation omitted).

The second tier of the statute requires Title VII plaintiffs to commence a civil action within the requisite time the administrative proceedings have concluded. As the Third Circuit stated in Seredinski, "assuming that the charge is timely filed and the EEOC issues a 'right-to-sue' letter, a Title VII complainant then has 90 days to file a lawsuit." *Id.* at 61 n.5 (emphasis added); 42 U.S.C. § 2000e5(f)(1).

Fraser argues that his claim is timely because it was filed within ninety days after he received a "right to sue" letter from the EEOC. The Court disagrees. In order to proceed under Title VII, the plaintiff must comply with both the deadline for commencing administrative proceedings and the deadline for commencing a civil action. See *Seredinski*, 776 F.2d at 61 n.5.

Fraser received notice [*30] that he was to be retrenched no later than November, 1987 and his discharge became effective in May, 1988. However, Fraser did not file his complaint with the PHRC until June 5, 1989 and, according to Fraser's own deposition testimony, the complaint was not filed with the EEOC until September, 1989. Thus, Fraser's administrative complaint, filed with the PHRC well beyond the 240-day filing period and with the EEOC well beyond the three-hundred day filing period under Title VII, is time-barred. n7

n7 The Court recognizes that the statute of limitations period is available "when the defendant has actively misled the plaintiff respecting the cause of action or where [its] own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights." *Clark v. Sears Roebuck & Co.*, 816 F. Supp. 1064, 1069 (E.D. Pa. 1993); see also *Miller v. Beneficial Mgt. Corp.*, 977 F.2d 834, 844 (3d Cir. 1992). The plaintiff has not alleged, and, indeed, the record does not support a conclusion that the defendant actively misled the plaintiff or lulled him into anything. Rather, the plaintiff merely contends that his right to file a civil action in was somehow revived by the EEOC's issuance of a right to sue letter. In light of Seredinski, the Court rejects the plaintiff's contention. Cf. *Williams v. John Hancock Ins. Co.*, Civ. A. No. 91-7165, 1992 W.L. 201106 (E.D. Pa. Aug. 7, 1992) (holding that EEOC "right to sue" letter does not revive claim that is barred by statute of limitations).

[*31]
2. Fraser's Title VII Claim Against APSCUF

APSCUF argues that the Court may not reach the merits of Fraser's claim because APSCUF is not a covered entity under Title VII. Title VII imposes duties upon "employers," "employment agencies" and "labor organizations." See 42 U.S.C. § 2000e-2. It is clear for present purposes that APSCUF was neither Fraser's "employer" nor an "employment agency." *Id.* §§ 2000e(b), 2000e(c). Indeed, Fraser did not allege in his complaint that APSCUF was his "employer" or an "employment agency." Rather, APSCUF is a labor union, representing faculty members, such as the plaintiff, at Pennsylvania's public universities. Accordingly, if APSCUF is a covered entity under Title VII for present purposes, it would be as a "labor organization" n8. 42 U.S.C. § 2000e(d).

n8 Specifically, the term "labor organization" is defined as follows:

> a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association or plan so engaged in which employees participate and which exists for the purpose, in whole or in part,

Case 1:04-cv-00415-SLR   Document 36-2   Filed 03/09/2005   Page 9 of 9

Page 9
1994 U.S. Dist. LEXIS 7409, *31; 64 Fair Empl. Prac. Cas. (BNA) 1701

rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

42 U.S.C. § 2000e(d).

[*32]

APSCUF is a private entity, not an arm of the state. See *Saini v. Bloomsburg University Faculty*, 826 F. Supp. 882, 886 (M.D. Pa. 1993). Accordingly, it can be regulated by Congress only through the Commerce Clause of the United States Constitution. See id. As the Saini court observed, "in keeping with the constitutional basis for Congress' exercise of authority over private organizations, Title VII applies only to labor organizations which are 'engaged in an industry affecting commerce'" Id. at 887 (quoting 42 U.S.C. § 2000e(d)).

The plaintiff bears the burden of demonstrating the requisite nexus between the defendant and interstate commerce. Id.; *Equal Employment Opportunity Comm'n v. California Teachers Ass'n*, 534 F. Supp. 209, 217 (N.D. Cal. 1982). He can discharge his burden in either of two ways. First, he can attempt to demonstrate that APSCUF is "itself an industry affecting commerce—that is, that [APSCUF] is an 'activity, business or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free [*33] flow of commerce. . . .'" *California Teachers Ass'n*, 534 F. Supp. at 218 (quoting 42 U.S.C. § 2000e(h)). Alternatively, he can seek to prove that APSCUF is a labor organization deemed to be engaged in an industry affecting commerce. See id.; 42 U.S.C. § 2000e(e). With certain exceptions that are inapplicable to the present case, only an organization that "(1) maintains or operate a hiring hall or a hiring office which procures employees or employment opportunities, or (2) has fifteen or more members and represent employees of an employer which is engaged in an industry affecting commerce shall be deemed to be engaged in an industry affecting commerce." *Saini*, 826 F. Supp. at 867; see 42 U.S.C. § 2000e(e).

In this case, as in California Teachers Ass'n and Saini, the plaintiff has not even alleged in his complaint, much less directed the Court to any evidence of record from which the Court could find that APSCUF is engaged in an industry affecting commerce within the meaning of § 2000e. [*34] Indeed, in his memorandum of law in response to APSCUF's motion, Fraser states that "because defendant, APSCUF is not a labor organization within the meaning of Title VII, plaintiff will not respond to defendant APSCUF's argument on same." (Plaintiff's Mem. of Law, at 1) (emphasis added). Accordingly, as in California Teachers Ass'n and Saini, this Court holds that the defendant-union is not a covered entity under Title VII.

The Court's Final Judgment follows.

**FINAL JUDGMENT**

AND NOW, this 3rd day of June, 1994, upon consideration of the Defendant Pennsylvania State System of Higher Education ("SSHE") and the Pennsylvania Labor Relations Board's ("PLRB") (collectively referred to as the "Commonwealth Defendants") Motion for Summary Judgment, the Plaintiff Wilmot A. Fraser's ("Fraser") response, the Defendant Association of Pennsylvania State College and University Faculties' ("APSCUF") Motion for Summary Judgment, Fraser's response, Fraser's Motion for Summary Judgment, the Commonwealth Defendant's response and APSCUF's response, IT IS HEREBY ORDERED that the Commonwealth Defendants' Motion for Summary Judgment and APSCUF's Motion for Summary Judgment are **GRANTED** [*35] , and Fraser's Motion for Summary Judgment is **DENIED**.

IT IS FURTHER ORDERED that Judgment is entered in **FAVOR** of the Commonwealth Defendants and APSCUF and **AGAINST** Wilmot P. Fraser.

BY THE COURT:

HERBERT J. HUTTON, J.