IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ERIC A. CHAMBERS,               *
                                *
            Plaintiff,          *
                                *
                                *
                                *
                                *
      v.                        *      Case No. 04-415 SLR
                                *
                                *
                                *
                                *
                                *
                                *
JOHN DOES 1-7,                  *
DONALD J. BOWMAN,JR.,           *
CITY OF WILMINGTON DELAWARE,    *
DELAWARE S.P.C.A., and          *
SGT. ELLIOTT,                   *
                                *
            Defendants.         *
                                *

FILED

JUN 2 3 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PLAINTIFF'S INTERROGATORIES FOR
DEFENDANTS

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S). YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.

<u>Mike Rodriguez</u>

1. When you seen the dogs, as your interview statement says, did the dogs charge you?

2. Did you hear the dogs barking or growling when you seen them?

3. Where the dogs standing still when you seen them out of the corner of your eye?

4. Why didn't <u>you</u> unholster your weapon and shoot the dogs if they were charging <u>you</u>?

5. Where were you and the plaintiff located, when the one dog was shot?

6. Did you feel like you were in danger when the dogs came into your eyesight?

7. Did you hit the front door with the battering ram?

8. Are you 100 percent certain, it was <u>you</u>, who brought the plaintiff down the stairs to Sgt. Spell?

9. Since you were the first officer inside the residence and was the first officer to come in contact with the plaintiff, did you ever say anything or give any commanding orders to the plaintiff, if so; what were they (exactly)?

(1)

10. Did you discharge your weapon during this incident?


Date:_____          Name:_____

                                       Address:_____

**COMES NOW,** PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S), YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.

<u>Danny Silva</u>

1. There is an Notorized Affidavit for every CMTT member, where is yours/ why hasn't yours been submitted along with all the rest?

2. Weren't you assigned to assist Rodriguez in breeching the door?

3. So, considering you are <u>one</u> of the first and initial officers in the "line-up", if Pfaff was supposed to be the first man to enter, how/why did Rodriguez enter the residence first?

4. Behind/infront of who (please state the officer's name), did you enter the residence?

5. You stated; you saw Rodriguez chase suspect up the stairs ...so you actually SAW the suspect/plaintiff on the stairs?

6. Where was the plaintiff located inside the residence, when the dog was shot?

7. When you seen the dogs, were the dogs charging at you, if so, why didn't you shoot the dogs?

8. Were you in any fear when you were in the house?

9. Did you see who shot the dog/ did you witness the dog being shot?

10. Who hit the door with the battering ram?

Date:_____          Name:_____

                                Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO
RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF
SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S).
YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN
WRITING UNDER OATH.

### Randy Pfaff

1. Was the dog shot before or after the plaintiff was handcuffed on the floor?

2. Did you have prior knowledge/information that there were animals/pets and children in the house before/prior to executing the warrant?

3. Where did the dogs stop (location within the residence), when they entered the room where you first seen them?

4. Who were the dogs charging at, Rodriguez or you?

5. Out of all of the officers involved in this incident, everyone related their version of the events and a summarized occurrence of their activities, in an Activity Report...why didn't you?

6. Did you see the dog go up the stairs, past Rodriguez and the plaintiff?

7. You stated; when you entered the residence, mike went directly to your left, on the stairs, and the dog was coming from an angle...charging mike, why would the dog BYPASS you, to get to mike?

8. If the dog was shot (by you) and ran past mike (and we assume the plaintiff), can you attempt to explain/give your opinion as to HOW or WHY officers 7th,8th and 9th- in the lineup, could

(5)

or <u>would</u> hear the plaintiff say; don't shoot my

dog, when he (the plaintiff) would have already

seen/witnessed <u>you</u> doing so?

9. Was anyone ( plaintiff or officers ) treated for having

any blood on them or their clothing?

10. You stated that the dog (you shot) was close

enough for you to reach out and touch with your

foot...when you shot it, yet, why would you assume

that the dog was attacking Rodriguez, when YOU were

so close/the closest unfamiliar individual?


Date: _____          Name:_____

                                Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO
RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF
SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S),
YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN
WRITING UNDER OATH.

### Scott Jones

1. Did you see the dogs charging at Rodriguez or make
   any type of aggressive gestures, possibly leading
   into an attack on Rodriguez?

