# USE OF FORCE/DEPARTMENTAL WEAPONS

Directive: **6.7**

I.    Purpose:

The purpose of this directive is to establish a uniform policy that will provide members of this Department with guidelines on the use of deadly, less than lethal force and non-deadly force.

II.   Policy:

This Department recognizes and respects the value and special integrity of each human life. The value of human life is immeasurable in our society. Police officers have been delegated the ultimate responsibility to protect life and property and to apprehend criminal offenders. The apprehension of criminal offenders and the protection of property must, at all times, be secondary to the protection of life. The officer's responsibility for protecting life must include his or her own.

In vesting police officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Wilmington Police Department to use the minimal degree of force that is reasonably necessary to effectively bring an incident under control while protecting the lives of the officer or another.

III.  Definitions:

1.    Deadly force:

Any use of force that is likely to cause death or serious bodily injury, or which creates some degree of risk that a reasonable prudent person would consider likely to cause death or serious bodily injury.

2.    Non-deadly force and less than lethal force:

Any use of force other than that which is considered deadly force.

Directive 6.7
Revised

1

11 May 2004

3.    Reasonable Belief:

The facts or circumstances the officer knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

4.    Serious Physical Injury:

That which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ.

IV.    Continuum:

The use of force should follow a prescribed continuum: physical presence, verbal warning, verbal command, hands-on control, hands-on counter measures, intermediate weapon (which includes the choice of a chemical weapon, Asp baton),and finally, if necessary, the use of deadly force.

However, members should be mindful that the force needed to control an incident may not fall on the prescribed continuum sequentially in all circumstances. Therefore, members should use their discretion to quickly and safely apply the necessary level of force to meet situations involving arrest, safety of citizens or officer self-defense.

V.    Procedure:

A.    Parameters for use of deadly force:

1.    An officer is authorized to un-holster his pistol whenever he has reasonable suspicion to believe that he or anyone in his immediate vicinity is in imminent danger or physical harm.

2.    If feasible, prior to using a firearm, the officer shall identify himself as a police officer and shall give warning.

3.    An officer is authorized to use deadly force if the officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm to the officer or others.

4.    An officer may use deadly force to prevent the

escape of a fleeing felon whom the officer has probable cause to believe will pose a significant threat to human life should escape occur.

5.  A police officer may also discharge a weapon under the following circumstances:

    a.  During range practice or competitive sporting events.

    b.  To destroy an animal under the following circumstances:

        1)  For self-defense,

        2)  To prevent substantial harm to the officer or another,

        3)  When the animal is so badly injured that it is humane to relieve suffering. When feasible, a seriously injured or wounded animal may be destroyed only after all attempts have been made to request assistance from the Delaware S.P.C.A. and/or with the approval of a supervisor.

        4)  Whenever an animal is shot by an officer or an officer discharges a weapon for the purpose of destroying an animal, the officer's immediate supervisor will conduct an investigation of the incident.

6.  Police officers shall adhere to the following restrictions when their weapon is exhibited:

    a.  Except for maintenance or during training, police officers shall not draw or exhibit their firearm unless circumstances create reasonable cause to believe that it may be necessary to use the weapon in conformance with this policy.

    b.  Warning shots are prohibited.

    c.  Police officers shall not fire their weapons at, or from a moving vehicle except for under exigent, life-threatening circumstances.

          d.     Firearms shall not be discharged when it appears likely that an innocent person maybe injured.

B.    Parameters for use of non-deadly force:

    1.    Where deadly force is not authorized, officers should assess the incident in order to determine which non-deadly technique or weapon will best de-escalate the incident and bring it under control in a safe manner.

    2.    Officers are authorized to use Departmental approved non-deadly force techniques, less than lethal force (extended range impact weapon) and issued equipment for resolution of incidents, as follows:

          a.     To protect themselves or another from physical harm, or

          b.     To restrain or subdue an actively resisting individual, or

          c.     To bring an unlawful situation safely and effectively under control.

