IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC A. CHAMBERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-415 SLR |
| | ) |
| JOHN DOES 1-7, | ) |
| DONALD J. BOWMAN, JR., | ) |
| CITY OF WILMINGTON DELAWARE, | ) |
| DELAWARE S.P.C.A., and | ) |
| SGT. ELLIOTT, | ) |
| Defendants. | ) |

**THE CITY OF WILMINGTON, DONALD J. BOWMAN, JR. AND
SGT. STEVEN ELLIOT'S SUPPLEMENTAL ANSWERS TO PLAINTIFF'S
<u>INTERROGATORIES TO CITY DEFENDANTS</u>**

<u>Bruce Coffiey</u>

1. How is it/can you explain; How it was possible for you to confront the Plaintiff on the stairs, when Officer Rodriguez had supposedly already brought the plaintiff down the stairs and handcuffed him on the floor - by the time you would have entered the residence (according to the order/lineup the officers entered the residence)?

**ANSWER:** **Objection. Defendants object to this interrogatory on the basis that it is vague and ambiguous; it calls for information not within the answering witness's knowledge; and it calls for the answering witness to give an opinion. Subject to and without waiving the foregoing objections, answering witness states as follows: To the best of my knowledge, I was assigned to secure the second floor of this dwelling as quickly and safely as possible. I believe I was the fourth or fifth officer to enter the dwelling once the front door was breeched. I recall**

> **hearing a single report coming from the living room area which is located on the first floor. I immediately ran toward the stairs leading to the second floor. I recall observing a black male on the stairs, near the top. It is my recollection that in an effort to get past him, I grabbed the black male and moved him aside with the intention of handing the male onto another officer on the stairs. I then continued past the male. I do not recall who the officer was behind me who I handed the male off to, but at this point, he was not handcuffed. I have no knowledge of what actions Detective Michael Rodriguez took with regard to securing the Plaintiff.**

2. Did you SEE the dog run up the stairs, stop behind the suspect and start barking?

**ANSWER:** **As I was running up the stairs leading to the second floor, I recall a brown pit bull dog run past me, toward the black male on the stairs. At one point, the dog was behind the black male and was barking.**

### Randy Pfaff

1. According to the Wilmington Police Department's USE OF FORCE/DEPARTMENTAL WEAPONS, Directive 6.7, part IV. Continuum: (page A-123 of the defendants' appendix for summary judgement)...your department has a prescribed continuum of force to be followed...was this procedure, uniform policy and/or directive followed BEFORE the use of deadly force and the jeopardizing of the safety of the children and other family members? (Especially in accordance with III. 3. Reasonable Belief, of the Directive)

***It should be noted that the USE OF FORCE/DEPARTMENT WEAPONS <u>DIRECTIVE</u> that was provided to the plaintiff, is a revised edition as of 11 May 2004. The incident at hand occurred on 24 June 2002. Wherein, the entire Directive of <u>THAT</u> time period may be different, and should have

been provided. Not the Directive or Departmental Policy in effect - after the fact.

ANSWER: **Objection. Defendants object to this interrogatory on the basis that it is vague and ambiguous. Defendants further object to the extent that Plaintiff is alleging that any of Plaintiff's family members were in the living room or were in harms way when the pit bull dog was shot. Subject to and without waiving the foregoing objections, answering witness states as follows: Yes, I was aware of the Wilmington Police Department's use of force policy. I followed departmental policy when I utilized force in this situation. Specifically, the policy authorized me to use deadly force in this situation in order to prevent substantial harm to a fellow officer, Michael Rodriguez. Also, the policy does not require me to sequentially follow the prescribed continuum. Rather, the policy provides that I must use my discretion to quickly and safely apply the necessary level of force meet the situation. In this case, I saw a pit bull dog barking/growling and charging straight for Detective Rodriguez. I shot the pit bull dog because I believed the dog was going to attack him and shooting the dog was the quickest and safest means to prevent Detective Rodriguez from being attacked. Further, there were no civilians or children present in the living room when I shot the pit bull dog. Therefore, my decision to use deadly force was justified, and I was cleared departmentally.**

2. Did you and your fellow officers have prior knowledge and information, that there were animals/pets and small children, in the house BEFORE/PRIOR to executing the warrant?

ANSWER: **Objection. Defendants object to this interrogatory on the basis that it is vague and ambiguous; and it calls for information not within the answering witness's**

**knowledge with regard to information possessed by other individuals. Subject to and without waiving the foregoing objections, answering witness states as follows: I was briefed prior to entry into the residence regarding possible pit bull dog(s) and children on the premise. I cannot respond to this question on behalf of any other officer.**

3. If the dog was shot (by you) and ran past Mike (and we assume the Plaintiff), can you attempt to explain or give YOUR opinion- as to HOW or WHY officers 7th, 8th, and 9th in the lineup (as the officers entered the residence), COULD HAVE or WOULD HAVE been able to hear the Plaintiff say; "don't shoot my dog", when He (the Plaintiff) would have ALREADY seen/witnessed YOU doing so? (If He was supposedly on the stairs)

**ANSWER:    Objection. Defendants object to this interrogatory on the basis that it is vague and ambiguous; it calls for information not within the answering witness's knowledge; and it calls for the answering witness to give an opinion as to the actions of other individuals. Subject to and without waiving the foregoing objections, answering witness states as follows: I cannot explain or give an opinion as to what other officers heard.**

/s/ Rosamaria Tassone,
Rosamaria Tassone, ( I.D. #3546)
Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 French Street, 9th Floor
Wilmington, Delaware 19801

Date:   November 22, 2005