**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ERIC A. CHAMBERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  04-415 SLR |
| | ) | |
| JOHN DOES 1-7, | ) | |
| DONALD J. BOWMAN, JR., | ) | |
| CITY OF WILMINGTON DELAWARE, | ) | |
| DELAWARE S.P.C.A., and | ) | |
| SGT. ELLIOTT, | ) | |
| Defendants. | ) | |

**DEFENDANTS JOHN DOES 1-5,  DONALD J. BOWMAN, JR.,
CITY OF WILMINGTON DELAWARE, AND SGT. ELLIOTT'S
BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Rosamaria Tassone, Esquire, ( I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2176
Attorney for Defendants John Does 1-5,
Bowman, Elliott and the City of Wilmington

Dated: January 19, 2006

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.     PLAINTIFF HAS FAILED TO ADDUCE ANY EVIDENCE SUPPORTING HIS
ALLEGATION THAT ANY OF THE DEFENDANTS USED EXCESSIVE
FORCE IN EFFECTING PLAINTIFF'S ARREST.  THEREFORE, PLAINTIFF
CANNOT PREVAIL WITH REGARD TO HIS FOURTH AMENDMENT
CLAIM, AND DEFENDANTS ARE ENTITLED TO JUDGMENT AS A
MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    THE SHOOTING OF PLAINTIFF'S PIT BULL DOG WAS REASONABLE
UNDER THE CIRCUMSTANCES PRESENT AND DOES NOT CONSTITUTE
A VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE
4TH, 5TH OR 14TH AMENDMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.    DEFENDANTS' ENTRY INTO THE RESIDENCE DOES NOT CONSTITUTE
A VIOLATION OF THE 4TH AMENDMENT BECAUSE THE OFFICERS
POSSESSED A VALID SEARCH WARRANT.  FURTHER, THE OFFICERS
DID NOT SEARCH THE RESIDENCE, BUT MERELY APPREHENDED
PLAINTIFF AND SECURED THE PREMISES FOR OFFICER SAFETY . . 15

    IV.    THE EVIDENCE DOES NOT SUPPORT PLAINTIFF'S ALLEGATION THAT
THE DEFENDANTS CONSPIRED TO CONCEAL ANY WRONG DOING
WITH REGARD TO THE SHOOTING OF PLAINTIFF'S PIT BULL DOG . . 18

    V.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT ELLIOTT
UNDER 42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    VI.    DEFENDANTS JOHN DOES 1-5, ELLIOTT AND BOWMAN ARE ENTITLED
TO QUALIFIED IMMUNITY FOR THEIR ACTIONS.  THEREFORE,
PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. §1983 . . . . . . . 20

VII.    WITH REGARD TO PLAINTIFF'S TORT CLAIMS FOR ASSAULT,
        BATTERY AND NEGLIGENCE, DEFENDANTS ARE IMMUNE FROM SUIT
        PURSUANT TO THE DELAWARE COUNTY AND MUNICIPAL TORT
        CLAIMS ACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        A.    ANIMAL CRUELTY AND RECKLESS ENDANGERMENT ARE
              CRIMINAL CHARGES, NOT TORTS AND CANNOT BE ASSERTED
              IN A CIVIL ACTION FOR DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . 25

VIII.   THE RECORD FAILS TO DEMONSTRATE MUNICIPAL LIABILITY SUCH
        THAT THE CITY OF WILMINGTON IS LIABLE UNDER 42 U.S.C. §1983 . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## <u>TABLE OF CITATIONS</u>

### CASES

<u>Acierno v. Cloutier</u>, 40 F.3d 597 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Anderson v. Creighton</u>, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242(1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

<u>Arnold Pontiac-GMC, Inc. v. General Motors Corp.</u>, 786 F.2d 564 (3d Cir. 1986) . . . . . . . . . . 8

<u>Baker v. Monroe Township</u>, 50 F.3d 1186 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Barkauskie v. Indian River School District</u>, 951 F. Supp. 519 (D. Del. 1996) . . . . . . . . . . . . . 18

<u>Beckwith v. Sherwood</u>, 2001 U.S. Dist. LEXIS 24079 (E.D. Pa. October 11, 2001) . . . . . . . .  11

<u>Bell v. Wolfish</u>, 441 U.S. 520 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

<u>Big Apple BMW, Inc., et.al v. BMW of North America, Inc., et. al</u>,
    974 F.2d 1358 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Board of the County Comm'rs v. Brown</u>, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Brown v. Muhlenberg Township, et al.</u>, 269 F.3d 205 (3d Cir. 2001) . . . . . . . . . . . . . . . . . 13, 14

<u>Carrigan v. State</u>, 957 F. Supp. 1376(D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317(1986)
    *cert denied*, 484 U.S. 1066 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Clark v. Condon</u>, 2002 U.S. Dist. LEXIS 17831 (September 20, 2002) . . . . . . . . . . . . . . . . .  11

<u>Cornish v. Delaware State Police</u>, 1996 Del. Super. LEXIS 257 (Del. Super. June 19, 1996) . . 24

<u>DeBlasio v Zoning Board of Adjustment</u>, 53 F.3d 592 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . 15

Fraser v. Pennsylvania State System of Higher Education, et al.,
    1994 U.S. Dist. LEXIS 7409 (E.D. Pa. June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . 8

Graham v. Connor, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Harlow v. Fitzgerald, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hunter v. Bryant, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re City of Philadelphia Litig., 49 F.3d 945 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 23

Izquierdo v. Sills, et. al., 68 F. Supp. 2d 392 (D.Del. 1999) . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Johnson v. Glick, 481 F.2d 1028 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lamb-Bowman v. Delaware State Univ., 152 F.Supp.2d 553 (D. Del. 2001) . . . . . . . . . . . . . . . 9

Loftus v. SEPTA, 843 F. Supp. 981 (E.D. Pa 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Marchese v. Umstead, 110 F. Supp. 2d 361 (E.D. Pa 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986) . . . . . . . . 8

Michigan v. Summers, 425 U.S. 692 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mitchell v. Forsyth, 472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Monell v. Department of Social Services, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . 25, 26

