# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC A. CHAMBERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-415 SLR |
| | ) |
| JOHN DOES 1-7, | ) |
| DONALD J. BOWMAN, JR., | ) |
| CITY OF WILMINGTON DELAWARE, | ) |
| DELAWARE S.P.C.A., and | ) |
| SGT. ELLIOTT, | ) |
| Defendants. | ) |

**DEFENDANTS JOHN DOES 1-5, DONALD J. BOWMAN, JR.,
CITY OF WILMINGTON DELAWARE, AND SGT. ELLIOTT'S
<u>REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Rosamaria Tassone, Esquire, ( I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2176
Attorney for Defendants John Does 1-5,
Bowman, Elliott and the City of Wilmington

Dated: March 14, 2006

## **TABLE OF CONTENTS**

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    PLAINTIFF HAS FAILED TO DEMONSTRATE A GENUINE ISSUE OF MATERIAL FACT NECESSARY TO DEFEAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A..    DETECTIVE PFAFF'S SHOOTING OF PLAINTIFF'S PIT BULL DOG WAS REASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.    THE OFFICERS OF THE CMTT ACTED REASONABLY AND PURSUANT TO A VALID SEARCH WARRANT WHEN THEY ENTERED THE RESIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.    PLAINTIFF FAILS TO ADDUCE ANY EVIDENCE OF A CONSPIRACY BETWEEN THE DEFENDANTS TO CONCEAL ANY WRONGDOING WITH REGARD TO THE SHOOTING OF PLAINTIFF'S PIT BULL DOG . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        D.    BASED UPON THE RECORD AND THE LACK OF A GENUINE ISSUE OF MATERIAL FACT, DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF CITATIONS

### CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242(1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Brown v. Pfaff, 2006 U.S. App. LEXIS 424 (3d Cir. Jan. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . . 2

Carter v. Del. State Univ., 2002 U.S. Dist. LEXIS 4721 (D. Del. 2002) . . . . . . . . . . . . . . . . . . 11

Celotex Corp. v. Catrett, 477 U.S. 317(1986)
    *cert denied*, 484 U.S. 1066 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Clark v. Modern Group Ltd., 9 F.3d 321 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Daniels v. Delaware, 120 F. Supp. 2d 411(D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fraser v. Pennsylvania State System of Higher Education, et al.,
    1994 U.S. Dist. LEXIS 7409 (E.D. Pa. June 6, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . 10

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300 (3d Cir. 1995) . . . . . . . . . . . . . . . 10

Neely v. Samis, et. al., 183 F. Supp. 2d 672 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Reed v. Agilent Techs. Inc., 174 F. Supp. 2d 176(D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . 11

### STATUTES

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10

### RULES

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## SUMMARY OF ARGUMENTS

Plaintiff Eric Chambers has failed to demonstrate a genuine issue of material fact necessary to defeat Defendants John Does 1-5, Bowman, Elliott and the City of Wilmington's Motion for Summary Judgment. Therefore, Plaintiff is unable to maintain a claim under 42 U.S.C. §1983 for a violation of his Constitutional Rights, and the Court must grant summary judgment in favor of Defendants, dismissing Plaintiff's Complaint with prejudice.

**ARGUMENT**

I. **PLAINTIFF HAS FAILED TO DEMONSTRATE A GENUINE ISSUE OF MATERIAL FACT NECESSARY TO DEFEAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**

