IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC A. CHAMBERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 04-415-SLR ) |
| JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, JOHN DOE #7, DONALD J. BOWMAN, JR., CITY OF WILMINGTON DELAWARE, DELAWARE S.P.C.A., SGT. ELLIOTT, | ) ) ) ) ) ) ) |
| Defendants. | ) |



FILED
APR - 7 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PLAINTIFF ERIC A. CHAMBERS' RESPONSE TO THE DEFENDANTS:
JOHN DOES 1-7, DONALD J. BOWMAN, CITY OF WILMINGTON DELAWARE AND SGT.
ELLIOTT'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR THE DENIAL OF
DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT AND HIS REQUEST FOR A TRIAL DATE

Date: March 31, 2006.

Eric A. Chambers
# 04536-015
FCI Allenwood (Med)
P.O. Box 2000
White Deer, PA 17887

## ARGUMENT

Now Comes, PLAINTIFF Chambers, in reply to the City Defendants summary judgement motion's argument, at page 2. The Defendants allege that the Plaintiff failed to support his allegations with evidence. They further allege that there is no geniune issue of material fact, to warrant a trial.

In response, the Plaintiff asserts that; contrary to the Defendants' allegations, the record, when viewed in it's totality, actually DOES - support his allegations.

The defendants provided the evidence into record, regarding the information and foreknowledge of the occupants of the house (including pets). The Defendants provided the information into record - about the "pretext" call. The Defendants, in their INITIAL testimonies of the events, gave one account - on how they encountered the Plaintiff...but changed their "versions" at a later date. The Defendants entered into the record; the scene photos, which <u>physically</u> contradicts their allegations on how the incident occurred. All in all, the Plaintiff didn't have to provide supporting evidence...because the Defendants supplied the evidence for him. All the Plaintiff was required to do was point out the contradictions and apparant fabrications...to a nuetral entity (the Court).

The record supports the fact that the Defendants/CMIT Officers did not/failed, to develop a plan to isolate the dogs, prior to entering the residence (if for nothing more, than for their own safety). This fact or evidence is supported by the omission of any officers' assignment to isolate or "handle" the dogs upon entry into the residence. Either in their Activity Reports or their interviews. Additionally, none of the Officers testified or indicated that they considered using any less

1

intrusive means, enlight of the small children inside the home. Clearly established in the record, the Officers were aware of the entire residence's occupants prior to executing their warrant; the subject of their warrant, the number and relative - size of the small children, as well as the number and actual breed of dogs. And since they failed to employ, or even consider, any less intrusive means...enlight of all the prior knowledge and information, the Plaintiff's Constitutional rights were violated before the warrant was even executed. Before the Plaintiff's dog was shot.

The Defendants have never argued nor denied the Plaintiff's allegation that they failed to develop any plans or considered to utilize any less intrusive and hazardous measures, which constitutes a concession of the fact that there was never any plans for the confrontation with the dogs, which illustrates an inference that the officers planned and had every intention on killing the dogs (firing their weapons, regardless of the small children's presence or not) when confronted. Which ultimately supports and constitutes a Fourth Amendment violation.

The Plaintiff also establishes and requests the Courts attention to the fact that the other CMTT Officers/City Defendants were aware of Officer Pfaff's illegal shooting and conduct...and gave conflicting testimonies and reports (under Oath), to cover up the unlawful and unreasonable shooting, which constitutes a conspiracy.

Officers Jones and Rodriguez provided conflicting testimonies of what occurred during the incident...furthering the conspiracy. There are Defendants who - time wise, could not have been in a position to provide the testimony and accounts - to what they have. It's physically impossible. Yet, they've testified untruthfully anyway.

All in the intentional efforts and foresight to cover up the illegal and unreasonable shooting/conduct of their fellow officer(s).

A genuine issue of material fact exists, regarding the unreasonableness of the shooting, whereas, the record supports a finding that the Officers had no other alternative - but to kill the dogs (when) encountered - established prior to executing their warrant. And a jury would find that this failure constitutes a Fourth Amendment violation.

Some, of the Defendants state; the dogs were doing this and that. But, There is recorded testimony, by Officer Scott Jones, stating the dogs were not barking...which supports the Plaintiff's assertions that his dogs werenot and did not pose a threat.

Therefore, in the totality of the circumstances, record and evidence, the Plaintiff has met his burden of proof, by directing the Court's focus and attention to evidence supporting his allegations...thus warranting the need for a trial.

