IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIC A. CHAMBERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-415-SLR |
| | ) |
| JOHN DOE #1, JOHN DOE #2, | ) |
| JOHN DOE #3, JOHN DOE #4, | ) |
| JOHN DOE #5, JOHN DOE #6, | ) |
| JOHN DOE #7, DONALD J. BOWMAN, | ) |
| JR., CITY OF WILMINGTON, | ) |
| DELAWARE, DELAWARE S.P.C.A., | ) |
| and SGT. ELLIOTT, | ) |
| | ) |
| Defendants. | ) |

Eric A. Chambers. Pro se plaintiff.

Rosemaria Tassone, City of Wilmington Law Department, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: September 𝒿𝓁𝑜 , 2006
Wilmington, Delaware

**ROBINSON, Chief Judge**

## I.   INTRODUCTION

Plaintiff Eric A. Chambers, who proceeds pro se, is a prisoner incarcerated at FCI Allenwood. He filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 as a result of actions taken during his arrest on June 24, 2002, by members of the Police Department Crisis Management Tactical Team ("CMTT") for Wilmington, Delaware.[1] (D.I. 2) During the arrest, plaintiff's pit bull was shot by a member of the CMTT, and the dog died. The animal's remains were turned over to the Delaware S.P.C.A.

Plaintiff alleges police misconduct, reckless endangerment, endangering the welfare of children, excessive use of force, illegal search and seizure, abuse or misuse of authority and due process, unlawful destruction of property, evidence tampering, deliberate indifference, "personal involvement of deprivation," conspiracy, and animal cruelty in violation of the Fourth, Fifth and Fourteenth Amendments to the U. S. Constitution. (D.I. 2 at 2) He also raises supplemental state claims under Delaware law for assault, battery, negligence, animal cruelty, and spoliation.

Claims are raised against John Does 1 through 4, police officers in the CMTT, for the constitutional violations of exceeding the scope of the arrest and body warrant (i.e., due

---

[1]John Does 1 through 5 have entered their appearance and are represented by the attorney for the City of Wilmington, Delaware. They are identified in exhibits filed in support of pending dispositive motions. John Does 6 and 7 were never served.

process and the Fifth Amendment), use of excessive and deadly
force against plaintiff and his dog (i.e., Eighth[2] and Fourth
Amendments), and destruction of property (i.e., Fourth
Amendment). He also raises state law violations of assault,
battery, negligence, reckless endangerment, and animal cruelty
against John Does 1 through 4. (D.I. 2 at ¶¶ 86, 87, 88, 89)
John Doe 5, supervisor of John Does 1 through 4, is sued as a
decision/policymaker for supervisory liability and in his
individual capacity. A claim is raised against Sergeant Elliott
("Elliott") for failure to take action to prevent the deprivation
of plaintiff's constitutional rights. Plaintiff alleges this
constituted deliberate indifference and deprived him and his
family of their right to due process in violation of the
Fourteenth Amendment. Id. at ¶ 94. Plaintiff sues Donald J.
Bowman, Jr. ("Bowman") for "falsifying, concealing and assisting
in hindering John Does 1 through 4's conduct and illegal acts
from being recognized" in violation of the Fifth Amendment. Id.
at ¶ 92. The City of Wilmington, Delaware ("City of
Wilmington"), is sued as a supervisor and decisionmaker and for
"allowing and refusing to have its state actors and policymakers
adhere" to the U.S. Constitution in violation of the Fourteenth
Amendment. Id. at ¶ 93.

---

[2]Although plaintiff raises the excessive force as an Eighth Amendment
claim, the court will analyze the claim under the Fourth Amendment, as the
alleged excessive force occurred during an arrest.

-2-

John Doe 6, an S.P.C.A. employee/officer who removed the dog's remains, and John Doe 7, an S.P.C.A. employee who received the remains at the office of the S.P.C.A., are sued in their individual capacities for "acting in conspiracy and in concert with the state actors" and for destruction of evidence in violation of the Fourth Amendment. Id. at ¶ 91. Claims are raised against the Delaware S.P.C.A. for conspiracy with the state actors and for intentional spoliation of evidence. (D.I. 5) Finally, plaintiff alleges that all defendants engaged in a conspiracy by refusing to uphold his constitutional rights and those of his family and their dog in violation of the Fourth and Fourteenth Amendments. (D.I. 2 at ¶ 90) Plaintiff seeks compensatory, nominal, and punitive damages.

Now before the court are the following pending motions which include plaintiff's motion regarding answers to interrogatories (D.I. 64); plaintiff's motion to amend/correct complaint (D.I. 66); defendants City of Wilmington, John Does 1 through 5, Donald J. Bowman, Jr., and Sgt. Elliott's (collectively "City defendants") motion for summary judgment (D.I. 68); defendant Delaware S.P.C.A.'s motion to dismiss or, in the alternative, motion for summary judgment (D.I. 70); City defendants' motion to strike[3] (D.I. 82); and defendant Delaware S.P.C.A.'s motion to

---

[3]All defendants move to strike plaintiff's surreply to the City defendants' motion for summary judgment. (D.I. 80, 82-86) Defendants argue that the surreply was filed in derogation of Local Rule 7.1.2 which only permits the filing of an opening brief by the moving party, an answering brief

-3-

strike (D.I. 83).