2. Can you explain; what the term/words "b line",
   represents or means-in the context inwhich you used
   them, you used this terminology when you described
   how the dogs were moving?

3. If you thought the dogs were about to attack Rodriguez,
   or ANY other officer, would you have shot/discharged
   your weapon (knowing there were small children within
   the residence), to prevent an assumed attack...or
   would you rely and hope/count on another officer
   shooting first?

4. Would you hve shot both dogs (firing twice or more)
   or just one...if BOTH dogs were charging/attacking?

5. Did you feel threatened or in danger, when the dogs
   were moving,and if so, why didn't <u>you</u> shoot...
   since you were right next to Randy Pfaff?

6. How many gunshots did you hear?

7. Are you certain the door was hit with the battering
   ram?

8. How many times did Pfaff shoot/discharge his weapon?

9. How many times did Rodriguez discharge his weapon?

10. Did anyone discharge their weapon at the threshold of the residence/the door?


Date: _____          Name:_____

                                 Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO
RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF
SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S),
YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN
WRITING UNDER OATH.

<u>Thomas Spell</u>
------------------------------

1. When you entered the residence, where did you
   observe/find the the plaintiff located?

2. You stated in your Affidavit that; "you recall that
   prior to the actual entry of the CMTT, the plaintiff
   was holding the front door closed to prevent our entry"...
   how did you <u>know</u> or come to make such a statement,
   did you witness the plaintiff holding the door or
   was that what you were <u>told</u> or assumed?

3. Where was the young black male who was initially
   encountered on the porch, while the dog was being
   shot and the events unfolded?

4. Can you provide an EXACT order of how/when/in what
   sequence, the CMTT officers entered the residence?

5. What was the time lapse/how long was the entire
   incident...from the moment the first CMTT officer
   entered the residence - to the moment the plaintiff
   was removed?

Date: _____          Name:_____

                                Address:_____

(9)

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO
RULE 33 AND 34. FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF
SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S).
YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN
WRITING UNDER OATH.

Christopher A. Vitale
--------------------------------

1. How many sots did you hear coming from the
   residence?

2. From your assigned position, infront of the residence,
   with the K-9 unit... if any shots were fired,
   wouldn't you be close enough to hear them?

3. How is it that you did not hear any shots, yet
   O'Neill DID, and he/she was assigned OUTBACK of the
   residence...which is/was further than where the
   alleged one (1) shot was fired?

4. Exactly where were you positioned, infront of the
   residence...how many feet from the front door,
   to the left or the right (of the door)?

5. Can you recall the location of the young black
   male, who attempted to enter the residence?

6. Do you think this young black male was close
   enough to see, hear and witness the entire incident
   unfold?

Date:_____          Name:_____

                                    Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S). YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.

Mathew J. Severance

1. You've testified (via Affidavit); you were last in the door and heard theplaintiff state: "don't shoot my dog"... so you're testifying that the dog wasn't shot when you entered the residence?

2. At that particular time (when you entered the residence), was the plaintiff already handcuffed and laying on the floor?

3. Was the dog shot before or after the plaintiff was arrested and handcuffed on the floor?

4. How many gunshots did you hear, during the entire incident?

5. Was the plaintiff handcuffed and on the floor when you heard him say: "don't shoot my dog?"

6. So, can you give your opinion - how it can be possible for you to hear gunshots coming from inside the residence, which indicates #1) you weren't inside the residence yet. #2) the dog was shot prior to your entrance...so how could you hear the plaintiff say "don't shoot my dog". And #3) If the dog was shot prior to your entrance, how was the plaintiff NOT physically laying in his dog's blood?

7. Before you entered the residence, where was the

young black male, who was initially encountered
on the porch?


Date:_____          Name:_____

                               Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO
RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF
SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S).
YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN
WRITING UNDER OATH.

Steven T. Elliott
-------------------------------

1. You conducted an investigation on July 22, 2002,
   interviewing Randolh Pfaff, at that time/in that
   interview's case summary and conclusion, you
   stated " the dog was struck in the chest cavity"...
   was your statement based upon what you were <u>told</u>
   by Pfaff or did your information/results derive
   from your viewing of the dog's wounds/body?