    3.    Extended Range Impact Weapons shall only be used by the C.M.T.T. Unit.

C.    Training and qualifications:

    1.    Deadly weapons:

          a.     While on-and off-duty, officers shall carry only weapons and ammunition authorized by and registered with the Department.

          b.     Authorized weapons are those with which the officer has qualified and received Departmental training on proper and safe usage, and that are registered and comply with Departmental specifications. (Refer to Directive 6.48, entitled "Annual Firearms Training and Qualifications.")

          c.     The Firearms Instructor shall schedule regular training and qualification sessions for duty,

off-duty and specialized weapons, which will be graded on a pass/fail basis.

d.   Officers who fail to receive a passing score with their duty weapon(s) in accordance with Departmental testing procedures shall be relieved of their police powers and immediately reassigned to non-enforcement duties.

e.   An officer shall not be permitted to carry any weapon with which the officer has not been able to qualify during the most recent qualification period.

f.   An officer who has taken extended leave or suffered an illness or injury that could affect his use of firearms ability will be required to re-qualify before returning to enforcement duties.

2.   Non-deadly force weapons and Less Lethal Weapons:

a.   An officer is not permitted to use a non-deadly weapon or less lethal weapon unless qualified in its proficient use as determined by training procedures.

b.   Chemical weapons, and night sticks, and the ASP Baton when used in accordance to Departmental policy and training, are the only non-deadly weapons which are authorized by the Department.

D.   Reporting uses of force:

1.   A Defensive Tactics Report will be required in the following circumstances:

a.   When a firearm is discharged outside of the firing range.

b.   When a use of force results in death or injury.

c.   When a non-lethal weapon (such as chemical weapons) is used on a person.

d.   When an officer sustains or complains that an injury has been inflicted as a result of any use of force.

e.   When a suspect or bystander sustains or complains that an injury has been inflicted as a result of any use of force.

f.   Whenever an impact weapon or extended range impact weapon (bean bag projectile) are used.

g.   Whenever an officer strikes, punches, or kicks a subject.

h.   Whenever an officer shoots an animal, or discharges a weapon for the purpose of destroying an animal.

i.   Officers are required to immediately report to their immediate supervisor, or, if this is not possible, the House Sergeant, whenever they draw or exhibit their weapon, when off-duty, and submit a written report of the circumstances as soon as possible.

2.   A supervisor will be immediately summoned to the scene and conduct an investigation of the incident. The supervisor shall complete a Defensive Tactics Report detailing the circumstances and facts surrounding the incident along with any medical results/findings and his conclusions as a result of the investigation.

a.   The Defensive Tactics Report is in addition to other required departmental paperwork, such as a Crime Report, etc., that may be required by the supervisor and/or involved officers.

b.   The Defensive Tactics Report will be completed within 10 working days of the incident. In the event that the supervisor can not complete the report within that time period, a Departmental Information report must be submitted detailing why the investigation is not complete and the anticipated completion date. The Division Commander will sign off on the Departmental Information report and forward it to the Office of Professional

Standards by the next business day.

E.  Use of Chemical Weapons:

1.  Description of Department issued Chemical Weapon:

The chemical weapon currently used by the Department is a liquid extract of Oleoresin Capsicum, a powerful irritant that occurs naturally in cayenne-pepper. It is an aerosol designed to incapacitate violent or combative subjects.

It is designed to be sprayed directly into the subjects face for maximum effect, and should cause direct incapacitation. The chemical weapon has a maximum effective range of ten feet, with an optimum range of four to six feet.

A spray to the eyes causes discomfort, bringing tears and impairment to vision. Inhaling causes discomfort in the mucous membranes of the mouth, nose, and bronchial tubes. Recovery usually begins after a few minutes in fresh air. For obvious safety reasons, it is not recommended for use when the suspect has a firearm or other "Deadly" weapon in his or her possession.