Payton v. New York, 445 U.S. 573 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Peirson v. Ray, 386 U.S. 547 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Reich v. Beharry, 883 F.2d 239 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Samuels v. Hall, 2004 U.S. Dist. LEXIS 14956, (D.Del. July 19, 2004) . . . . . . . . . . . . . . . . . 23

Sanders v. Workman, 2001 U.S. Dist. LEXIS 9053 (D. Del. March 26, 2001) . . . . . . . . . . . . 23

Saucier v. Katz, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Scott v. United States, 436 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Siegert v. Gilley, 500 U.S. 226, 233 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Smith, et al. v. City of Philadelphia, et al., 1994 U.S. Dist. LEXIS 14142
        (E.D. Pa October 3, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tennessee v. Garner, 471 U.S. 1 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Terry v. Ohio, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States of America v. Kithcart, 218 F.3d 213 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 17

United States of America v. Hernandez, 872 F. Supp. 1288 (1994) . . . . . . . . . . . . . . . . . . 17

United States v. Hebron, 243 F. Supp. 2d 90 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States of America v. Hernandez, 872 F. Supp. 1288 (1994) . . . . . . . . . . . . . . . . . .  16

United States v. Padilla, 508 U.S. 77 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

United States of America v. Padilla, et al., 1997 U.S. Dist. LEXIS 3911
        (E.D. Pa. March 31, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Robinson, 414 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Wayne v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . 9

Weirs v. Barnes, 925 F. Supp. 1079 (D. Del. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## STATUTES

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

10 Del. C. § 4010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

10 Del. C. § 4011(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

# RULES

Fed. R. Civ. P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## NATURE AND STAGE OF PROCEEDINGS

On June 21, 2004, Plaintiff Eric A. Chambers filed the within Complaint against Defendants John Does 1-7, Donald J. Bowman, Jr., Sergeant Steven T. Elliott, the City of Wilmington and the Delaware S.P.C.A.   Plaintiff asserts a claim under 42 U.S.C. §1983 alleging excessive force, illegal search of a residence, due process violations, and conspiracy in violation of his 4th, 5th and 14th Amendment rights.  Plaintiff also asserts claims for assault, battery, negligence, animal cruelty and reckless endangerment.  With regard to Defendant S.P.C.A., Plaintiff asserts a State law claim for spoliation of evidence. All the allegations stem from a search warrant executed on June 24, 2002 during which Plaintiff was arrested and his pit bull dog was shot.

Defendant Donald Bowman, Jr. executed a waiver of service on November 22, 2004. Defendants City of Wilmington and Steven Elliott executed a waiver of service on December 13, 2004.  On February 1, 2005, Defendants John Does 1-5 (WPD police officers), Bowman, Elliott and the City of Wilmington filed a Motion for Summary Judgment in lieu of an Answer.  (D.I. 18-20). On February 25, 2005, Defendant SPCA filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgement.   (D.I. 29-31).

Subsequent to the City Defendants' Motion for Summary Judgment, on February 2, 2005, Plaintiff filed a Motion for Discovery.  (D.I. 21).

On May 20, 2005, while Defendants' Motions were pending, the Court denied Plaintiff's Motion for Discovery as moot given that Defendants had provided to Plaintiff the requested discovery information in their respective motions for Summary Judgment.  (D.I. 41).  However, the Court permitted Plaintiff to propound and serve on the City Defendants no more than 10 interrogatories.  The Court also permitted the parties to file supplemental responses to the pending

Motions for Summary Judgment based upon the information obtained from the 10 interrogatories.

On July 14, 2005, the Court ordered Defendants to respond to Plaintiff's Motion for Discovery filed February 2, 2005, which the Court had previously held was moot. (D.I. 47). On August 15, 2005, the City Defendants responded to Plaintiff's Motion for Discovery and provided all discoverable material requested by Plaintiff. (D.I. 49).

On September 15, 2005, the Court found that "neither Plaintiff nor Defendants have responded adequately to previous orders of this Court." As such, the Court denied without prejudice to renew Defendants' Motion for Summary Judgment. The Court further ordered Plaintiff to submit to the City a total of 10 interrogatories. On October 13, 2005, Plaintiff submitted 10 interrogatories to the City Defendants. (D.I. 55).

On October 17, 2005, Defendants City of Wilmington, Donald Bowman, Jr. and Steven Elliott, filed their Answer to Plaintiff's Complaint. (D.I. 56). On November 16, 2005 and November 22, 2005, the City Defendants filed their responses to Plaintiff's Interrogatories. (D.I. 62 and 63).

The following is Defendants John Does, City of Wilmington, Donald Bowman, Jr. and Steven Elliott's Opening Brief in Support of their Re-newed Motion for Summary Judgment.

## SUMMARY OF ARGUMENTS

Plaintiff fails to state a claim under 42 U.S.C. §1983 for the alleged violations of his constitutional rights under the 4th, 5th or 14th Amendments.  There is no evidence supporting Plaintiff's allegation that any of the Defendants used excessive force in effecting Plaintiff's arrest. Therefore, Plaintiff cannot prevail with regard to his 4th Amendment claim.  Further, the shooting of Plaintiff's pit bull dog was reasonable under the circumstances present and does not constitute a violation of Plaintiff's constitutional rights

With regard to Plaintiff's claim alleging an illegal search of 2704 Creston Place, Plaintiff lacks standing to bring a claim for illegal search of the residence.  He is not the owner of 2704 Creston Place.  Further, Defendants' entry into the residence does not constitute a violation of the 4th Amendment because the officers possessed a valid search warrant.  Additionally, the officers did not search the residence, but merely apprehended Plaintiff and secured the premises for officer safety.

The evidence also does not support Plaintiff's allegation that the Defendants conspired to conceal any wrong doing with regard to the shooting of Plaintiff's pit bull dog.

Defendants John Does 1-5, Elliott and Bowman are entitled to qualified immunity for their actions, and, with regard to Plaintiff's tort claims for assault, battery and negligence, Defendants are immune from suit pursuant to the Delaware County and Municipal Tort Claims Act.  Additionally, animal cruelty and reckless endangerment are criminal charges, not torts, and cannot be asserted in a civil action for damages.