In response to Defendants' Motion for Summary Judgment, Plaintiff Eric Chambers fails to demonstrate a genuine issue of material fact necessary to defeat Defendants' Motion. Unlike the numerous affidavits and documentary evidence submitted by the Defendants in support of their Motion, Plaintiff offers the Court absolutely no evidentiary support for the allegations contained in his Complaint that one or more of the Defendants violated his Constitutional rights under the 4th, 5th and 14th Amendments, thereby violating 42 U.S.C. §1983. Even after the Court afforded Plaintiff the opportunity to conduct discovery, Plaintiff continues to rely on unsubstantiated allegations and conclusory statements of facts to support his arguments. Plaintiff's answering brief, entitled "Plaintiff's Reply Brief in Support of His Motion for the Denial of Summary Judgment for Defendants John Does 1-5, Donald J. Bowman Jr., City of Wilmington Delaware, and Sgt. Elliott," (D.I. 75) contains not one citation to evidence supporting his allegations that he surrendered at the door, that he was kicked and stomped on, and that his docile, "child friendly" pit bull dog was chased up the stairs and shot multiple times by one of the Defendants without provocation in the second floor bedroom. Plaintiff simply does not present any concrete, probative evidence from which the Court could reasonably conclude that a genuine issue of material fact exists warranting a trial, but rather continues to point to perceived inconsistencies in the officers' affidavits, statements and reports. Not only are Plaintiff's allegations of inconsistency in testimony erroneous, such allegations are insufficient to carry his burden of proof at trial. Brown v. Pfaff, 2006 U.S. App. LEXIS 424, *5 (3d Cir. Jan. 6, 2006). Therefore, Plaintiff cannot meet his burden with regard to Defendants'

Motion, and the Court, as a matter of law, must grant summary judgment in favor of Defendants and dismiss Plaintiff's Complaint.

### A. Detective Pfaff's Shooting of Plaintiff's Pit Bull Dog Was Reasonable.

In response to Defendants' argument that the shooting of Plaintiff's pit bull dog was reasonable under the existing circumstances known to Detective Randolph Pfaff and, therefore, does not constitute a violation of Plaintiff's constitutional rights under the 4th, 5th, or 14th Amendments, Plaintiff asserts that Pfaff's actions were unreasonable because 1) the pit bull dog was not barking; 2) "alternative methods" such as pepper spray could have been used to subdue the pit bull dog; and 3) the police officers "knew" Plaintiff's pit bull dogs were not aggressive and posed no harm. However, the record evidence simply does not support Plaintiff's argument.

Plaintiff attempts to convince the Court that the pit bull dog was not barking, charging or acting aggressively when the officers of the Crisis Management Tactical Team entered the residence. Incredibly, Plaintiff would have this Court believe that "the dogs simply came to the living room after hearing a knock on their front door (just as anyone else's dog would do)." (D.I. 75, p. 5). Not only is Plaintiff's argument illogical and completely contrary to what a normal dog would do when a stranger bursts into its territory, Plaintiff does not and cannot provide any concrete evidence that his pit bull dog was not a threat to Detective Michael Rodriguez. Stated differently, Plaintiff has failed to provide the Court with any witness testimony which would support Plaintiff's assertion that the pit bull dog was calmly walking into the living room to ascertain who was at the door and was not acting aggressively. The only "evidence" Plaintiff brings forth is perceived "inconsistencies" in the testimonies of Rodriguez and Pffaf. (D.I. 64, pp. 2-4).

Plaintiff states that Rodriguez's answers to Plaintiff's interrogatories contradict his statement

taken during the Wilmington Police Department's internal investigation because "now, in his answers to interrogatories, for the first time; he states he heard a dog(s) barking." (D.I. 64, p. 1). However, in reviewing the record, it is clear that Rodriguez's testimony in both instances is consistent. During the internal investigation interview, Rodriguez was never asked whether he heard a dog barking. (A 59). Plaintiff asked that question for the first time in his Interrogatories, and Rodriguez responded, "I only saw one dog in my peripheral vision. I was focused on the fleeing subject. However, I heard a dog(s) barking." (A 125). This statement is supported by Rodriguez's taped interview. (A 58-59). Rodriguez never stated that he did not hear a dog barking. Further, Rodriguez's testimony that he heard barking is supported by the testimony of both Pfaff and Detective Scott Jones. Pfaff states, "[H]e was growling and showing his teeth." (A 47). In response to the question "Well were they growling," Jones states, "Yeah, oh yeah they were – they were moving pretty good." (A 70).