I. DETECTIVE PFAFF'S SHOOTING OF PLAITIFF'S DOG WAS CLEARLY UNREASONABLE.

In response to the Defendants' newly launched attacks on the Plaintiff's allegations, filed by the Defendants on March 14, 2006, The Plaintiff asserts that the Defendants' motions must be Denied, as a matter of Law.

The Defendants try to circumvent the illegal actions and conduct of the CMTT Officers (specifically Officer Pfaff), by labeling their actions "justified" and "reasonable", on the grounds that the Plaintiff did not surrender at the door, the dogs were barking and aggressive, and ultimately tried to aTTack an Officer.

3

Clearly, the evidence in the record provides proof that the dogs were non-aggressive, posed no threat, and the Officers had foreknowledge of such, prior to executing their warrant. If infact the dogs were "hostile", every Officer at the scene would and should be able to provide basically the same testimony...even the ATF Agents who were a part of the surveilance team - who had the residence under watch even before the "pretext" call two (2) hours before the CMIT Officers arrived on the scene. Yet, everyone's account is different (and the ATF Agents' testimonies haven't been entered into record).

The Activity reports, signed by the Officers on 6-24-02/ presumably shortly after the incident, signifies these reports were/are the most honest, accurate and precise accounts of the events. The interviews, conducted by SGT. Elliott- for the Officers (except for Officer Pfaff and Tamica Tolbert), does not clarify a time nor date of when they occurred. Which leaves room and the possibility to infer that the answers of these interviews were/could have been Coached and Practiced. Take notice how quite a few answers are responded with "(CU)'. Which Plaintiff, the Court or a reasonable jurist could deduce as an incriminating response. THerefore, this Court should doubt the credibility of the answers to the interviewed questions posed to the CMIT Officers...since they were more likely than not - practiced and/or coached...and they directly conflict with what the initial and first accounts (from the Activity Reports) indicates.

As previously stated throughout this litigation, the Officers knew the dogs were inside the residence, roaming freely, proir to breeching the door. And because of this knowledge, before carrying out or beginning any actions - there should have been a reasonable PRE plan in executing their warrant. to act without doing so was callous, unthoughtful, unreasonable, and ultimately against the Law/U.S. Constitution.

4

Considering the considerable foreknowledge and "intelligence" of the information possessed by the Officers; the dogs roaming free, inside the residence, as well as, the small children... the Officers should have developed a non-lethal plan, for/to isolate and handle the dogs, and most importantly: the children. By doing so, these efforts would have prevented the use of ANY firearm being discharged, in the home, under ANY circumstances.

In <u>San Jose Charter Of Hells Angels v. San JOse</u>, 402 F.3d 978 9th Cir., the 9th Cir. held that the Officers violated the Plaintiff's Fourth Amendment Rights, by killing his dogs. The Court held that, since the officers failed to develop a non-lethal plan, for isolating the dogs prioir to entering the residence, then the shooting of the dogs were NOT reasonable, because less intrusive measures - could have been employed, had the officers been prepared or included the dogs in a plan upon/before entering the residence.

As far as the Defendants following "policy", this cannot be used as a defense for the shooting, because the actions of the officers/ defendants' failing to develop any plans for the dogs, prior to entering the residence, evidences the officers' total disregard for the dogs, and, the Plaintiff's Fourth Amendment Rights. Which cannot be shielded by the policy. In sum, the CMTT Officers cannot use the "policy", as a defense to/for an Unconstitutional act or incident...especially when the Unconstitutional conduct occurred PRIOR to the use of the "ploicy".

Thus, it can be inferred, that the officers' plans were - to kill the dogs (when) encountered and confronted. See; <u>Spurlock v. Satterfeild</u>, 167 F.3d 995 6th Cir. 1999, for the position that; Constitutional wrongs - committed prior to an immunized act, does not protect the defendant(s) from liability.

5

In reference to this claim, Officer Pfaff clearly had no reasonable basis for shooting the dog. Based on Pfaff's testimony; in order for the dog to even conceiveably attack officer Rodriguez, the dog would have to bypass Pfaff FIRST. So, a reasonable person would assume that IF the dog was attacking anyone, officer Pfaff would have been the intended target, not Rodriguez (as the defendants allege). In veiwing the evidence with common sense and reasonableness, in its totality of the circumstances, the shooting was unreasonable and violated the Plaintiff's Fourth Amendment Rights. See; Chew v. Gates, 9th Cir., Gutierrez v. City of San Antonio, 139 F.3d 441, 450 5th Cir. 1998, and Headwaters Forest Defense, 276 F.3d 1131. Therefore, Summary Judgement should be denied as to the Defendants and specifically Officer Pfaff, on this claim.