Before discussing the dispositive motions, the court addresses two other pending motions. Plaintiff filed a document entitled motion to respond to the defendants' answers to the interrogatories. As correctly noted by the City defendants, the motion is actually a response to a motion for summary judgment filed on February 18, 2005. (D.I. 65) On July 18, 2005, the court denied the motion for summary judgment without prejudice to renew. Accordingly, plaintiff's motion to respond to the defendants' answers to the interrogatories (D.I. 64) will be denied as moot.

Plaintiff also filed a motion to amend the complaint. (D.I. 66) He asks to amend the complaint to identify the John Doe defendants named in the complaint, indicating that discovery has revealed the names of the John Doe defendants, as well as all the other participants involved in his claim. In reviewing the evidence submitted, the court has identified the following John Doe defendants: John Doe 1 is Detective Michael Rodriguez; John Doe 2 is Detective Randolph Pfaff; John Doe 3 is Sergeant Scott Jones; John Doe 4 is Danny Silva; John Doe 5 is Sergeant Thomas R. Spell; and John Doe 6 is S.P.C.A. officer John Saville. The

---

(response) and a reply brief. They also argue that the surreply belatedly raises arguments not raised in plaintiff's answering brief and that raising the issues outside the briefing schedule denies defendants the full opportunity to explore and address the arguments. Defendants' motions are well-taken and they will be granted.

-4-

motion will be granted to the extent that plaintiff may substitute the correct names for the John Doe defendants.

## II.  BACKGROUND

Plaintiff's affidavit filed July 13, 2004, states that on June 24, 2002, there was a knock on his front door, followed by police who used a battering ram to enter the premises. (D.I. 6 at ¶¶ 1, 2) He states that he opened the door and explained to the police that there were children present, and at the same time he assumed the surrender/submissive position by lying down to be handcuffed. Id. at ¶¶ 3, 4. He states that his head was outside on the porch and the remainder of his body was in the doorway. Id. at ¶ 5. He then heard "the signifying loud report of a firearm discharging." Id. at ¶ 6. When plaintiff realized a gun had been fired, he began to rise from his submissive position and was "kicked in the head" and "felt the full weight of someone stomping on [his] back." Id. at ¶¶ 7, 8.

Plaintiff turned his head and saw two pairs of officers charging into his home. (D.I. 6 at ¶ 9) Next, he heard another firearm discharge and the screams and cries of his children. Id. at ¶ 10. Tomika Tolbert ("Tolbert"), who resided at the premises, stated that she also heard two gunshots. (D.I. 73 at A83) Plaintiff was removed from the ground and taken away. Id. at ¶ 11. A police officer approached and told an ATF officer who had custody of plaintiff that the S.P.C.A. was to be called

-5-

because one of plaintiff's dogs had been shot.  Id. at ¶ 12.  Two
weeks later, plaintiff discovered that his dog, Honey, had been
killed.  Id. at ¶ 16.  Plaintiff states that the dog never
barked, growled or attacked any of the officers and that, even if
she did, the officers should have used more discretion before
firing inside the home.  Id. at ¶ 19.  Plaintiff states that
neither he nor his spouse[4] were contacted by the S.P.C.A.
regarding the disposal of the animal, and that it was cremated by
the S.P.C.A.  Id. at ¶¶ 17, 21.

Plaintiff's affidavit contains other information that is not
based upon personal knowledge.  Accordingly, it will not be
considered.  See Brown v. Muhlenberg Twp., 269 F.3d 205, 212 n.5
(3d Cir. 2000); Blackburn v. United Parcel Serv., 179 F.3d 81, 95
(3d Cir. 1999) ("[A] hearsay statement that is not capable of
being admissible at trial should not be considered on a summary
judgment motion").

Defendants submitted their version of the facts as follows:
Plaintiff was charged in the U.S. District Court for the Middle
District of Pennsylvania as a felon in possession of a firearm,
those firearms being a Bersa Thunder .380 caliber semi-automatic
handgun, a Stevens model 67 twelve gauge sawed-off shotgun, and a
Smith & Wesson .38 caliber revolver.  (D.I. 71 at A-1)  Tolbert,

---

[4]An interview of Tolbert by the Wilmington Police Department indicates
that she was plaintiff's girlfriend, not plaintiff's spouse.  (D.I. 73 at A76-
87)

the girlfriend of plaintiff, resides at 2704 Creston Place, Wilmington, Delaware. (D.I. 73 at A76) Plaintiff stayed with Tolbert "off and on," and the Wilmington Police Department had received information that plaintiff and Tolbert were staying at that location. Id. at A29. Tolbert and plaintiff have one child together and Tolbert has two other children. Id. at A77.

The ATF requested the assistance of the Wilmington Police Department in apprehending plaintiff. Id. at A7. On June 24, 2002, a telephone call was placed to the Tolbert residence and an adult male, believed to be plaintiff, answered. Id. at A25. Following the telephone call, a search warrant was obtained to search the premises at 2704 Creston Place, Wilmington, Delaware, for the body of plaintiff. Id. at A2. The search warrant was classified as high risk. Id. at A111. The Wilmington Police Department's CMTT was mobilized to execute the warrant. Id. at A7. The CMTT was briefed prior to execution of the warrant and advised that the residence was occupied by at least one small child and a large pit bull dog. Id.