2. Did you ever have the oppertunity to view the
   post-mortem pictures of the dog, to uphold or
   dispell (find out the truth), where you were "told"
   the dog was struck/shot?

3. Could you possbly "speculate: on why the plaintiff
   would instruct the authorities of exactly what time
   he'd be home (to be arrested...after his childrens'
   mother would be home to gain control of their children)
   ...then resist arrest as if the authorities' arrival
   was a surprise?

4. Didn't it ever occurr to you and your investigation;
   the vast number of contradictions, varying testimonies,
   unsubstantiating physical evidence or unbelievable
   scenerios were a direct indication that the incident
   and events DID NOT transpire and happen as certain
   interviewees have/are indicating and testifying under
   oath to/about?

(13)

5. During the course of your investigation;
   did you interview or make any attempts to do so -
   any of the eye witnesses who were outside of their
   residences watching the entire incident unfold?

6. Did you attempt to interview the young black
   male, the CMTT officers confronted and detained
   on the porch, if not...why?

7. Were you aware that there was a pre-text call, at
   approximately 4:30 pm, on the day of the incident?

8. Why didn't you interview any of the ATF agents,
   who were involved/present at the scene?

9. Why didn't you interview the plaintiff, afterall,
   the entire incident/arrest was about/for him?

10. Would you have shot the dog (with the knowledge
    that there were small children within the home),
    or warned/commanded a family member to control their
    pet first?

Date:_____        Name:_____

                                      Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO
RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF
SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S).
YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN
WRITING UNDER OATH.

Scott Chaffin
---------------------------------

1. You interviewed the plaintiff, Eric Chambers
   at the police station; where is/why hasn't a
   copy or transcript of this interview been provided
   to the plaintiff (along with all the other
   parties involved, interviews)?

2. Did you interview any of the neighbors/neighboring
   residence, that were witnesses to the entire incident,
   if not, why?

3. Didn't you believe or think it was important or
   crucial to your Fact Finding efforts of learning,
   amassing and obtaining the truth, as to WHAT and
   HOW the incident/events transpired?

4. Did you interview the individual who was initially
   encountered on the porch, as a potential EYE WITNESS
   to the entire event?

5. Why didn't you interview any of the ATF agents, who
   would be DIRECT WITNESSES, since they had the residence
   under surveilence **prior to, during** and **after** the
   CMTT unit/Wilmington Police Department was dispatched
   to the residence?

6. Will you please provide the plaintiff and the Court
   with a copy/transcript of the interview you conducted
   with the plaintiff on June 24, 2002?

Date:_____          Name:_____

                              Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO
RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF
SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S).
YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN
WRITING UNDER OATH.

David M. Simmons
-------------------------------

1. Which officers were infront and behind you as you
   entered the residence?

2. Are you 100% certain, you observed the plaintiff on the
   stairs?

3. Are you 100% certain, you "ordered target to move to
   floor while covering target?"

4. Can you provide an explination (strictly your own opinion);
   how three (3) DIFFERENT officers, at three (3) DIFFERENT
   TIME PERIODS - can/would testify that they all "ordered",
   "escorted" and "physically moved"...the same plaintiff
   from the same set of stairs? (you being one of the three (3)
   different officers)

5. At the time you entered the residence, had you already
   heard the gunshots?

6. When you entered the residence, where (give their location)
   were the plaintiff, Rodriguez, Pfaff and the dogs?

7. Did you see the dog on the stairs behind the suspect...
   barking?

8. Was there any blood at the base of the stairs or on the
   stairs when you moved to the 2nd floor of the residence?

9. In which room did you locate the adult female and child?

10. Did you ever walk past the plaintiff on the stairs?

Date:_____          Name:_____

                             Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S). YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.

### Coffiey

------------------------------

1. Did you see the dogs charge Rodriguez or any other officer?

2. If so, why didn't you mention this information in your Activity Report, signed 6-24-2002?

3. Why didn't you shoot the dog, since you testified that the dog was barking and aggressive towards the other officers?

4. When the dog ran up the stairs barking, did it run past any of the officers...if so, which officers?

5. Are you aware that you've testified that you seen the plaintiff **AND** the black female on the stairs at the same time?

6. How is it/can you explain; how it was possible for you to confront the plaintiff on the stairs, when officer Rodriguez had already brought the plaintiff down the stairs and handcuffed him on the floor - by the time you would have/entered the residence?