2.  Authorized Use of Chemical Weapons:

a.  Protection of self or another officer from assault.

b.  Protection of citizens.

c.  Performing an arrest of a combative or resistant subject.

d.  For crowd control when the officer or civilians are in immediate physical danger.

e.  Against a violent animal threat.

f.  When the situation and circumstances are such that a barricaded or possibly dangerous person must be driven out to cause apprehension.

3.  Unauthorized Use of Chemical Weapons:

a.   It shall not be used to threaten or attempt to gain information.

b.   It shall not be used against a person in custody unless physical resistance must be overcome.

c.   It shall not be used to wake up a person who is intoxicated or asleep.

d.   It shall not be used in conjunction with a stun device or other electrical spark source.

e.   It shall not be used near an open flame source.

f.   At no time will chemical weapons be utilized to prevent an individual from ingesting suspected contraband.

4.   Post Use of Chemical Weapons:

a.   After a chemical weapon has been used on a subject, the officer(s) will ensure that the subject is transported to a medical facility for treatment.

b.   After a chemical weapon has been used, the officer(s) will immediately notify their supervisor as to the use of force and will submit an appropriate report documenting the circumstances.

c.   It will be mandatory for all sworn police personnel to carry the department issued chemical weapon at all times when circumstances are such that they may have to perform a police action.

d.   The chemical weapon has an unlimited shelf life and only requires an occasional shaking to ensure its contents are thoroughly mixed.

e.   As with other similar aerosol products, chemical weapon canisters should not be exposed to heat or flame. Do not puncture, incinerate or store above 130 degrees Fahrenheit. Prolonged exposure to sunlight

may cause bursting.

    f.    The duration of the spray should be only that amount necessary to effect the lawful police task.

VI.   The Departmental Shooting Investigation Process

   A.   The Department Shooting Investigation Process will be used to investigate EVERY incident of a firearm discharge and/or an extended range impact weapon (bean bag projectile) where serious physical injury, penetration, or death occurs. The aforementioned applies to every Department member other than exceptions.

      1.   Front Line Supervisor Responsibility:

         a.    A supervisor will be dispatched to the scene of the incident, and will assume responsibility for caring for the involved personnel.

         b.    The supervisor will make appropriate arrangements for all necessary medical treatment.

         c.    During any period where the involved officer is required to remain on the scene, but has no immediate duties to fulfill, the officer shall be taken to a quiet area away from the scene of the incident.

         d.    The supervisor should briefly meet with the involved officers and preliminary questions should be asked about the incident, but in a minimal capacity. A walk through of the incident may be conducive to understanding how the incident transpired.

         e.    The officers should be advised that a more detailed debriefing will be conducted at a later time.

         f.    The supervisor should arrange for the officers directly involved in the incident to leave the scene as soon as possible, and to be taken directly to a quiet secure setting at Central where they will be turned over to a supervisor

from the Criminal Investigation Division.

g.    Arrangements should be made for a peer counselor or other supportive friend or officer to remain with the involved officer(s).  They should be advised not to discuss the incident with the officer.

2.    Whenever a firearm is used in the performance of duty, the incident will be investigated by the Captain of Criminal Investigations or his designee.  The Inspector of Investigative Operations will assume this role when the Captain of Criminal Investigations is not available. The Captain of Criminal Investigations or his designee will conduct a complete investigation and report his findings directly to the Chief of Police.  It shall be the duty of the Captain of Criminal Investigations or the Inspector of Investigative Operations to notify the City Solicitor and the Attorney General's Office as soon as possible.  The Office of Professional Standards shall be notified whenever any shooting occurs.  They will contact the Captain of Criminal Investigations or his designee and monitor the investigation being conducted by the detectives.  If the Chief of Police determines that a possible violation of Departmental procedures has occurred, he shall instruct the Office of Professional Standards to conduct an investigation, which shall be coordinated with the detective's investigation.  It will be the sole responsibility of the Office of Professional Standards to determine if there were violations of any Departmental procedures governing the Wilmington Department of Police.