Lastly, Plaintiff fails to establish municipal liability such that the City of Wilmington is liable under 42 U.S.C. §1983**.**

## STATEMENT OF FACTS

On June 24, 2002, Special Agent Tat Shum of the Federal Bureau of Alcohol, Tobacco and Firearms (ATF) requested the assistance of the Wilmington Police Department (WPD) in apprehending a fugitive, Eric A. Chambers, the Plaintiff in the matter at bar. At that time, Plaintiff was wanted by the ATF on an outstanding federal warrant stemming from a Grand Jury indictment filed May 15, 2002 charging him with Felon in Possession of a Firearm. (A1).

Detectives Scott C. Chaffin and David Simmons of the WPD Criminal Investigations Division met with Special Agent Shum. Special Agent Shum advised Detectives Chaffin and Simmons that the ATF had obtained information confirming that Plaintiff was residing at 2704 Creston Place with his girlfriend, Tomika Tolbert. The ATF had previously executed a search warrant at the location, but Plaintiff was not present. At that time, the ATF spoke to Ms. Tolbert regarding Plaintiff's whereabouts. Ms. Tolbert confirmed that Plaintiff occasionally resided with her at 2704 Creston Place. She stated that she and the Plaintiff had a child together. Agent Shum also located clothing at the property belonging to Plaintiff. Further, on June 22 or 23, 2002, while off-duty, Corporal Orlando Fletcher of the Delaware State Police had observed Plaintiff outside 2704 Creston Place. On June 24, 2002, Agent Shum made a "pretext" call to the residence. An adult male believed to be Plaintiff answered the phone. It was known to the ATF that Plaintiff was the only adult male residing at the property. (A2-5, 22-26). Based upon the information provided by Agent Shum, Detective Chaffin obtained a search warrant from Justice of the Peace Court No. 20 to search the premises of 2704 Creston Place for the purpose of arresting Plaintiff. (A2-5).

Due to the fact that Plaintiff was a fugitive wanted for federal firearms charges, the search warrant was classified as a "high risk" warrant, and the WPD Crisis Management Tactical Team

-4-

(CMTT) was mobilized to execute the warrant. In accordance with standard operating procedures, Detectives Chaffin and Simmons and the ATF briefed the CMTT prior to the execution of the warrant. The members of the CMTT were advised that the residence was occupied by the Plaintiff, his girlfriend, three small children and at least one large pit bull dog. (A6-8). During this time, ATF agents were keeping the residence under surveillance and maintained radio contact with WPD. (A7). The supervisor of the CMTT, Sergeant Thomas Spell, developed the execution plan and briefed the team. All members of the CMTT were given specific assignments to carry out once the residence was breached. (A6-8).

At approximately 6:45 p.m. on June 24, 2002, the CMTT approached the front of the residence. Detective Michael Rodriguez, assigned to breach the front door with a ram, observed a juvenile black male on the front porch of the residence. The juvenile appeared to be entering the front door. Plaintiff appeared to be opening the door for the juvenile. Detective Rodriguez ordered the juvenile away from the door. When Plaintiff observed Detective Rodriguez, he immediately closed the door and attempted to hold it shut. Detective Rodriguez forced the door open, and Plaintiff fled up the interior stairs located several feet from the front door. Detective Rodriguez entered the residence and ran toward the stairs in an attempt to apprehend Plaintiff. (A7, 10, 30, 31, 41-42, 47-48, 56-59, 65, 99-117).

As Detective Rodriguez pursued Plaintiff, Detective Randolph Pfaff, who entered the residence directly behind Detective Rodriguez, observed a large brown pit bull dog enter the living room from the dining room. The pit bull dog was growling in an aggressive manner and running directly toward Detective Rodriguez. (A7, 13, 29-44, 45-75). A second pit bull dog was behind it. Detective Pfaff, believing the pit bull dog was about to attack Detective Rodriguez and therefore

-5-

posed an imminent threat of physical harm to a fellow officer, fired one round from his departmentally issued handgun at the pit bull dog, striking it once. The pit bull dog yelped and ran up the stairs to the second floor where it entered one of the unoccupied bedrooms and died. The second pit bull dog fled back into the dining room when Detective Pfaff fired his weapon. During this incident, other CMTT members were entering the residence and moving to their assigned locations.

Plaintiff surrendered midway up the stairs. (A7, 10, 47, 57-59, 105). Plaintiff was quickly escorted to the bottom of the stairs where he was taken into custody by Sergeant Spell. Plaintiff was not "kicked in the head," nor did any officer "stomp on his back" when he was taken into custody. (A92-117). Rather, Plaintiff was ordered to the ground and handcuffed without any further incident. Once the residence was secured, Plaintiff was turned over into the custody of Detective Chaffin and the ATF. Ultimately, Plaintiff was arraigned and committed to Gander Hill Correctional Facility in lieu of $2,000,000.00 cash bail. (A26).

In accordance with standard procedures, once the door was breached, Detective Rodriguez and the other members of the CMTT who entered the residence swiftly moved to their assigned locations and secured the premises. (A6-21, 92-93, 99-117). Ms. Tolbert and her youngest child were located on the second floor. The remaining two children were located in the basement. The occupants were safely moved to a secured location on the first floor and appeared to be fine. (A13, 18, 64, 109). The residence was not searched by the members of the CMTT, but merely secured for officer safety. (A111).

The shooting of Plaintiff's pit bull dog was investigated by the WPD Criminal Investigations Division (CID), WPD Office of Professional Standards (OPS) and the City of Wilmington Law

-6-

Department.   After a thorough investigation, it was determined that Detective Pfaff acted appropriately in light of the circumstances confronting him.  Detective Sergeant Robert Donovan of CID and Sergeant Steven T. Elliott of OPS concluded that Detective Pfaff's actions were justified and did not violate any criminal statute.  Further, Detective Pfaff's actions were consistent with WPD Directive 6.7 governing an officer's use of force against animals.  Detective Pfaff's recitation of the facts was supported by Sergeant Scott Jones, who entered the residence behind Detective Pfaff.  Sergeant Jones heard the pit bull dog growling and observed it running directly toward Detective Rodriguez.  (A64-75).  Sergeant Jones observed Detective Pfaff shoot one round, striking the dog.  Detective Pfaff fired his weapon in a downward angle, and  no one was in Detective Pfaff's line of fire.  (A45-55).   Sergeant Donovan confirmed that only one round was missing from Detective Pfaff's weapon.  The round and its casing were recovered in the living room.  (A29-40, 118-121).  Sergeant Donovan examined the body of the pit bull dog with an agent from the S.P.C.A. at the scene and determined that the pit bull dog had only one small entrance wound and one exit wound.  The body of the pit bull dog was removed from the residence by the S.P.C.A.  (A29-40, 94-96).