  Plaintiff also points to alleged deficiencies in Pfaff's statements to bolster his argument that the pit bull dog was docile. Specifically, Plaintiff asserts that Pfaff stated during his internal investigation interview that the pit bull dog had stopped running. (D.I. 64, p. 4). However, the testimony Plaintiff points to is an incomplete sentence, and does not state that the pit bull dog had stopped running toward Rodriguez. (A 50). Indeed, Pfaff unequivocally stated that the pit bull dog was running toward Rodriguez. (A 47, 55).

  Plaintiff contends that the officers "knew the dogs were not harmful, aggressive nor threatening, considering information provided to them about the presence of the dogs – which was established prior to executing the warrant. The Defendants/officers in this case, failed to develop any type of non lethal plan for dealing with the dogs..." (D.I. 75, p. 4). Plaintiff's statement is

plainly erroneous and without evidentiary support. The officers had no knowledge of the dispositions of the pit bull dogs residing in the dwelling, and Plaintiff fails to indicate where in the record it states that the CMTT officers knew the pit bull dogs were friendly.[1] The officers only knew that "inside the residence [there] was at least one small child and a large pit bull dog." (A 7). Based upon this information, Plaintiff argues that the officers should have devised a "non-lethal" plan to "deal with" the pit bull dogs. Although Plaintiff offers absolutely no legal support for his position, Plaintiff ignores the fact that Pfaff acted in accordance with established Wilmington Police Department policy for "dealing with" animals, whether encountered inside or outside a residence.

> A police officer may also discharge a weapon under the following circumstances:
>
> a. During range practice or competitive sporting events.
>
> b. To destroy an animal under the following circumstances:
>
> 1) For self-defense,
>
> 2) To prevent substantial harm to the officer or another,
>
> 3) When the animal is so badly injured that it is humane to relieve suffering. When feasible, a seriously injured or wounded animal may be destroyed only after all attempts have been made to request assistance from the Delaware S.P.C.A. and/or with the approval of a supervisor.
>
> 4) Whenever an animal is shot by an officer or an officer discharges a weapon for the purpose of

---

[1] The issue concerning the disposition of the pit bull dogs is irrelevant. The question is not whether the pit bull dogs were normally docile, but whether in this particular situation the pit bull dogs were acting in an aggressive and threatening manner.

> destroying an animal, the officer's immediate supervisor will conduct an investigation of the incident.

(A 124).

In response to Plaintiff's Interrogatory asking whether Pfaff followed the prescribed policy in this instance, Pfaff stated:

> Yes, I was aware of the Wilmington Police Department's use of force policy. I followed departmental policy when I utilized force in this situation. Specifically, the policy authorized me to use deadly force in this situation in order to prevent substantial harm to a fellow officer, Michael Rodriguez. Also, the policy does not require me to sequentially follow the prescribed continuum. Rather, the policy provides that I must use my discretion to quickly and safely apply the necessary level of force to meet the situation. In this case, I saw a pit bull dog barking/growling and charging straight for Detective Rodriguez. I shot the pit bull dog because I believed the dog was going to attack him and shooting the dog was the quickest and safest means to prevent Detective Rodriguez from being attacked. Further, there were no civilians or children present in the living room when I shot the pit bull dog. Therefore, my decision to use deadly force was justified, and I was cleared departmentally. (A 135); (see also, A 29-44).