## II. THE OFFICERS OF THE CMIT DID NOT ACT REASONABLY NOR WERE JUSTIFIED WHEN THEY ENTERED THE RESIDENCE.

According to the Georgetown Law Journal - Criminal Procedure Project; Execution of Warrants: An officer authorized by warrant to enter a private dwelling must comply with the statutory "knock and announce" requirement. The officer must announce his or her authority and purpose before entering, and may resort to forcible entry only if denied admittance.

The Defendant/Officers "conveniently" failed to inform the Court of the conversation of the "pre-text call", which was made approximately two (2) hours prior to the execution of the warrant, wherein the Plaintiff gave a precise time (after 6 O'clock pm.), for his arrest/surrender. (which can and will be supported by ATF Agent-in-charge; Tat Shum).

Enlight of such, the Plaintiff will provide the basis of his initial and continued assertions that he surrendered at the door, making

6

the defendants' version(s) and testimony of the events - a direct fabrication of the events that unfolded afterwards. Ultimately supporting the unreasonableness of the defendants entering the residence. There were no evidence of exigent circumstances. Exigent circumstances existing when there is probable cause for a search or seizure and either the evidence sought is in imminent danger of destruction, the safety of law enforcement officers or the general public is threatened, the police are in 'hot pursuit" of a suspect, or a suspect is likely to flee before the pusuing officer can obtain a warrant.

\* Incidentally, the burden is on the officers (government) to prove the exigency of the circumstances. Which hasn't been done, in viewing the totality of the testimonies, contradictions and reasonableness.

The Plaintiff provided the time of his "surrender"...and the ATF Agents/CMTT Officers executed their warrant at precisely the pre-arranged time.    The object of the BODY WARRANT, the Plaintiff, suurendered at the door...so there was no need to "search", nor was there an imminent danger of destruction, because the Plaintiff himself was the warrant's objective.

The safety of the law enforcement officers/defendants weren't threatened...the Plaintiff layed on the ground, establishing submission. Nor was the general public at risk...which is why the Plaintiff surrendered at the door - to protect and prevent his family from unnecessary harm. Contradicting the "fleeing" or "hot pursuit"/"escaping" excuse or scenerio.

Infact, it was the Defendants' direct actions - that CREATED the circumstances and subsequent dangers - they are now attempting to use and justify as their reasonings for entering the residence.

If the Plaintiff had any intentions of fleeing, before the warrant was carried out, he had approximately two (2) full hours, prior to the knock on the door, to attempt to do so.

The Defendants' assertions that the Plaintiff lacks standing to bring a claim of illegal search of the residence beeause Plaintiff does not own or reside in the property, is totally erroneous. Proof of Plaintiff's residency at the property can be supported by W2 Tax Forms, Utility Bill receipts and by the actual home owner's testimony (who happens to be a neighboring county Police Officer)(the Plaintiff and his spouse rents the property).

To support Plaintiff's assertions of him surrendering at the door: Plaintiff has been told by the surveilling team from the ATF,; that they will not provide any affidavits, however, if and when they are legally subpoenad , they'll make themselves available for the Court proceedings.

The Plaintiff has previously petitioned the Court for the Appointment of Counsel; in order to have his counsel depose of the Plaintiff's neighboring residences/witnesses...emlight of his incarceration.

The Defendants has the misconception that the Plaintiff is alleging "inconsistencies" that can not/will not be supported. But, the "inconsistencies" are all based and derived from the Defendants' testimonies.

a. The Defendants alleges the door was hit with the ram. Yet no evidence supports such.

b. The Defendants allege the Plaintiff fled on the stairs. Yet, in viewing the photos, blood splatters and chronological order of the defendants versions of the events, there is no evidence which supports their "versions".

c. The Defendants claim the fact of the three different officers encountering the Plaintiff on the stairs - was due to their rapid movement. However, the alleged "story"/testimony is; the Plaintiff ran halfway up the stairs, then surrendered. But if the Court will focus on the photo of the stairs, the Court will realize that the halfway mark (of the stairs) is only three (3) steps! So, in believing their scenerio of the events, the

8

Plaintiff traversed three (3) steps...yet it took three (3) Officers, on/at three (3) different time periods, to bring the Plaintiff back to ground level.