Detective Michael Rodriguez ("Rodriguez-Doe 1") was assigned to open the front door. Id. at A56. He hit the front door with a ram and, during the post-arrest investigation, he stated that it felt like plaintiff was holding the door because there was some resistence. Id. at 57-58. Rodriguez-Doe 1 forced the door open, entered the residence and ran toward the interior stairs

-7-

where plaintiff had fled. Id. at A10  Plaintiff surrendered half-way up the stairs. Id. In his answers to interrogatories, Rodriguez-Doe 1 states that he heard barking; he only saw one dog in his peripheral vision. Id. at A125. Rodriguez-Doe 1 avers that he did not kick plaintiff in the head or stomp him on the back and did not see any other officer take this type of action. Id. at A106.

Sergeant Thomas R. Spell ("Spell-Doe 5"), commander of the CMTT, placed plaintiff in handcuffs and held him until the residence was secured. Id. at A112. While handcuffing plaintiff, Spell-Doe 5 may have placed a knee on plaintiff's back to keep plaintiff from moving. Id. Spell-Doe 5 stated this is standard procedure and that it is easier to handcuff an individual who is lying on the ground if the officer is centered over the individual. Id. Spell-Doe 5 states that he did not kick plaintiff in the head or stomp him in the back and that he did not observe any other officers take such action. Id.

Danny Silva ("Silva-Doe 4") was also assigned to breach the front door. Id. at A40. He saw Rodriguez-Doe 1 chase plaintiff up the stairs. Id. at A15. He also saw a brown pit bull in the living room run towards Rodriguez-Doe 1 and reported that the dog appeared to be aggressive towards Rodriguez-Doe 1. Id. As Silva-Doe 4 dropped his shield onto the front porch he heard one shot. Id. He continued to secure the premises and, in doing so,

-8-

located children in the basement.  Id.

Detective Randolph Pfaff ("Pfaff-Doe 2") entered the
residence behind Rodriguez-Doe 1.  Id. at A47.  He saw a brown
pit bull dog enter the living room.  Id.  The dog was running
and, by the time Pfaff-Doe 2 was in the door, the dog was
growling and showing his teeth.  Id.  The dog was going directly
towards Rodriquez-Doe 1.  Id.  A second pit bull followed the
first one.  Id. at A13.  Pfaff-Doe 2 believed the first pit bull
was about to attack Rodriquez-Doe 1, and he fired one round from
his handgun into the dog.  Id. at A47.  Pfaff-Doe 2 was about one
foot from the dog when he fired his weapon.  Id. at A53.  The dog
yelped and ran upstairs to the second floor, entered a bedroom,
and died.  Id. at A30, 35, 48-49.  The second pit bull fled the
living room when the weapon was fired.  Id. at A13.

Pfaff-Doe 2 had no contact with plaintiff.  Id. at A104.  He
did not observe plaintiff being handcuffed.  Id.  Nor did he
observe any officer kick plaintiff in the head or stomp on his
back.  Id.

Sergeant Scott Jones ("Jones-Doe 3") entered the premises
behind Pfaff-Doe 2.  Id. at A65  As Jones-Doe 3 entered, he saw
two dogs, a large one in front, followed by a smaller dog.  Id.
at A66.  Jones-Doe 3 heard the dogs growling and they were moving
"pretty good."  Id. at A70.  Jones-Doe 3 explained that the dogs
were headed towards the stair area where Rodriguez-Doe 1 was

-9-

trying to apprehend the plaintiff. Id. at A75. Jones-Doe 3 heard a gunshot fired, but did not see Pfaff-Doe 2 shoot his weapon. Id. at A70. He continued through the living room and down into the basement where he located two small children. Id. at A73.

All the while other CMTT members entered the residence, moved to their assigned locations, and secured the premises. (D.I. 73 at A92-93, 101-02, 107-09, 114-17) It is standard CMTT procedure when executing a search warrant to secure the entire premises, regardless of the fact that the warrant is "for the body" of a specific individual. Id. at A112. This is done to identify all individuals in the residence and to eliminate any unknown threats to officer safety. Id. at A112-13. If it is known that a dog is on the premises, the officers are advised of the fact so they are aware of the added danger when entering the premises. Id. at A113. In securing the premises, the officers located Tolbert and her youngest child on the second floor and, as noted, her two other children were located in the basement. Id. at A18, 100, 110.

Following the shooting, an investigation by Sergeant Donovan ("Donovan") confirmed that only one round was missing from Pfaff-Doe 2's weapon. Id. at A30, 95. Donovan examined the body of the dog and it was clear from his examination that the dog had been struck only once. Id. at A95. He found no need for a

-10-

necropsy. Id.