7. You testified that the dog ran up the stairs and stopped behind the suspect and started barking... Are you 100% certain that you witnessed this occurrence?

8. How could you testify to the above events, yet, Rodriguez (who was allegedly **first** inside the residence and closest to the plaintiff, on the stairs)...Pfaff (who was reported to be **second** inside the residence and admits to shooting the dog)...not ONE other officer **before you** testified to anything remotely similar - to what you have... did you really see what you have stated under oath?

9. Did you make an Affidavit, like every other officer involved/present in this incident/arrest, if so, where is your Affidavit? (the plaintiff never received an under oath Affidavit from you)

10. Where did you first confront the black female and infant in her arms...what room of the residence?

Date:_____        Name:_____

Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER, THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S), YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.

Robert E. Donovan
-------------------------------

1. On July 8, 2002, you conducted a Supplement Report as an investigator, wherein, you stated at the time of the shooting - only three (3) members (police officers: Rodriguez, Pfaff and Jones) had entered the residence, if such is true and correct, wouldn't everyone else's testimony/version be conflicting/contradicting as far as the time frame/time period is concerned?

2. What does (CU) mean and/or represent? It's in every POLICE OFFICER'S interviewing statements/answers, yet isn't used **once**, in any NON-DEPARTMENTAL personel's answers.

3. Did you interview the young black male that was initially encountered on the porch?

4. Why wasn't he interviewed as a EYE WITNESS?

5. Did you interview any of the ATF agents who witnessed the entire incident from the perimeter?

6. Wouldn't their testimony be significant to your investigations?


Date:_____          Name:_____

                                Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S). YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.    Evidence Detection Unit:

Roger Cresto
------------------------------

1. When you processed the crime scene for photographs and physical evidence, did you process any footprints in the blood; on the steps or surrounding area(s) that would indicate the plaintiff or any officers were on the stairs when the dog was shot?

2. According to the majority of the officers' testimonies and affidavits, the door was hit with a battering ram...did you or why DIDN'T you - take a photo of this alleged damaged door?

3. Whenever a door is usually hit with a battering ram, isn't there sufficient damage to the door and/or the door frame?

4, The majority of the officers' stated: the plaintiff was handcuffed, on the floor, at the bottom of the stair-well/stairs...did you find any evidence to substantiate and support their statements?

5. Wasn't there a sizeable amount of the dog's blood at the bottom of the stairs and ON the stairs (view photos)?

6. Based on the evidence you gathered, the plaintiff was not and could not have been - on the stairs NOR laying at the bottom of the stairs, handcuffed on the floor, PRIOR to the dog being shot, at the bottom of the stairs...could he?

7. If so, he would have been laying in his dog's blood, coorect?

Date:_____    Name:_____

Address:_____

(20)

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S). YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.

Aaron Goldstein
--------------------------------

1. When you and Sgt. Elliott returned to the scene(2704 Creston Place), your reasoning for being there - was to do what?

2. How are you employed, involved in this incident?

3. You made a scetch/lay-out of the scene indicating certain scenerios and assumptions - as to how you viewed the scene...did you view any footprints or "body marks/body imprints in the blood on the stairs or surrounding the area the dog was shot?

4. In your own expert opinion and based on how you viewed the scene, do you think it would have possible for theplaintiff and officer Rodriguez to be located on the stairs...while the dog was being shot, at the bottom of the stairs, yet traverse down the stairs and out the door...without at least one (1) "marking"(bloody footprint), to indicate the plaintiff was on the stairs or even crossed the area WHERE and most importantly WHEN...the dog was shot?

5. Would it be standard operating procedure - for you to make a note: to record, every occurrence relating to the scene and the officers' actions and conduct?

6. Based on your recollection and review (and you may review the photos, where would you say the gunshot wounds are/were - on the dog; (chest, side, belly, head)?

7. Exactly where is the ENTRY wound, and where is the EXIT wound?


Date:_____          Name:_____


                               Address:_____

COMES NOW, PLAINTIFF, ERIC A. CHAMBERS, PURSUANT TO RULE 33 AND 34, FED.R.CIV.P., AND COURT ORDER. THE PLAINTIFF SUBMITS THE FOLLOWING INTERROGATORIES TO THE DEFENDANT(S), YOU ARE DIRECTED TO ANSWER EACH OF THE INTERROGATORIES IN WRITING UNDER OATH.