3.    When a police officer discharges a weapon, the officer shall be temporarily assigned to duty within the confines of the police building.  The officer shall remain on this assignment until all investigations are completed by Criminal Investigations Division, the Office of Professional Standards, and any other organization authorized to investigate the incident (City Solicitor's Office, Attorney General's Office, Federal Bureau of Investigation, or the appropriate courts). This does not apply to the 'Extended Range Impact Weapon', unless serious physical injury, penetration, or death occurs.

4.    When a police officer discharges a weapon and a person is either injured or killed, that officer(s) will complete his preliminary report of the incident and then be

directly placed on "Administrative Leave". This does not apply to the 'Extended Range Impact Weapon', unless serious physical injury, penetration, or death occurs.

a.   This leave shall be without loss of pay or benefits, pending the outcome of the investigation by the City Solicitor.

b.   The assignment to Administrative Leave shall not be a presumption that the officer has acted improperly.

c.   While on Administrative Leave, the officer shall remain available at all times for official departmental interviews and statements regarding the shooting incident, and shall be subject to recall to duty at any time.

d.   The officer shall remain on Administrative Leave after completing all internal investigative requirements, and until it is determined by a mental health professional that the officer is ready to return to duty.

5.   All press releases relative to the incident will only be made by the Public Information Officer, the Chief of Police, or his designee.  These releases must first be approved by the Chief of Police.

6.   The Commanding Officer of the Human Resources Division or his designee shall interview the officer involved in the shooting.  Upon completion of this interview, the Commanding Officer of the Human Resources Division shall submit a report directly to the Chief of Police including his recommendations.

7.   If the shooting investigation progresses to a point where the placing of criminal and/or departmental charges against an officer appears probable, it shall be the responsibility of the Captain of Criminal Investigations, or his designee, to immediately notify the President of Lodge #1 of the Fraternal Order of Police that an investigation is being conducted.  The Captain of Criminal Investigations will apprize the President of Lodge #1 of the Fraternal Order of Police of the nature of the investigation, to afford the Lodge President the opportunity to determine if the officer is eligible to receive the services of a F.O.P. paid attorney.

Note: All officers should review and familiarize themselves with Title 11 Del C. 467.

8.   Psychological Services For the Officer:

    a.   The Commanding Officer of the Human Resources Division will ensure that the following guidelines are followed:

        1)   In all cases where an officer fires on or exchanges gunfire, or any person is injured or killed as a result of firearm discharge by a police officer, that officer will be required to meet with a Department-furnished psychologist within five days of the incident. The session will remain protected by the privileged Professional Psychologist Code of Ethics.

        2)   In all cases where any person has been injured or killed, as a result of a firearm discharge by a police officer, the involved officer and his family will have available to them services provided by the Employee Assistance Program. The consultation sessions will remain protected by the privileged relationship.

        3)   In all cases where an officer fires or exchanges gun fire, or any person is injured or killed as a result of firearm discharge by a police officer, the involved officer will be required to re-qualify with his weapon prior to returning to on-duty status. The re-qualification shall be accomplished in the presence of a firearms training officer. THE TRAINING OFFICER WILL COORDINATE THE QUALIFICATION FIRING.

9.   Records as training aids:

    a.   Annually, the training officer will study all pertinent Crime Reports and Defensive Tactics Reports. Based on any findings thereof, a curriculum will be developed addressing specific areas which need attention.

b.  The Chief of Police or his designee shall conduct an annual review and will revise, if necessary, the Deadly Force Procedure.

NOTE: This Directive is for Departmental use only and does not apply in any criminal or civil proceeding. The Department policy should not be construed as a creation of higher legal standard of safety or care in an evidentiary sense with respect to third party claims. Violations of this Directive will only form the basis for departmental administrative sanctions.