# ARGUMENT

## STANDARD OF REVIEW

Summary judgment serves to "avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Fraser v. Pennsylvania State System of Higher Education, et al., 1994 U.S. Dist. LEXIS 7409, *8 (E.D. Pa. June 6, 1994), citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). The Court must grant summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), cert denied, 484 U.S. 1066 (1988), and Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986).

The moving party bears the burden of proving that no genuine issue of material fact is in dispute. See Matsushita Electric Industries Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, "[t]he moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." Carrigan v. State, 957 F. Supp. 1376, 1381 (D. Del. 1997); see also Big Apple BMW, Inc., et.al v. BMW of North America, Inc., et. al, 974 F.2d 1358, 1362 (3d Cir. 1992).

Once the moving party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the non-moving party cannot produce "concrete evidence from which a reasonable [trier of fact] could return a verdict in [his] favor," then summary judgment for the movants must be granted. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "The mere existence of some evidence in support

of the non-moving party, however, will not be sufficient for denial of a motion for summary

judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party

on that issue." Lamb-Bowman v. Delaware State Univ., 152 F.Supp.2d 553, 557-558 (D. Del. 2001),

citing Anderson, 477 U.S. at 249.

A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury

could return a verdict for the non-moving party." Wayne v. Borough of West Chester, 891 F.2d 458,

459 (3d Cir. 1989). Indeed, the non-movant must provide "significant probative evidence tending

to support the complaint." Anderson, 477 U.S. at 249. The moving party "may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the nonmovant's burden of proof at trial." Chipollini v. Spencer Gifts, Inc., 814

F.2d 893, 896 (3d Cir. 1987).

I.    **PLAINTIFF HAS FAILED TO ADDUCE ANY EVIDENCE SUPPORTING HIS ALLEGATION THAT ANY OF THE DEFENDANTS USED EXCESSIVE FORCE IN EFFECTING PLAINTIFF'S ARREST. THEREFORE, PLAINTIFF CANNOT PREVAIL WITH REGARD TO HIS FOURTH AMENDMENT CLAIM, AND DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

Plaintiff alleges that when he observed the police at his door, he voluntarily opened the door

and surrendered, immediately lying down in the doorway. Plaintiff further alleges that one of the

officers standing outside the door fired his weapon into the residence. At that point, Plaintiff states

he attempted to rise from his prone position. Plaintiff alleges that he was then "kicked" in the head

and his back "stomped" on by an officer. (D.I. 2). As a result, Plaintiff argues that one or more

Defendants violated his Fourth Amendment right by using excessive force during his arrest.

However, even after an opportunity to conduct discovery, Plaintiff has failed to adduce evidence supporting his allegation of excessive force other than Plaintiff's own unsupported assertions. Indeed, the evidence demonstrates that no force was used in apprehending Plaintiff. Therefore, Plaintiff is unable to meet his burden of proof with regard to an essential element of his claim, and Defendants are entitled to judgment as a matter of law.

Plaintiff brings his claim of excessive force pursuant to 42 U.S.C. §1983. Where Plaintiff's excessive force claim arises in the context of an investigatory stop or arrest, as here, the Court must construe Plaintiff's Complaint as "one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons... against unreasonable... seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989). As such, Plaintiff's Complaint must be analyzed under the "reasonableness" standard of the Fourth Amendment. Id. at 395.

In order to prevail on an excessive force claim where an individual alleges a violation of the Fourth Amendment, a plaintiff must demonstrate that the police officer's use of force was not "objectively reasonable." Id. at 397. The specific inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 457. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id., citing Scott v. United States, 436 U.S. 128, 138 (1978) and United States v. Robinson, 414 U.S. 218 (1973).

The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id., citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968). "Not every push or shove, even if it may later seem unnecessary

in the peace of a judge's chambers" violates the Fourth Amendment. Id., citing Johnson v. Glick, 481 F.2d 1028, 1033 (1973). Certainly with the benefit of hindsight one could opine that the police officer should have been able to arrest an individual in a less forceful manner. However, in an excessive force claim, the calculus of reasonableness is not hindsight, but rather "reasonableness at the moment," and it "must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-397; see also, Beckwith v. Sherwood, 2001 U.S.Dist. LEXIS 24079, at *14 (E.D. Pa. October 11, 2001).

The question of whether the force used to effect a plaintiff's arrest requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake." Id. at 396. The Courts have long recognized that the right to make an arrest or investigatory stop carries with it the right to use some degree of physical force, or the threat thereof, to effect it. Id. The degree of force is dictated by the suspect's behavior." Clark v. Condon, 2002 U.S. Dist. LEXIS 17831, *7 (September 20, 2002). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," but rather requires the Court to analyze the facts and circumstances of each particular case. Graham, 490 U.S. at 396, quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979).

To that end, the Court must consider several factors in making its determination, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight,... as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an

arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." <u>Smith v. Marasco</u>, 318 F.3d 497, 515 (3d Cir. 2003)(internal citations omitted). The test then is whether the totality of the circumstances justified the particular force used. <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985).

In the present matter, Plaintiff alleges that first, he surrendered at the door and second, one or more of the John Doe Defendants kicked him in the head and stomped on his back while he was attempting to rise from his prone position. However, the evidence supports neither contention. Plaintiff did not surrender at the door. Rather, he fled from Detective Rodriguez, running up the stairs leading to the second floor, and surrendered midway up the stairs. (A7, 10, 13, 14, 15, 18, 30, 31, 32, 36, 38, 41, 42, 43, 47, 56-59, 61-63, 65, 99, 103-104, 105, 110, 112, 115, 125, 135). When Plaintiff surrendered, he was escorted to the bottom of the stairs, where he laid on the floor while Sergeant Spell placed him in handcuffs with no further incident. (A7, 9, 62, 112). No one kicked Plaintiff or stomped on his back. (A92-117). Given the evidence, Plaintiff cannot prove a constitutional injury. He cannot prove that any of the Defendants used an unreasonable amount of force in effecting his arrest. Therefore, Plaintiff cannot maintain an action under §1983, and Defendants are entitled to judgment as a matter of law.