**B.   The Officers of the CMTT Acted Reasonably and Pursuant to a Valid Search Warrant When They Entered the Residence.**

With regard to Plaintiff's allegations of excessive force and illegal search of the residence located at 2704 Creston Place, Defendants argued in their Opening Brief that: 1) the evidentiary record is devoid of any facts supporting Plaintiff's assertion that he surrendered at the door, and that he was "kicked" in the head and his back "stomped" by an officer; 2) Plaintiff lacks standing to bring a claim alleging illegal search of the residence because Plaintiff does not own or reside in the property; and 3) the CMTT officers possessed a valid search warrant to enter and search the premises. In response, Plaintiff argues that the officers' entry into the property was "unreasonable"

because "Plaintiff opened the door, after Defendants' knock and surrendered in the doorway." (D.I. 75, p. 6). Plaintiff asserts that by going beyond the doorway, this "gave way to the events and actions that supports their unreasonableness by the manner in which the warrant was executed," specifically, the shooting of the pit bull dog. (D.I.75, p.7). However, in his Answering Brief, Plaintiff fails to point to any evidence supporting his assertion that he surrendered at the doorway to the residence.

The only "evidence" purportedly offered by Plaintiff to support his assertion that he surrendered at the door is, again, alleged "inconsistencies" in the statements of Corporal Bruce Coffiey, Detective David Simmons, and Corporal Matthew Severance. (D.I.64, p. 5-7). These "inconsistencies" center around the individual officers' contact with Plaintiff. However, Plaintiff's arguments are without merit.

Plaintiff focuses on the fact that in Coffiey and Simmons' answers to Plaintiff's interrogatories, both officers state that they encountered Plaintiff on the stairs. Plaintiff alleges this testimony conflicts with Rodriguez's statement that he "escorted Plaintiff to the ground." Plaintiff also questions the veracity of Coffiey's statement because Coffiey indicates that the pit bull dog was on the stairs in front of him. (D.I. 64, p. 5-7). In reviewing the individual statements of the officers, it is readily apparent that the statements do not conflict. Rodriguez was the first officer in the residence after Plaintiff fled up the stairs. Rodriguez stated that Plaintiff surrendered on the stairs and "[came] down with his hands up," at which time Plaintiff was placed on the ground, and Sergeant Spell handcuffed Plaintiff. (A 10, 62). Coffiey stated that he recalled observing a black male on the stairs and, in an effort to move past him, Coffiey "grabbed the black male and moved him aside with the intention of handing the male onto another officer on the stairs. [Coffiey] then

continued past the male." (A 14, 135). Simmons stated that he observed a black male on the stairs and recalled ordering him to the first floor. (A 18, 126).

Plaintiff appears to argue that it is not possible for multiple officers to encounter Plaintiff on the stairs and order him to the ground. However, not only is this situation possible, it actually happened. Plaintiff fails to take into account the fact that several officers entered the residence without delay or hesitation behind Rodriguez. Coffiey and Simmons, assigned to secure the second floor, immediately ran up the stairs upon entering the residence. Plaintiff, who stopped on the stairs to surrender, was in the officers' path, thereby requiring the officers to push past him as they continued up the stairs. The entire incident took place in a matter of seconds. (A 126 ("The scene was chaotic, with officers yelling various things... The entire incident happened in a matter of seconds.")). Further, Coffiey's statement that the pit bull dog ran past him on the stairs is consistent with Pfaff's testimony that after shooting the pit bull dog, it ran up the stairs. (A 51-52).

When Defendants filed their initial Motion for Summary Judgment on February 1, 2005 (D.I. 19), Plaintiff asserted at that time in his Answering Brief (D.I 33) that "material facts are in undeniable dispute" and that he had "produced evidence" of a constitutional injury as a result of the Defendants' actions. (D.I. 33, pg. 3). Plaintiff further stated that he had "credible witnesses" that can prove that he surrendered at the front door and did not attempt to flee. (D.I. 33, pg. 4, 9). However, Plaintiff failed then to identify the "credible witnesses" and offer the Court any affidavits from the alleged witnesses which would dispute the Defendants' statements and the physical evidence. Notwithstanding this second opportunity, Plaintiff again fails to offer the Court any concrete, probative evidence to support his allegations.