    d. If the dog ran past Coffiey - on the stairs...then the dog ran past Officer Rodriguez and the Plaintiff as well. But no one provided this testimony except Coffiey. Take notice of the chronicle time periods of the alleged events, as told by the officers. More importantly, HOW can the dog run past Coffiey, if Pfaff is the second officer thru the door (following Rodriguez), and Pfaff supposedly shoots the dog at the bottom of the steps... the dog runs up the steps (after being shot)...**how does the dog run past Coffiey, when Coffiey hasn't even entered the house yet?!**

    e. Where is the Plaintiff's Affidavit? The Defendants provided affidavits for/from everyone's interview and statements...but the actual subject of their warrant. However it was indicated that the Plaintiff was interviewed at the police station.

### III. THE EVIDENCE SUPPORTS THE PLAINTIFF'S ALLEGATIONS THAT THE DEFENDANTS CONSPIRED TO CONCEAL THE FACTS, OF THE UNCONSTITUTIONAL SHOOTING OF HIS PET DOG.

The Plaintiff, herein, asserts that the evidence in the record provides proof that a conspiracy between the Defendants took place, to conceal the facts of the unconstitutional shooting of the dog.

    The Plaintiff asserts that the CMTT Officers committed overt acts, by providing conflicting reports and testimonies of what occurred and transpired at the residence. This proof can be verified by reviewing and comparing the statements and testimonies of/between the Activity Reports that were signed and conducted on June 24, 2002, with the interviewing answers conducted by SGT. Elliott at a later date (exactly when the interviews were conducted, is unknown.). But, when SGT. Elliott conducted the interviews,

Certain officers conveniently remember information and **incriminating** acts and behaviors regarding the incident, that would necessitate the officers entering the residence: for example; the dogs were barking and aggressive, and attacked a fellow officer.

Clearly, a Jury would find that these conflicting/so called factual statements, given by most of the Defendants/Officers, serve as Overt acts, **in** the **conspiracy to cover** up the **illegal** shooting by Officer Pfaff. These perjured and conflicting testimonies were done in the attempt to help cover up and clear Pfaff, in the wrongful, illegal and unreasonable shooting of the dog. The shooting of the dog, was totally unwarranted, unlawful and unreasonable. And the acts committed after the shooting, clearly evidences a conspiracy.

In sum, contrary to the Defendants' allegations, regarding the lack of evidence - of a conspiracy, the evidence provided herein, clearly would lead a Jurist or reasonable person to believe a cover up is being committed. Therefore, a conspiracy did and does exist, and Summary Judgement should be denied with a trial date arranged, on this claim.

### IV. BASED UPON THE RECORD, THE PLAINTIFF ASSERTS THAT THE EVIDENCE PROVIDES PROOF - OF GENUINE ISSUES OF MATERIAL FACT, WARRANTING A TRIAL, THEREFORE, THE DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT SHOULD BE DENIED.

In response to the Defendants' motion for summary judgement, the Plaintiff asserts that the material facts are in direct dispute, regarding the shooting of the dog, as well as, the reasonableness of the act. The Plaintiff asserts that the evidence, when viewed in its entirety, is clearly substantial and apparent. The Officers failed to develop a non-lethal plan

for isolating the dogs prior to entry, as well as, failing to employ less intrusive means for subdividing the dogs, establishes - together, that the shooting was unreasonable, unjustified and unlawful.

In addition, a reasonable jury would conclude that the shooting, and entire acts and behaviors (of the officers), was unjustified and unecessary. Which is why the Officers/Defendants are not entitled to qualified immunity. A jury would find that, the overall lack of planning of the officers clearly evidences the defendants' total neglect and violation of the Plaintiff's Fourth Amendment Rights. And to cover up the violation(s), the Defendants conspired to make the incident seem as if it was procedurely warranted and in accordance to "policy". A jury would find, based on the evidence in regards to the conflicting statements, and the unreasonableness of the entire ordeal, that the officers changed their "descriptions" of the events - to a more criminally invoking situation AFTERWARDS. Thus, providing a more criminally and conflicting, detailed version, during the interview that occurred after they were "prepped" and "coached".

A jury would find, based on the Activity Reports - against - the interview answers (conducted by SGT. Elliott), that the officers perjured themselves, falsified the truth, and conspired to tell a completely different account of the events of the incident, shooting and facts.