The S.P.C.A. responded to a request from the Wilmington
Police Department to remove a dead dog from 2704 Creston Place,
Wilmington, Delaware. (D.I. 31 at AB2) At the scene, Donovan
examined the body of the pit bull with S.P.C.A. officer John
Saville ("Saville-Doe 6") and determined that the pit bull had
one small entrance wound and one exit wound. Id. at A32. The
dog was removed and stored at the S.P.C.A. facility until
approximately mid-August 2002. (D.I. 31 at AB2) S.P.C.A. policy
requires the retention of dead animals for ten days when there
may be a controversy, such as the shooting of an animal. Id. In
mid-August 2002, the remains were cremated per standard S.P.C.A.
policy. Id. The S.P.C.A. was first contacted by plaintiff by
letter dated September 9, 2003, and it responded to plaintiff's
letter on September 29, 2003. Id. at AB3, AB5-6. The S.P.C.A.
advised plaintiff that if it is not contacted by the owner of a
deceased animal received at its facility, the animal's body is
disposed of by cremation. Id. at AB6.

Lieutenant Donald J. Bowman, Jr. ("Bowman") was advised by
Donovan of the facts surrounding the shooting of the pit bull and
he drafted a press release summarizing the incident. Id. at A91.
He states that he did not falsify the facts of the shooting in
the press release to conceal any wrongdoing. Id.

Sargent Steven T. Elliott ("Elliott") of the Wilmington

-11-

Police Department was assigned from the Office of Professional
Standards to investigate the shooting of the dog. Id. at A97-98.
He concluded that the use of deadly force against the pit bull
was justified and consistent with Wilmington Police Department
Directive 6.7. Id. Directive 6.7 provides in pertinent part
that "[a] police officer may. . .discharge a weapon. . .to
destroy an animal. . .for self-defense. . .[and] to prevent
substantial harm to the officer or another." Id. at A124.
Elliott also found that Pfaff-Doe 2 acted appropriately in the
situation he encountered. Id. at A98.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(c). The moving party bears the burden of proving that no
genuine issue of material fact exists. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes
are 'genuine' if evidence exists from which a rational person
could conclude that the position of the person with the burden of
proof on the disputed issue is correct." Horowitz v. Federal
Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)

-12-

(internal citations omitted).  If the moving party has
demonstrated an absence of material fact, the nonmoving party
then "must come forward with 'specific facts showing that there
is a genuine issue for trial."'  Matsushita, 475 U.S. at 587
(quoting Fed. R. Civ. P. 56(e)).  The court will "view the
underlying facts and all reasonable inferences therefrom in the
light most favorable to the party opposing the motion."
Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.
1995).

     The mere existence of some evidence in support of the
nonmoving party, however, will not be sufficient for denial of a
motion for summary judgment; there must be enough evidence to
enable a jury reasonably to find for the nonmoving party on that
issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249
(1986).  If the nonmoving party fails to make a sufficient
showing on an essential element of its case with respect to which
it has the burden of proof, the moving party is entitled to
judgment as a matter of law.  See Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986).

## IV.  DISCUSSION

     The City defendants move for summary judgment on the basis
that plaintiff fails to state a claim as a matter of law under §
1983 for violations of the Fourth, Fifth or Fourteenth
Amendments.  They argue there is no evidence to support

-13-

plaintiff's allegation that any of the defendants used excessive force and that the shooting of the pit bull was reasonable under the circumstances.

The City defendants also argue that the entry into the residence did not violate the Fourth Amendment, as the officers possessed a valid search warrant, the officers did not search the house but merely apprehended plaintiff, and plaintiff has no standing to bring this claim as he is not the owner of the premises.  The City defendants further argue that the evidence does not support plaintiff's allegations that they conspired to conceal any wrongdoing with regard to the shooting of the dog.

John Does 1 through 5, Elliott, and Bowman contend they are entitled to qualified immunity[5] for their actions, and that they are immune from suit as to the state claims of assault, battery, and negligence.  They further argue that the claims for animal cruelty and reckless endangerment are criminal charges and cannot be asserted in a civil action for damages.  Finally, the City of Wilmington argues that plaintiff failed to establish municipal liability pursuant to § 1983.

The S.P.C.A. adopts the legal analysis contained in the City defendants' brief, particularly the sections relative to claims concerning the dog.  The S.P.C.A. also seeks dismissal of the

---

[5]The court will not address the qualified immunity argument since, as will be seen, the defendants did not violate plaintiff's constitutional rights.

-14-

spoliation claim on the basis that this cause of action is not recognized by Delaware courts

## A.    **Excessive Force**

The complaint contains allegations of excessive force, specifically, that while plaintiff was in a submissive position, he was "kicked in the head and stomped on the back." Id. at ¶¶ 17, 18.  The City defendants move for summary judgment on this issue arguing that plaintiff failed to adduce any evidence supporting his allegation that any of the defendants used excessive force in effecting plaintiff's arrest.

Plaintiff has made no response to this issue.  A party opposing a summary judgment motion cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or deposition setting forth "specific facts showing that there is a genuine issue for trial."  Ray v. Cell Extraction Unit 7, No. 04-4651, 142 Fed.Appx. 650, 651 (3d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"[C]laims that law enforcement officers have used excessive force. . .in the course of an arrest. . .should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." Graham v. Connor, 490 U.S. 386, 395 (1989).  "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances

-15-

confronting them, without regard to their underlying intent or motivation." Id. at 397; Mosley v. Wilson, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The reasonableness of the officers' use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

        Despite plaintiff's allegations, none of the Doe defendants saw anyone kick plaintiff in the head or stomp on his back. In plaintiff's affidavit, he states that these actions occurred during his arrest when he began to rise from his "submissive" position. Spell-Doe 5 stated that it is possible he may have placed his knee in plaintiff's back as this is standard procedure during an arrest to keep control of the situation. Additionally, the search warrant for plaintiff's body was considered a high risk and the court takes judicial notice that plaintiff was charged with weapons violations including a semi-automatic handgun and a sawed-off shotgun. Notably, plaintiff does not allege that he was injured as a result of the alleged excessive force, nor is there any indication of record that plaintiff

-16-

sustained any injury as a result of the alleged excessive force.