## S.P.C.A.

1. WHO WAS THE SUPERVISOR THAT WAS CONTACTED/DISPATCHED AN EMPLOYEE, ON THE DAY OF THE INCIDENT?

2. WHERE'S PAGE #1 OF THE S.P.C.A. POLICY MANUEL?

3. WHY DID THE S.P.C.A. HOLD THE DOG - LONGER THAN PRESCRIBED BY POLICY, IF YOU MAINTAIN YOU FOLLOWED POLICY?

4. WHAT WAS THE EXACT DATE OF THE CREMATION OF THE ANIMAL?

5. DO YOU NORMALLY RECEIVE ANY DESCRIPTIONS/ ANY INFORMATION - PROIR TO ARRIVING ON A SCENE?

6. DO YOU MAINTAIN RECORDS OF SUCH PRE-TEXT INFORMATION?

7. WHAT IS THE NAME OF THE EMPLOYEE WHO ACTUALLY PERFORMED THE CREMATION?

## JOHN SAVILLE

1. WHEN YOU AND SGT. DONOVAN EXAMINED THE DOG, WHERE DID YOU NOTICE THE GUNSHOT WOUND(S)?

2. DID YOU MAKE A NOTE/A REPORT OF YOUR EXAMINATIONS OF ANY TYPE OF FACTS PERTAINING TO WHAT YOU WITNESSED?

3. WHAT IS THE NAME OF THE EMPLOYEE WHO RECEIVED THE DOG AT THE S.P.C.A. OFFICE/ WHO DID YOU TURN OR DELIVER THE DOG OVER TO?

DATE: _____     NAME: _____

ADDRESS: _____

## DECLARATION

I, Eric Chambers   , hereby declare and affirm, under the penalty of perjury pursuant to 28 USC §1746(2), that the foregoing pleading is true and correct to the best of my knowledge and recollection, on this 21ST day of  June    200 5.

Fed. Reg. No. 04536-015
FCI Allenwood (Med)
P.O. Box 2000
White Deer, PA. 17887-2000

## CERTIFICATE OF SERVICE

I, Eric Chambers      , hereby certify that the foregoing Pleading, along with the declaration, have been served by placement in this institutional legal mailbox, first-class postage prepaid, on this 21ST day of  June  , 2005, to:

a. Office of the Clerk
   U.S. District Court
   844 N. King St., Lockbox 18
   Wilmington, DE. 19801-3570

b. Rosamaria Tassone
   Assistant City Solicitor
   Louis J. Redding City/County Bldg.
   800 N. French St., 9th flr.
   Wilmington, DE. 19801

c. Donald L. Gouge Jr.
   800 King St., Suite 303
   P,O. Box 1674
   Wilmington, DE. 19801

Fed. Reg. No. 04536-015
FCI Allenwood (Med)
P.O. Box 2000
White Deer, PA. 17887

RE: PLINTIFF'S INTEROGATORIES FOR DEFENDNTS.

2005  HARRISBURG PA    21

FCI Allenwood (Med)
P.O. Box 2000
White Deer, PA. 17887    JUN

Peter T. Dalleo
Office of the Clerk
U.S. District Court
844 N. King St., Lockbox 18
Wilmington, DE. 19801

RECEIVED
JUN 2 1 2005
FCI ALLENWOOD
RECORDS OFFICE

ALLENWOOD FEDERAL CORRECTIONAL INSTITUTION
WHITE DEER, PA 17887-2500

_____
DATE

THE ENCLOSED LETTER WAS PROCESSED THROUGH
SPECIAL MAILING PROCEDURES FOR FORWARDING TO
YOU. THE LETTER HAS BEEN NEITHER OPENED NOR
INSPECTED IF THE WRITER RAISES A QUESTION OR
PROBLEM OVER WHICH THIS FACILITY HAS
JURISDICTION, YOU MAY WISH TO RETURN THE
MATERIAL FOR FURTHER INFORMATION OR
CLARIFICATION. IF THE WRITER ENCLOSES
CORRESPONDENCE FOR FORWARDING TO ANOTHER
ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE
ABOVE

LEGAL MAIL