**II.    THE SHOOTING OF PLAINTIFF'S PIT BULL DOG WAS REASONABLE UNDER THE CIRCUMSTANCES PRESENT AND DOES NOT CONSTITUTE A VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER THE 4TH, 5TH OR 14TH AMENDMENTS.**

Plaintiff alleges that the shooting of his pit bull dog during the execution of the search warrant constituted a seizure of his property and an act of excessive force in violation of the 4th, 5th and 14th Amendments. Plaintiff argues that the shooting of the pit bull dog was unreasonable

because the pit bull dog was "non-agressive, never barked,... charged nor attacked any of the Defendants" and Defendants failed to give him or his family an opportunity to "assert control" over the pit bull dog.  However, the evidence demonstrates that the pit bull dog was aggressive and posed an imminent threat of physical harm to one of the police officers.  As such, the shooting of the pit bull dog was reasonable and does not constitute a violation of the 4th Amendment.  Further, as a matter of law, Plaintiff cannot maintain a cause of action under §1983 for excessive force or due process  for the shooting of the pit bull dog.   Therefore, Plaintiff is unable to meet his burden of proof with regard to an essential element of his claim, and Defendants are entitled to judgment as a matter of law.

The Third Circuit Court of Appeals has held that the killing of an individual's dog by a law enforcement officer constitutes a seizure under the 4th Amendment.  Brown v. Muhlenberg Township, et al., 269 F.3d 205, 210 (3d Cir. 2001).  Therefore, in order for the "seizure" to be constitutionally permissible, the shooting must be reasonable.  Id.  Absent a warrant permitting the seizure of the property, the Court has stated that the seizure may be reasonable "where the governmental interest justifying a seizure is sufficiently compelling and the nature and extent of the intrusion occasioned by the seizure is not disproportionate to that interest."  Id.  Further, the Court acknowledged that "the state's interest in protecting life and property may be implicated when there is reason to believe the pet poses an imminent danger.... [T]he state's interest may even justify the extreme intrusion occasioned by the destruction of the pet in the owner's presence."  Id. at 210-211.

The circumstances surrounding the shooting of Plaintiff's pit bull dog in the present matter is identical to the situation contemplated by Brown.  Here, members of the CMTT were entering Plaintiff's residence pursuant to a valid search warrant.  Plaintiff attempted to flee from the officers.

-13-

During the execution of the warrant, Plaintiff's pit bull dog ran from the dining room, into the living room and directly toward Detective Rodriguez who was about to pursue Plaintiff up the stairs. The pit bull dog was also growling in a threatening manner. (A7, 15, 30, 31, 32, 41, 42, 47, 58-59, 66-70, 74, 136). Detective Pfaff observed the growling pit bull dog running toward Detective Rodriguez and reasonably believed that the pit bull dog was about to attack him. Given the immediate physical danger the pit bull dog posed to a fellow officer, Detective Pfaff fired one shot at the dog. (A45-55, 136).

In light of the above circumstances, the shooting of Plaintiff's pit bull dog was reasonable and does not constitute a violation of Plaintiff's 4th Amendment rights. The evidence and investigations conducted by CID and OPS demonstrate that Plaintiff's pit bull dog posed an imminent danger to Detective Rodriguez. (A6-8, 29-35, 41-44). The pit bull dog was growling and running directly toward Detective Rodriguez. Other than Plaintiff, who was attempting to flee from the police by running up the stairs, no member of Plaintiff's family was present on the first floor to "assert control" over the animal or to observe the actual shooting of the pit bull dog. Indeed, Ms. Tolbert admits she was on the second floor during the entire incident. (A76-89).

Further, the shooting of Plaintiff's pit bull dog does not constitute a violation of Plaintiff's procedural or substantive due process rights. While the Third Circuit acknowledges that a law enforcement officer's destruction of a dog deprives an individual of his or her property, and, therefore, he or she is entitled to due process, the Court states that in these situations the only post-deprivation process due is in the form of a suit for damages. Brown, 269 F.3d at 213. Plaintiff is not entitled to pre-deprivation process. Additionally, the Court noted in Brown that "not all property interests worthy of procedural due process protections are protected by the concept of substantive

-14-

due process." Id. at 214, quoting Reich v. Beharry, 883 F.2d 239, 244 (3d Cir. 1989). Specifically, the Court opined that the shooting of a dog does not constitute a property interest of the "quality" required for substantive due process protection. Id., citing DeBlasio v Zoning Board of Adjustment, 53 F.3d 592, 600 (3d Cir. 1995).

Lastly, Plaintiff cannot maintain a claim on behalf of his pit bull dog for excessive force as a matter of law. "[Section]1983 excessive force claims cannot be maintained on behalf of a domestic animal...." Smith, et al. v. City of Philadelphia, et al., 1994 U.S. Dist. LEXIS 14142, at *12 (E.D. Pa October 3, 1994).

Given the evidence and case law, Plaintiff cannot prove that the destruction of his pit bull dog constitutes a violation of a protected constitutional right. Therefore, Plaintiff cannot maintain an action under §1983 for the destruction of his pit bull dog, and Defendants are entitled to judgment as a matter of law.

## III. DEFENDANTS' ENTRY INTO THE RESIDENCE DOES NOT CONSTITUTE A VIOLATION OF THE 4TH AMENDMENT BECAUSE THE OFFICERS POSSESSED A VALID SEARCH WARRANT. FURTHER, THE OFFICERS DID NOT SEARCH THE RESIDENCE, BUT MERELY APPREHENDED PLAINTIFF AND SECURED THE PREMISES FOR OFFICER SAFETY.

Plaintiff alleges that the Defendant John Does 1-4 illegally searched the residence located at 2704 Creston Place. (D.I. 2, ¶¶42, 86). Plaintiff argues that the search warrant obtained by Detective Chaffin was limited to "the body" of Plaintiff, and, therefore, when Plaintiff surrendered at the door, the officers should not have entered the residence. Plaintiff contends that by entering the residence, the officers exceeded the scope of the search warrant. Plaintiff alleges that

the actions of Defendant John Does 1-4 constituted a violation of his due process rights under the 5th Amendment.  However, Plaintiff's claim fails as a matter of law.