In his first Answering Brief, D.I. 33, the only witness Plaintiff specifically identified was

8

Tomika Tolbert. Plaintiff asserted that Ms. Tolbert's transcribed statement to Detective Chaffin supported his contentions that he did not attempt to flee and that the pit bull dog was shot on the second floor. However, Ms. Tolbert did not see Plaintiff surrender at the front door. Ms. Tolbert was upstairs when the officers entered the residence and did not observe what transpired between the officers and the Plaintiff. (A 83). Ms. Tolbert only started down the stairs when she heard a shot fired. (A 83). As she was descending the stairs, she observed the pit bull dog running up the stairs and an officer behind the pit bull dog. Although she believed that the officer was chasing the pit bull dog upstairs in order to shoot it, she never observed the officer enter the bedroom and shoot the pit bull dog. The shot Ms. Tolbert heard was Pfaff discharging his weapon in the living room. (A 83). Although Ms. Tolbert believed she heard two gun shots, the physical evidence recovered at the scene, i.e. a single casing and round, belies this assertion.

### C. Plaintiff Fails to Adduce Any Evidence of a Conspiracy Between the Defendants to Conceal Any Wrongdoing With Regard to The Shooting of Plaintiff's Pit Bull Dog.

In his Complaint, Plaintiff alleges that the Defendants conspired to conceal facts which would demonstrate that his pit bull dog was wrongfully shot. In their Opening Brief, Defendants argued, among other things, that Plaintiff failed to plead with particularity any facts which would support his allegation of a conspiracy. In response to Defendants' argument, Plaintiff again fails to adduce any facts that would demonstrate the existence of a conspiracy. Plaintiff merely points to the same perceived "inconsistencies" in testimony discussed above and requests that the Court permit him to amend his Complaint "so he can further clarify the conspiracy claim and the original complaint with names and evidence newly gained, to support his complaint." (D.I. 75, p. 9). However, Plaintiff's argument misses the point. The Court permitted Plaintiff discovery in order

to respond to Defendants' Motion for Summary Judgement.  Now is Plaintiff's opportunity to provide the Court with the "evidence" of a conspiracy.  Plaintiff fails to do so because no evidence of a conspiracy exists.

>   **D.    Based upon the record and the lack of a genuine issue of material fact, Defendants are entitled to judgment as a matter of law.**

As is the case in the present matter, summary judgment would serve to "avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Fraser v. Pennsylvania State System of Higher Education, et al., 1994 U.S. Dist. LEXIS 7409, *8 (E.D. Pa. June 6, 1994), citing Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).  The Defendants have met their initial burden of demonstrating that the record lacks a genuine issue as to any material fact and that the Defendants are entitled to judgment as a matter of law.  See, Fed. R. Civ. P. 56(c).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995).

> The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury *reasonably* to find for the nonmoving party on that issue. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

Neely v. Samis, et. al., 183 F. Supp. 2d 672, 677-8 (D. Del. 2002)(emphasis added).  "The nonmovant's evidence . . . must be sufficient for a reasonable jury to find in favor of the party, given

the applicable burden of proof." Carter v. Del. State Univ., 2002 U.S. Dist. LEXIS 4721, *12 (D. Del. 2002)(*citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "A constitutional violation may not be established by a reliance upon unsupported assumptions." Daniels v. Delaware, 120 F. Supp. 2d 411, 423 (D. Del. 2000). Indeed, "conclusory allegation[s] must be disregarded on a motion for summary judgment." Reed v. Agilent Techs. Inc., 174 F. Supp. 2d 176, 185 (D. Del. 2001); *see also* Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993) (noting that evidence offered in opposition of a motion for summary judgment must be admissible evidence). "A constitutional violation may not be established by a reliance upon unsupported assumptions." Daniels v. Delaware, 120 F. Supp. 2d 411, 423 (D. Del. 2000).