Incidentally, a jury would find that based on the direct contradictions of the Defendants', the Activity Reports and testimonies are more creditable and should be viewed more intently, than the interview responses. Because, the interview was conducted AFTER the Defendants had the time and oppertunity to discuss the incident (and their defense) as a group.

In sum, a jury would find for the Plaintiff, denying the Defendants' motion for summary judgement because, with all the evidence and testimonies considered as a whole, the shooting was in total and complete disregard of

the Plaintiff's Fourth Amendment Rights.

## CONCLUSION

In conclusion, the Plaintiff points to evidence that a jury could use to return a verdict in his favor. In support of this allegation, the Plaintiff points this Court's attention to his allegation regarding the Defendants' failing to develop a plan for isolating the dogs prior to entering the residence, the Defendants' failing to employ less intrusive tactics in subdivising the dogs, and the ridiculous allegation that; the Plaintiff resisted arrest and fled up the stairs-after being confronted by officers he <u>prearranged</u> to surrender to ...two (2) hours earlier. The evidence in the record supports the Plaintiff, wherein, the officers had no plan for the dogs - incase of a confrontation, which was almost sure to happen upon entering the residence. Especially, with the foreknowledge that the dogs were inside the residence , roaming freely. Not one Defendant/officer provided testimony (under oath or otherwise), that they were assigned to "address" the dogs...nor , that any alternative was pre-planned regarding the dogs. This, when scrutinized and viewed in the totality of the circumstances, indicates the Defendants neglect and violation of the Plaintiff's Fourth Amendment rights. It can also be **inferred** that the **Defendants'** "lack of planning", left the only recourse but to kill the dogs - when confronted... since no less intrusive measures were previously contemplated or established, prior to entering the dwelling. Case law supports the Plaintiff's position; that shootings, such as the instant case, are unreasonable...when no plan to isolate a known pet (dog) is implemented prior to executing a search warrant. See, <u>Chew v. Gates</u>, <u>Gutierrez v. City of San Antonio</u>, and <u>San Jose Charter Of Hells Angels v. San Jose</u>.

Incidentally, enlight of the defense's submission of the Civil procedings of Detective Randolph Pfaff, labeled as; Attachments (in the City Defendants' Reply Brief, dated March 14, 2006)..the Plaintiff would like the Court to view this additional information as "Relative Conduct", in establishing a prior incident of similar Unconstitutional behavior involving Officer Pfaff and the alleged use of excessive force, during the course of an arrest.

## DECLARATION

I, Eric Chambers, hereby declare and affirm, under the penalty of perjury pursuant to 28 USC §1746(2), that the foregoing pleading is true and correct to the best of my knowledge and recollection, on this 31st day of March 2006.

*[signature]*

Fed. Reg. No. 04536-015
FCI Allenwood (Med)
P.O. Box 2000
White Deer, PA. 17887-2000

## CERTIFICATE OF SERVICE

I, Eric Chambers, hereby certify that the foregoing Pleading, along with the declaration, have been served by placement in this institutional legal mailbox, first-class postage prepaid, on this 31st day of March, 2006, to:

a. Office of the Clerk
   U.S. District Court
   844 N. King St., Lockbox 18
   Wilmington, DE 19801-3570

b. Rosamaria Tassone
   Assistant City Solicitor
   Louis J. Redding City/County Bldg.
   800 N. French St., 9th flr.
   Wilmington, DE 19801

c. Donald L. Gouge Jr.
   800 King St., Suite 303
   P.O. Box 1674
   Wilmington, DE 19801

*[signature]*

Fed. Reg. No. 04536-015
FCI Allenwood (Med)
P.O. Box 2000
White Deer, PA. 17887

RE: Plaintiff's response to City Defendants motion for summary judgement and his request for a trial date.

DECLARATION

I, ERIC A. CHAMBERS, HEREBY DECLARE AND AFFIRM, UNDER THE PENALTY OF PERJURY PURSUANT TO 28 USC § 1746(2), THAT THE FOREGOING PLEADING IS LATE/TARDY, DUE TO THE BOP'S ELIMINATION OF ALL OF THE SPECIAL MAIL BOXES (LEGAL-MAIL BOXES), WITHIN THE FEDERAL INSTITUTIONS.

*[signature]*
ERIC A. CHAMBERS

Eric A. Chambers
# 04536-015
FCI Allenwood (Med)
P.O. Box 2000
White Deer, PA 17887

APR 5 2006

LEGAL MAIL

Office of the Clerk
U.S. District Court
844 N. King St., Lockbox 18
Wilmington, DE 19801-3570