A reasonable jury could not conclude that the force used was unreasonable given the conduct of plaintiff in attempting to rise from his submissive position and the severity of the crime charged.  Moreover, plaintiff does not allege any physical injuries occurred as a result of the alleged actions of the Doe defendants, and there is no documentation of any injury.  Thus, any force that may have been applied does not rise to the level of a constitutional violation.  See Nolin v. Isbell, 207 F.3d 1253, 1255, 1257 (11th Cir. 2000)(no excessive force where officer grabbed plaintiff from behind, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, and searched his groin in an uncomfortable manner); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990)(no excessive force where plaintiff was "pushed against a wall twice on the way to the holding area, [but] also testimony no injury as a result of being pushed); Ankele v. Hambrick, No. CIV.A. 02-4004, 2003 WL 21223821 (E.D. Pa 2003), aff'd, 136 Fed. Appx. 551 (3d Cir. 2005)(show of force of slamming plaintiff onto hood of patrol car reasonable given the uncertainty presented by the arrestee's conduct).

The court sees no need to address the qualified immunity issue because plaintiff's constitutional rights were not violated.  Accordingly, the motion for summary judgment as to the

-17-

excessive force claim will be granted.

## B. Shooting of Dog

The City defendants argue, in their motion for summary judgment, that shooting the pit bull was reasonable under the circumstances and there was no violation of plaintiff's constitutional rights in this regard.

Plaintiff contends that Pfaff-Doe 2 unreasonably shot and killed his dog. (D.I. 75) He argues that the dog was not barking, growling, or aggressive, as evidenced by his affidavit and the inconsistent statements of Rodriguez-Doe 1. Plaintiff also relies upon the statement of Jones-Doe 3 that the dogs were not barking. Plaintiff argues that less intrusive means could have been utilized rather than shooting the animal.

The Fourth Amendment guards against unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 395 (1989). "[T]he killing of a person's dog by a law enforcement officer constitutes a seizure under the Fourth Amendment." Brown v. Muhlenberg Twp., 269 F.3d 205, 210 (3d Cir. 2001) (citations omitted). The state's interest in protecting life and property may be implicated when there is reason to believe the pet poses an imminent danger. Brown, 269 F.3d at 210. When an animal poses an imminent danger, the state's interest may even justify the extreme intrusion occasioned by the destruction of the pet in the owner's presence, and could be found to be reasonable within

-18-

the meaning of the Fourth Amendment. Id. at 210-211.
Accordingly, it must be determined whether, under the
circumstances of record, the shooting of the pit bull by Pfaff-
Doe 2 was reasonable. In judging the reasonableness of the
officers' actions, the court assesses only the reasonableness of
their actions vis-a-vis the dog and does not consider the
potential harm to third parties.[6] Andrews v. City of West
Branch, 454 F.3d 914, 918 (8th Cir. 2006) (citation omitted).

The facts before the court are that the City defendants were
aware that a pit bull lived on the premises they were entering.
As Rodriguez-Doe 1 was attempting to arrest plaintiff, his fellow
officer, Pfaff-Doe 2, saw a large pit bull running directly
towards Rodriguez-Doe 1. Pfaff-Doe 2 stated that the dog was
growling and baring his teeth and it was not until the dog was
one foot away that he fired his weapon.

Plaintiff states that the dog never barked, growled or
attacked any of the officers and that, even if she did, the
officers should have used more discretion before firing inside
the home. Plaintiff also concedes, however, that at the time his
dog was shot, he was facing the floor. Plaintiff also makes much
ado over the discrepancy of whether the pit bull was barking.
The undisputed facts, however, are that those who actually saw
the dog agree he was growling, aggressive, and advancing towards

---

[6]Plaintiff contends that the officers' actions were unreasonable because
children were on the premises at the time of plaintiff's arrest.

-19-

Rodriguez-Doe 1, who was attempting to arrest plaintiff.

Based on the undisputed facts recited above, when taken in the light most favorable to plaintiff, a reasonable jury could find that Pfaff-Doe 2 acted reasonably in shooting the pit bull. See Altman v. City of High Point, 330 F.3d 194, 206 (4th Cir. 2003) (finding reasonable shooting of fleeing dog by officer when dog, which was part pit bull, had reportedly been behaving aggressively, notwithstanding fact that dog had not attacked anyone). Accordingly, the motion seeking summary judgment on the Fourth Amendment claim with regard to the shooting of the pit bull will be granted.

## C.  Search of Residence

The City defendants move for summary judgment, arguing that entry into the residence to arrest plaintiff did not violate the Fourth Amendment because the officers possessed a valid search warrant. They also contend that officers did not actually search the residence, but merely apprehended plaintiff and secured the premises for officer safety. Finally, the City defendants argue that plaintiff does not have standing to contest this issue.