Plaintiff's claim for an illegal search of the residence is governed by the 4th Amendment, rather than the 5th Amendment.  Under the 4th Amendment, entry into a residence for the purpose of conducting a search or making an arrest, absent consent or exigent circumstances, is unreasonable unless conducted pursuant to a valid search warrant.  Payton v. New York, 445 U.S. 573 (1980).  The right to be free from unreasonable searches and seizures is a personal right and a Plaintiff must establish standing in order to assert that right.  United States v. Padilla, 508 U.S. 77, 81-82 (1993).  In order to establish standing, Plaintiff must have a reasonable expectation of privacy in the property searched.  United States v. Hebron, 243 F. Supp. 2d 90, 96 (2003).  In the present matter, Plaintiff does not own the property located at 2704 Creston Place.  It is the residence of his girlfriend, Ms. Tolbert.  According to Ms. Tolbert, Plaintiff resides in Harrisburg, Pennsylvania and visits her occasionally.  (A76-89).  Therefore, Plaintiff does not have standing to bring a claim under the 4th Amendment alleging an illegal search of a residence owned by a third party and his claim fails as a matter of law.

Even if the Court finds that Plaintiff has standing to bring a claim alleging an illegal search of the residence, Plaintiff still fails to state a claim for relief.   It is undisputed that the officers possessed a valid search warrant to enter and search the residence located at 2704 Creston Place. (A2-5).  The evidence demonstrates that Plaintiff did not surrender at the door, but rather attempted to flee, thereby forcing the officers to enter the residence.  Upon entering the residence, the officers immediately moved to their previously assigned areas within the structure and secured the residence. (A6-21).  Plaintiff does not allege, nor does the evidence suggest, that the officers searched the

residence.      In entering and securing the property, the officers acted in accordance with standard

procedures designed to protect the lives of the officers executing the warrant and those found in the

residence.   The officers were executing a high risk search warrant for a fugitive wanted for federal

firearms violations.  When the front door was breeched, the target of the warrant, Plaintiff, attempted

to flee to the second floor.  Courts have repeatedly stressed that situations such as the one described

herein are fraught with danger for police officers.  <u>Michigan v. Summers</u>, 425 U.S. 692, 702-703

(1981)(held that during the execution of a search warrant, police may detain the occupants of a house

in order to protect the police, to prevent flight, and generally to avoid dangerous confusion.  "The

risk of harm to both the police and the occupants is minimized if the officers routinely exercise

unquestioned command of the situation.");  <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1191 (3d Cir.

1995)("the dangerousness of chaos is quite pronounced in a drug raid, where the occupants are likely

to be armed, where the police are certainly armed, and the nature of the suspected drug operation

would involve a great deal of coming and going by drug customers");  *see also*,  <u>United States of</u>

<u>America v. Kithcart</u>, 218 F.3d 213, 219 (3d Cir. 2000);  <u>United States of America v. Padilla, et al.</u>,

1997 U.S. Dist. LEXIS 3911, *16 Weiner, J. (E.D. Pa. March 31, 1997);  <u>United States of America</u>

<u>v. Hernandez</u>, 872 F. Supp. 1288, 1294-1295 (1994).  As such, to the extent that Plaintiff argues that

the officers should not have secured the residence after he was apprehended, the Court must dismiss

Plaintiff's claim.  To prohibit police officers executing a search warrant from dispersing through the

entire property and securing all the individuals present in the residence would place the lives of the

officers in danger from unknown threats located within the residence.  Neither the Court nor the 4th

Amendment places such a restriction on law enforcement officers.

     Given the above, Plaintiff cannot prove a constitutional injury.  Plaintiff lacks standing to

bring a claim under the 4th Amendment alleging an illegal search of a residence he does not own. Further, the Defendants possessed a valid search warrant to enter the property in order to arrest him. Notwithstanding this fact, the officers did not search the property, but merely secured it. Therefore, Plaintiff cannot maintain an action under §1983, and Defendants are entitled to judgment as a matter of law.

IV.    **THE EVIDENCE DOES NOT SUPPORT PLAINTIFF'S ALLEGATION THAT THE DEFENDANTS CONSPIRED TO CONCEAL ANY WRONG DOING WITH REGARD TO THE SHOOTING OF PLAINTIFF'S PIT BULL DOG.**

Plaintiff alleges that Defendants John Does 1-5 and Defendant Detective Lieutenant Donald Bowman conspired with the Delaware S.P.C.A. to conceal Defendants' actions with regard to the wrongful shooting of his pit bull dog. Specifically, Plaintiff alleges that Defendants John Does 1-5 "Conspired, conjured and agreed to first: Allege the pet was attacking them. Then, they agreed to remove the deceased pet..., and to have the pet destroyed (cremated) without the owner/plaintiff's knowledge, consent, notice or a pre-deprivation hearing." (D.I. 2 ¶67). Plaintiff further alleges that Defendant Lieutenant Donald Bowman, Jr. falsified a press release regarding the incident in a continued attempt to conceal the alleged illegal actions of the Defendants. (D.I. 2 ¶¶78-79). Plaintiff's allegations are without merit and unsupported by any evidence.

Section 1983 does not provide a cause of action per se for conspiracy. Barkauskie v. Indian River School District, 951 F. Supp. 519, 593 (D. Del. 1996). "Civil conspiracy is [merely] a vehicle by which §1983 liability may be imputed to those who have not actually performed the act denying constitutional rights." Id. Therefore, a §1983 conspiracy claim is not actionable without a violation of one's constitutional rights under §1983. Id. In order to maintain a claim for conspiracy under

-18-

§1983, Plaintiff must prove the elements of a §1983 violation and a conspiracy sufficient to withstand a 12(b)(6) motion.  Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa 2000).  A complaint alleging a conspiracy under §1983 must "contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading." Loftus v. SEPTA, 843 F. Supp. 981, 986 (E.D. Pa 1984). Plaintiff "must plead with particularity the circumstances... such as... the period of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." Id.