In the matter *sub judice*, Defendants have carried their initial burden under the summary judgment standard by demonstrating the absence of any genuine issue of material fact with regard to Plaintiff's claims involving the use of force during his arrest, the reasonableness of the shooting of Plaintiff's pit bull dog, the validity of the Defendants' entry into the residence, the lack of a conspiracy between any Wilmington Police Department (WPD) Defendants and the S.P.C.A. to conceal alleged wrong-doing in the shooting of Plaintiff's pit bull dog, the allegations of assault, battery, negligence, animal cruelty, and reckless endangerment, and the lack of municipal liability.

None of the individuals present during the execution of the search warrant support Plaintiff's contentions that he surrendered at the front door; that a shot was fired above his head into the residence from an officer standing outside the front door; that Plaintiff was kicked in the head and stomped on when he attempted to rise from a prone position; that Plaintiff's pit bull dog was docile and did not pose a threat to the officers' safety; that Plaintiff's pit bull dog was chased up the stairs and shot multiple times in one of the upstairs bedrooms; and that Plaintiff's children were on the first

floor and in harms way when the shots were fired at the pit bull dog. Officers Rodriguez, Pfaff, Simmons, Coffiey, Silva and Spell actually observed Plaintiff on the stairs leading to the second floor or at the bottom of the stairs, depending upon when they entered the residence. (A 7, 10, 14, 15, 18, 47, 57-58, 105, 110, 112). Officers Jones and Thompson state that Plaintiff did not surrender at the door because when Officer Rodriguez breached the door, no one was in the doorway to impede the officers' entrance into the residence. (A 13, 65-67, 99, 114). None of the officers present observed anyone strike Plaintiff. (A 6-21, 45-75, 92-93, 99-116). Officers Pfaff, Jones and Silva observed the pit bull dog running toward Officer Rodriguez in an aggressive, menacing manner. (A 15, 47-52, 69-70, 74-75, 103). Officer Rodriguez also observed the pit bull dog in his peripheral vision. (A58-62). Officers Jones, O'Neill, Rodriguez, Severance, Simmons, Spell, Thompson, Diana and Silva heard only one shot fired from within the residence, not multiple shots as Plaintiff asserts. (A 15, 92-93, 99-116). Further, the physical evidence supports the fact that only one shot was fired, striking the pit bull dog and exiting the animal's body, thereby creating entry and exit wounds. (A 29-44, 118-121). Lastly, all the officers state that they are unaware of any conspiracy between the WPD and the S.P.C.A. with regard to this incident. (A 90-117).

**CONCLUSION**

In response to Defendants' Motion, and in light of the evidence put forth by the Defendants, "the [Plaintiff] must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In order to overcome Defendants' Motion for Summary Judgment, the Plaintiff must produce "concrete evidence from which a reasonable [trier of fact] could return a verdict in [his] favor." Plaintiff has simply failed to do so throughout the pendency of this matter.

Plaintiff fails to demonstrate to the Court any evidentiary support for the allegations contained in his Complaint. Rather, Plaintiff merely offers to the Court suppositions, bald allegations, unsupported facts, and mis-characterized statements from the various affidavits and transcribed statements. This is insufficient to overcome Defendants' Motion for Summary Judgment. Plaintiff is required to put forth concrete, probative evidence such that a reasonable fact finder may find in his favor. Having failed to do so, the Defendants are entitled to judgment as a matter of law for the reasons stated in their Opening Brief. Wherefore, in light of the foregoing, Plaintiff is unable to maintain a claim under 42 U.S.C. §1983 for a violation of his Constitutional rights. Therefore, the Court must grant summary judgment in favor of Defendants and dismiss Plaintiff's Complaint with prejudice.

/s/ Rosamaria Tassone, Esquire, ( I.D. #3546)
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2176
Attorney for Defendants John Does 1-5, Bowman, Elliott and the City of Wilmington

Date:  March 14, 2006