Plaintiff argues that the entry of John Does 1 through 5 into the residence was unreasonable because he opened the door after defendants knocked and surrendered in the doorway. Plaintiff argues that continuing into the house after the initial contact with him exceeded the scope of the warrant and "gave way

-20-

to the events and actions that support[] their unreasonableness
by the manner in which the warrant was executed." (D.I. 75 at 6-
7) Plaintiff does not argue that the search warrant was invalid.
Rather, he takes exception to the manner in which the search
warrant was executed.

The right to be free from unreasonable searches is clearly
established under the Fourth Amendment. The Supreme Court has
allowed a protective sweep incident to arrest to secure the
premises so long as the police officers can point to "articulable
facts, which taken together with the rational inferences from
those facts," would warrant a reasonably prudent officer in
believing "that the area harbor[s] an individual posing a
danger." Maryland v. Buie, 494 U.S. 325, 327 (1990). See Drohan
v. Vaughn, 176 F.3d 17, 22 (1st Cir. 1999)(analogizing the
situation to protective sweeps done in conjunction with arrest
warrants); United States v. Gould, 364 F.3d 578, 584-87 (5th Cir.
2004)(protective sweep may be justified so long as police did not
enter illegally); United States v. Taylor, 248 F.3d 506, 513 (6th
Cir. 2001)(because officers can constitutionally secure an area
while awaiting a search warrant to ensure that evidence will not
be destroyed, "it follows logically that. . .the police may
conduct a limited protective sweep [of that area] to ensure the
safety of those officers"); United States v. Garcia, 997 F.2d
1273, 1282 (9th Cir. 1993)(permitting protective sweep when

-21-

police were lawfully present in a home by consent); United States v. Patrick, 959 F.2d 991, 996 (D.C. Cir. 1992)(in the context of a consensual entry, "[o]nce the police were lawfully on the premises, they were authorized to conduct a protective sweep").

Additionally, during the execution of a search warrant, it is reasonable for police to detain the occupant of the house they have a warrant to search in order to protect the police, to prevent flight, and generally to avoid dangerous confusion. Michigan v. Summers, 452 U.S. 692 (1981). "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Id. at 702-03; Baker v. Monroe Twp., 50 F.3d 1196, 1191 (3d Cir. 1995). Accordingly, what is relevant is the reasonableness of the belief at the time of the sweep that the officers' safety or the safety of others may be at risk

The facts before the court are that plaintiff was charged by federal authorities as a felon in possession of firearms, including a semi-automatic handgun and a sawed-off shotgun. The fact that a pit bull dog was on the premises was considered as an additional danger. The search warrant obtained provided for a search of the entire premises at 2704 Creston Place, Wilmington, Delaware, including any exterior storage areas, outbuildings and/or cartilages. The City defendants were advised that the search warrant was "high risk." Each member of the CMTT was

-22-

assigned certain duties and, according to the CMTT "After Action
Report," "[t]o a man, each followed the plan and completed their
duties." (D.I. 73 at A6, A8) Although plaintiff complains of
the manner of the search, the court infers by this he means the
deadly encounter with the pit bull. The undisputed facts are
that no search was conducted by the City defendants but, rather,
the premises were secured for the safety of the officers and
those located on the premises.

There were sufficient grounds for a reasonable suspicion of
a threat to the officers on the scene. Indeed, under the
circumstances, based upon the seriousness of the crime charged
(i.e., a felon in possession of guns) and the foreknowledge that
at least one pit bull was located on the premises, the City
defendants acted reasonably in securing the premises.
Consequently, they will be granted summary judgment on this
issue.[7]

## D.   **Conspiracy**

Plaintiff alleges that all defendants participated in an
unconstitutional coverup of the shooting of the dog. More
particularly, he alleges that the defendants conspired to agree
that the pit bull attacked them, they agreed to remove the animal
from the premises and destroy it without the owner's consent, and

---

[7]The court sees no need to address the issue of standing inasmuch as the
City defendants acted reasonably under the facts presented.

-23-

they falsified a press report to conceal the alleged wrongful actions. He argues that there is evidence of a conspiracy because the defendants lied under oath, changed their sworn testimonies, provided false and inconsistent statements, and fabricated the actual events of June 24, 2002.

The City defendants move for summary judgment on these allegations, arguing that the allegations are unsupported by the evidence of record.  They contend that:  (1) no constitutional violation occurred; (2) plaintiff failed to plead with particularity facts necessary to establish a conspiracy; (3) only one conspirator is specifically identified (i.e., Bowman); (4) the evidence demonstrates that neither Bowman or Does 1 through 5 had any contact with the S.P.C.A.; (5) Bowman obtained the information for the press release from Donovan; (6) Bowman did not falsify any of the facts provided to him; and (7) the physical evidence substantiates that the pit bull was shot once in the living room and then ran to an upstairs bedroom where it died.  The S.P.C.A. joins the arguments of the City defendants and also argues that it is undisputed that the S.P.C.A. simply retrieved the dead dog.