In the present matter, Plaintiff fails to prove a violation under §1983.  (See Arguments I – IV, *supra*).  Further, Plaintiff fails to plead in his Complaint the particularized facts necessary to establish the circumstances of the alleged conspiracy.  With the except of Defendant Bowman, Plaintiff fails to identify the conspirators and the specific actions they undertook in furtherance of the conspiracy.  The evidence clearly demonstrates that none of the Defendants engaged in any conspiracy with one another or the S.P.C.A.  In fact, Defendant Bowman nor Defendants John Does 1-5 had any contact with the S.P.C.A.   (A14, 15, 16, 90-117).  Additionally, Defendant Bowman obtained the information for the press release from Detective Segeant Donovan and did not falsify any of the facts provided to him. (A 90-91). The physical evidence present at the scene substantiates that the pit bull dog was shot once in the living room and continued up the stairs into an unoccupied bedroom where it eventually died.  (A29-40, 118-121).

Given the arguments *supra* demonstrating the non-existence of an actual violation of Plaintiff's constitutional rights and the lack of evidentiary support for Plaintiff's allegation of a conspiracy, the Court must appropriately grant summary judgment in favor of Defendants.

-19-

### V.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT ELLIOTT UNDER 42 U.S.C. §1983.

With regard to the claim against Defendant Elliott, Plaintiff merely alleges that Defendant Elliott was indifferent to the alleged violations of Plaintiff rights.  (D.I. ¶ 94).  However, in order to succeed under §1983, Plaintiff must establish that Defendant Elliott was personally involved in the alleged wrongdoing.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal directions or of actual knowledge and acquiescence" and must be made with particularity.

In the present matter, Plaintiff does not allege that Defendant Elliott personally directed any of the Defendants to violate Plaintiff's constitutional rights.  Further, the evidence demonstrates that Defendant Elliott had no knowledge of the existence of any illegal acts.  (A97-98).  As such, Plaintiff cannot meet his burden of proof with respect to his claim against Defendant Elliott, and the Court must grant summary judgment in Defendant's favor.

### VI.    DEFENDANTS JOHN DOES 1-5, ELLIOTT AND BOWMAN ARE ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS. THEREFORE, PLAINTIFF FAILS TO STATE A CLAIM UNDER 42 U.S.C. §1983.

Defendants John Does 1-5, Elliott and Bowman enjoy qualified immunity for the actions they undertook in connection with the execution of the search warrant, Plaintiff's arrest and/or the investigation of the shooting of Plaintiff's pit bull dog.  Under the doctrine of qualified immunity "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The privilege is "an immunity from suit rather than a mere defense to liability, and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Consequently, the United States Supreme Court has repeatedly stressed that immunity questions must be decided at the earliest possible stage of litigation. Hunter v. Bryant, 502 U.S. 224, 227(1991). Whether a governmental official is entitled to qualified immunity is often a legal question and "particularly amendable to resolution on summary judgment. Beckwith, 2001 U.S. Dist. LEXIS 24079 at *8, citing Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997) and Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994); *see also*, Siegert v. Gilley, 500 U.S. 226, 233 (1991). In the matter *sub judice*, the record supports a finding that the Defendants are entitled to immunity with respect to the execution of the search warrant, Plaintiff's arrest, and the investigation of the pit bull dog shooting. Therefore, Defendants are entitled to summary judgment as a matter of law.

In the context of determining whether qualified immunity applies, the Court must first consider the threshold question of whether Plaintiff has demonstrated the violation of an actual constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). The constitutional issues in the present matter are whether Plaintiff's 4th, 5th, or 14th Amendment rights were violated by one or more of the Defendants. In order to carry his burden of proof and demonstrate an actual constitutional injury, Plaintiff must adduce evidence proving that one or more of the Defendant John Does kicked him in the head and stomped on his back during his arrest; that the shooting of his pit bull dog was unreasonable; that securing the residence constituted an illegal search; and that the Defendants conspired to conceal certain illegal actions. However, the record is devoid of evidence substantiating Plaintiff's allegations. Rather, the evidence demonstrates that Defendants acted appropriately and objectively reasonable at all times. (*see,* Arguments I– V, *supra*). Therefore, the evidence does not

reflect a violation of Plaintiff's constitutional rights, and Defendants are entitled to qualified immunity as a matter of law.

Notwithstanding the above, if the Court concludes that Plaintiff has demonstrated a constitutional violation, the Court must next address the second part of the qualified immunity analysis, whether the constitutional right at issue was clearly established. Id. This inquiry is essential and "must be undertaken in light of the specific context of the case, not as a broad general proposition;... it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Id. When a Court denies summary judgment any time a material issue of fact remains on the excessive force claim, it undermines the goal of qualified immunity, specifically, "to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment... If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgement based on qualified immunity is appropriate." Id. at 282 (internal citations omitted).

A right is "'clearly established' when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Therefore, the relevant, dispositive inquiry in determining whether a right is "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Even if a Court finds that the members of the CMTT acted inappropriately by securing the property, and Detective Pfaff acted unreasonably in shooting a pit bull dog that was about to attack another officer, Defendants are entitled to qualified immunity if reasonable officers in their position could conclude that the Defendants' actions were reasonable. "If on an objective basis 'it is obvious

-22-

that no reasonably competent officer would have concluded that [the actions were lawful],' defendants are not immune from suit; however, 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" Sanders v. Workman, 2001 U.S. Dist. LEXIS 9053, *10 (D. Del. March 26, 2001), citing In re City of Philadelphia Litig., 49 F.3d 945, 961-962 (3d Cir. 1995); Samuels v. Hall, 2004 U.S. Dist. LEXIS 14956, (D.Del. July 19, 2004).

In the matter *sub judice*, Plaintiff's constitutional rights were not clearly established such that Defendants would have understood that their actions violated the Constitution.    Given the circumstances confronting the Defendants, they could have reasonably believed that their conduct comported with clearly established law.  Indeed, Detective Sergeant Spell indicated in his report that the CMTT members acted "professionally and responded as trained."  (A 8).  Detective Sergeant Donovan and Defendant Elliott investigated the shooting incident and concluded that Detective Pfaff did not violate departmental policy governing the use of force directed at animals (Directive 6.7) nor did Detective Pfaff violate any criminal statutes when he fired his weapon at the pit bull dog.  (A29-44, 119-122).