For a conspiracy claim, there must be evidence of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to violate that right.  Williams v. Fedor, 69 F.Supp.2d 649, 665-

-24-

66 (M.D. Pa.), aff'd, 211 F.3d 1263 (3d Cir. 2000)(citing Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999)).  See also Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993)(plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law); Kelley v. Myler, 149 F.3d 641, 648-49 (7th Cir. 1998)(an agreement or an understanding to deprive the plaintiff of constitutional rights must exist).  Hence, a claim for conspiracy under § 1983 must specifically allege there was an agreement or understanding among all or between any of the defendants to conspire to carry out the alleged constitutional violation.

As previously discussed, there was no violation of plaintiff's constitutional rights when the shooting of his dog occurred.  Even if a constitutional violation had occurred, the record does not support the allegations that defendants agreed to a coverup of the shooting of the dog.  Immediately following the shooting, investigations were conducted to determine what happened.  Subsequently, Bowman received information from Donovan regarding the shooting and he reported the incident to the local newspaper.  As to the S.P.C.A., the undisputed facts support nothing other than that it responded to a request from the Wilmington Police Department to retrieve the remains of a deceased animal, and that it followed its standard procedure in

cremating the remains when it was not timely contacted by the
dog's owner. Finally, and most important, plaintiff has not
proven the deprivation of a constitutional right. Accordingly,
as to all defendants, summary judgment will be granted on the
conspiracy issue.

## E.   Personal Involvement/Respondeat Superior

Defendant Elliott moves for summary judgment, arguing that
he had no personal involvement in any wrongdoing and that
plaintiff has merely alleged he was indifferent to the alleged
violations of plaintiff's rights. Elliott further argues that
the evidence demonstrates that he had no knowledge of the
existence of any illegal acts. Accordingly, he contends he is
entitled to summary judgment. Plaintiff did not respond to this
issue.

When bringing a § 1983 claim, a plaintiff must allege that
some person has deprived him of a federal right, and that the
person who caused the deprivation acted under color of state law.
West v. Atkins, 487 U.S. 42, 48 (1988). Personal involvement can
be shown through allegations that a defendant directed, had
actual knowledge of, or acquiesced in, the deprivation of a
plaintiff's constitutional rights. Evancho v. Fisher, 423 F.3d
347, 353 (3d Cir. 2005) (citing Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir. 1988)); see Monell v. Department of Social
Services, 436 U.S. 658, 694-95 (1978). Supervisory liability may

-26-

attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.  Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed.Appx. 240 (3d. Cir. 2005).

The facts before the court are that Elliott was assigned to investigate the shooting of the pit bull, he conducted his investigation, and determined that the shooting was justified and consistent with police department directives.  The facts do not support a finding that Elliott had any personal involvement in the events complained of by plaintiff.  Therefore, he will be granted summary judgment.

## F.   Municipal Liability

The complaint alleges that the City of Wilmington is being sued for Spell-Doe 5's conduct as its city supervisor and decisionmaker.  Defendants take exception to plaintiff's allegations that Spell-Doe 5 failed to establish a procedure for the CMTT and dogs during the execution of a search warrant. Defendants argue that there is a procedure in place that governs an officer's use of deadly force with regard to animals.  Also, it argues that municipal liability cannot be established through respondeat superior.  Finally, defendants argue that the record

-27-

does not support plaintiff's allegations that defendants acted pursuant to an official policy or custom which caused injury to plaintiff or that any of the defendants are final policy-makers. Plaintiff did not respond to this issue.

The City of Wilmington is entitled to summary judgment. There is no respondeat superior theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents. See Monell v. Department of Soc. Services, 436 U.S. 658, 691 (1978). A municipality may be held liable only if its policy or custom is the "moving force" behind a constitutional violation. See Board of the County Comm'rs v. Brown, 520 U.S. 397, 400 (1997); Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992) (stating that a municipality is only liable when the municipality itself is the "wrongdoer"). Finally, in order for municipal liability to exist, there must be a violation of the plaintiff's constitutional rights. Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citations omitted).

Plaintiff has not identified an unconstitutional policy or custom advanced by the City of Wilmington. Nor did he plead that the City of Wilmington was the "moving force" behind any alleged constitutional violation. Finally, as previously discussed, there has been no violation of plaintiff's constitutional rights. Accordingly, the City of Wilmington shall be granted summary judgment.

-28-

## G. State Actor

Defendant S.P.C.A. adopts the legal analysis contained in the City defendants' opening brief, particularly the sections that relate to the claims concerning the dog. (D.I. 72 at 3) To the extent that the S.P.C.A. is named as a defendant in the § 1983 claims, the court takes judicial notice that the SPCA is a private non-profit organization incorporated in 1983. http://www.delspca.org/history.html.

To state a claim under 42 U.S.C. §1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)) (overruled in part on other grounds Daniels v. Williams, 474 U.S. 327, 330-31 (1986)). To act under "color of state law" a defendant must be "clothed with the authority of state law." West, 487 U.S. at 49. The S.P.C.A. and its employees are private individuals engaged in the prevention of cruelty to animals under the umbrella of a private non-profit organization. They are not "clothed with the authority of state law." See Reichley v. Pennsylvania Dep't of Agric., 427 F.3d 236, 244-45 (3d Cir. 2005); Biener v. Calio, 361 F.3d 206, 216-17 (3d. Cir. 2004).