This Court has opined that "police officers are accorded qualified immunity in order to promote the officers' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages." Weirs v. Barnes, 925 F. Supp. 1079, 1086 (D. Del. 1996), citing Peirson v. Ray, 386 U.S. 547 (1967).  In light of the foregoing, Defendants are entitled to qualified immunity from suit as a matter of law, and the Court must grant summary judgment, dismissing Plaintiff's Complaint with prejudice.

**VII.   WITH REGARD TO PLAINTIFF'S TORT CLAIMS FOR ASSAULT, BATTERY AND NEGLIGENCE, DEFENDANTS ARE IMMUNE FROM SUIT PURSUANT TO THE DELAWARE COUNTY AND MUNICIPAL TORT CLAIMS ACT.**

Plaintiff's suit for damages on the basis that Defendants committed the torts of assault, battery and negligence is precluded as a matter of law by the Delaware County and Municipal Tort Claims Act (hereinafter "the Act"). 10 Del. C. § 4010 et seq. The record fails to demonstrate that Defendants acted with wanton negligence or willful and malicious intent. Therefore, Plaintiff fails to state a claim for the torts of assault, battery and negligence for which this Court may grant relief.

The Act states, in relevant part,

> An employee may be liable for acts or omissions causing property damage, bodily injury or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent. 10 Del. C. § 4011(c).

Therefore, in order for Plaintiff to maintain a claim for assault, Plaintiff must demonstrate that Defendants acted outside the scope of their employment, or acted with wanton negligence or willful and malicious intent. Cornish v. Delaware State Police, 1996 Del. Super. LEXIS 257, *8 (Del. Super. June 19, 1996)(held law enforcement officer has immunity unless he acted outside the scope of his employment or acted with wanton negligence or willful and malicious intent; plaintiff has the burden of proving the existence of one or more of these elements). As a threshold matter, Plaintiff must adduce evidence supporting his allegations of excessive force and negligence. However, there is no such evidence. Rather, the evidence indicates that Plaintiff was not struck and the Defendants acted appropriately and in accordance with departmental procedures. (See Argument I, supra.)

-24-

A.    **Animal Cruelty and Reckless Endangerment Are Criminal Charges, Not Torts and Cannot Be Asserted in a Civil Action for Damages.**

Plaintiff asserts a claim for animal cruelty and reckless endangerment stemming from the shooting of his pit bull dog.  However, these allegations embody criminal charges and cannot be asserted in a civil suit for damages.

Given the foregoing, Plaintiff cannot maintain an action for assault, battery, negligence, animal cruelty or reckless endangerment, and  Defendants are entitled to summary judgment as a matter of law.

**VIII.    THE RECORD FAILS TO DEMONSTRATE MUNICIPAL LIABILITY SUCH THAT THE CITY OF WILMINGTON IS LIABLE UNDER 42 U.S.C. §1983.**

Plaintiff alleges that the City of Wilmington is liable under the theory of respondeat superior for the actions of Defendant John Doe 5's conduct as the supervisor of the CMTT.  (D.I. 2 ¶¶ 8, 58, 93).  Specifically, Plaintiff alleges Defendant John Doe 5 failed to establish a procedure for the CMTT with regard to encountering dogs in a residence during the execution of a search warrant. However, Plaintiff's claim is without merit.  First, a procedure is already in place governing an officer's use of deadly force with regard to animals.  This procedure is embodied in WPD Directive 6.7.  (A119-122).  Second, municipal liability cannot be established through respondeat superior liability.   Therefore, Plaintiff fails to state a claim against Defendant City of Wilmington, and Defendant is entitled to judgment as a matter of law.

It is well established law that a municipality or its departments cannot be held liable for claims arising out of  §1983 under the theory of respondeat superior.  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).  The municipality, as an entity, can only be held liable

under §1983 if the injury is inflicted by a government's lawmaker or the execution of the government's policy or custom. Id.; See also City of St. Louis v. Praprotnik, 485 U.S. 112 (1988). These principles apply with equal force to individual defendants named in their official capacity.

The Monell Court defined a municipal policy as "a statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers. Id. at 690. Likewise, the Court defined a municipal custom as "such practices of state officials... [as are] so permanently and well settled as to constitute a 'custom or usage' with the force of law." Id. at 691. Indeed, the United States Supreme Court has "consistently refused to hold municipalities liable under a theory of respondeat superior" and, therefore, courts must apply "rigorous standards of culpability and causation... to ensure that the municipality is not held liable solely for the actions of its employee." Board of the County Comm'rs v. Brown, 520 U.S. 397, 403, 405 (1997).

A municipal policy sufficient to bind the government under §1983 may be demonstrated in two ways. First, where an employee acts pursuant to an official policy or edict of the municipality, municipal liability may attach. Izquierdo v. Sills, et. al., 68 F. Supp. 2d 392, 405 (D.Del. 1999); see also Praprotnik, 485 U.S. at 123. Secondly, a single act by a decision maker who possesses final authority to establish policy with respect to the action ordered may also constitute policy under §1983. Id. The determination of whether a particular official has "final policymaking authority" is a question of state law. Id.

A municipal custom may also be demonstrated in two ways. First, Plaintiff must show that "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. Secondly, Plaintiff must demonstrate "'knowledge and acquiescence' by the final policymaker in the area." Id. at 406.

-26-

In the present case, the record fails to support any allegation that Defendants acted pursuant to an official policy or custom which caused injury to the Plaintiff, or that any of the Defendants are final policy-makers.  Therefore, Plaintiff fails to state a claim against Defendant City, and the Court must properly grant summary judgment in favor of Defendant City.

## CONCLUSION

WHEREFORE, in light of the foregoing, Plaintiff is unable to maintain a claim under 42 U.S.C. §1983 for a violation of his Constitutional Rights.  Therefore, the Court must grant summary judgement in favor of Defendants and dismiss Plaintiff's Complaint with prejudice.

<div style="margin-left:50%">

    /s/ Rosamaria Tassone
Rosamaria Tassone, Esquire, ( I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2176
Attorney for Defendants John Does 1-5, Bowman, Elliott and the City of Wilmington

</div>

Date: January 19, 2006