Therefore, plaintiff's § 1983 claims against the S.P.C.A.

and John Does 6 and 7 have no arguable basis in law or in fact
and will be dismissed for failure to state a claim upon which
relief may be granted.

## H. Supplemental State Claims

### 1. Assault, Battery, Negligence

The complaint seeks recovery against the City defendants
pursuant to Delaware law under the theories of assault, battery,
and negligence. The City defendants move for summary judgment on
the basis that a suit for the torts of assault, battery and
negligence is precluded by the Delaware County and Municipal Tort
Claims Act ("the Act"), 10 Del. C. § 4010 et seq. Defendants
argue that the record fails to demonstrate they acted with wanton
negligence or willful and malicious intent.

The Act provides that "except as otherwise expressly
provided by statute, all governmental entities and their
employees shall be immune from suit on any and all tort claims
seeking recovery of damages." 10 Del. C. § 4011(a). It further
provides for immunity in the performance or failure to exercise
or perform a discretionary function or duty, whether or not the
discretion be abused and whether or not the statute, charter,
ordinance, order, resolution, regulation or resolve under which
the discretionary function or duty is performed is valid or
invalid. Id. at § 4011(b)(3). The Act provides, however, that
an employee may be personally liable for acts and omissions

-30-

causing property damage, bodily injury, or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent. 10 Del. C. § 4011(c).

With regard to any actions taken by the City defendants in the performance of their functions as police officers, they are immune from suit. See 10 Del. C. § 4011(b)(3). With regard to allegations that plaintiff, himself, was a victim of assault and battery, the record contains no evidence of any bodily injury. Hence, plaintiff cannot prevail on this issue. See 10 Del. C. § 4011(c). Finally, as to any tort claim for the killing of the pit bull, the evidence before the court does not indicate that any of the City defendants acted with wanton negligence or willful and malicious intent. Rather, the evidence is that, under the circumstances, the City defendants acted reasonably. Accordingly, summary judgment will be granted to the City defendants as to the state claims for assault, battery, and negligence

## 2. Animal Cruelty/Reckless Endangerment

Defendants argue that plaintiff's claim for animal cruelty and reckless endangerment stemming from the shooting of the dog cannot lie. More particularly, they argue that these allegations embody criminal charges. Once again, plaintiff did not respond

-31-

to the issue.

A thorough search of Delaware law did not reveal any civil cases based upon plaintiff's theories. As correctly noted by defendants, such cases are criminal cases, prosecuted by the state. See State v. Hamblin, No. 0510021162, S05-10-2442, 2006 WL 951323 (Del. Com. Pl., Apr. 6, 2006); Hull v. State, 889 A.2d 962 (Del. 2006); Spencer v. State, 868 A.2d 821 (Del. 2005); Whitfield v. State, 867 A.2d 168 (Del. 2004); Anderson v. State, 846 A.2d 237, 2004 WL 744188 (Del. 2004); Sherman v. State, 841 A.2d 308, 2004 WL 77875 (Del. 2004); State v. Elliott, No. 0111013502, 2002 WL 31820245 (Del. Super. Ct. Nov. 4, 2004); State v. Arterbridge, No. CRIM.A. S99-01-0247, 2000 WL 1211518 (Del. Super. Ct. June 26, 2000); State v. Roberts, No. CRIM.A. 89-06-0000A, 1990 WL 63952 (Del. Super. Ct. Mar. 22, 1990).

Plaintiff has failed to state a claim upon which relief may be granted. Hence, summary judgment will be entered on defendants' behalf.

### 3. Spoliation

The S.P.C.A. moves for dismissal or, in the alternative, for summary judgment on the issue of spoliation because Delaware courts do not recognize intentional or negligent spoliation as a cause of action. As with several other claims, plaintiff did not respond to the motion.

Although the Delaware Supreme Court has not spoken to the

-32-

issue, the Delaware Superior Court has determined that, if evidence of negligent or intentional spoliation is presented, the proper remedy is for the court to instruct the jury on the issue and not for the court to recognize a separate cause of action. Lucas v. Christiana Skating Center, Ltd., 722 A.2d 1247 (Del. Super. Ct. 1998).  See also Miller v. Montgomery County, 494 A.2d 761 (Md. Ct. Spec. App. 1985); Caleb v. CRST, Inc., No. 01-2218, 43 Fed. Appx. 513 (3d Cir. 2002).

The S.P.C.A.'s motion is well-taken and it will be granted. The spoliation claim will be dismissed inasmuch as such a claim is not recognized as a separate cause of action.

## V.  CONCLUSION

For the reasons discussed above, plaintiff's motion regarding answers to interrogatories is denied as moot, plaintiff's motion to amend/correct complaint is granted to the extent that he may substitute the John Doe defendants with their correct names, defendants City of Wilmington, John Does 1 through 5, Donald J. Bowman, Jr., and Sgt. Elliott's motion for summary judgment is granted, defendant Delaware S.P.C.A.'s motion to dismiss or in the alternative motion for summary judgment is granted, defendants City of Wilmington, John Does 1 through 5, Donald J. Bowman, Jr., and Sgt. Elliott's motion to strike is granted, and defendant Delaware S.P.C.A.'s motion to strike is granted.  An order shall issue.

-33-